# UNITED STATES DISTRICT COURT
## DISTRICT OF OREGON
## PORTLAND DIVISION

FILED08 JAN '26 14:54USDC-ORP

IVAN RICHARD HIGGS,
                    Plaintiff,

V.

PENNYMAC LOAN SERVICES, LLC; FEDERAL
NATIONAL MORTGAGE ASSOCIATION (FANNIE
MAE); MORTGAGE ELECTRONIC
REGISTRATION SYSTEMS, INC. ("MERS");
LOAN STAR HOME LOANS, LLC dba LOANSTAR
HOME LENDING; TICOR TITLE; and DOES 1-10,
                    Defendants.

Case No. 3:25-cv-02335-YY

**PLAINTIFF'S RESPONSE IN OPPOSITION
TO DEFENDANTS' MOTION TO DISMISS**

## I. Introduction

Plaintiff, IVAN R. HIGGS appearing pro se, respectfully submits this **Response in Opposition to
Defendants' Motion to Dismiss.** The Plaintiff is not seeking a free house. He asks this Court to **(1)** enforce
federal mortgage-servicing and credit-reporting statutes against PennyMac Loan Services, LLC, and as the
loan servicer; and **(2)** clarify the chain of title and the validity and enforceability of the 2017 deed of trust and
the November 25, 2025 **"Corporate Assignment of Trust"** that was recorded only after Plaintiff filed this
action and a lis pendens. Accepting the well-pleaded facts as true and drawing reasonable inferences in
Plaintiff's favor, the Complaint states plausible claims under **RESPA**, the **FCRA**, and **Oregon Title Law**. At
a minimum, any deficiencies should be cured by amendment rather than dismissal with prejudice.

## II. Factual Background

1. In 2017, Plaintiff obtained a mortgage loan to purchase his home at **54248 Kalberer Rd, Scappoose, Oregon 97056**. The deed of trust identifies LoanStar Home Loans, LLC (LoanStar) as the lender, Mortgage Electronic Registration Systems, Inc. (MERS) as nominee and beneficiary of record, and Ticor Title as trustee.

2. LoanStar later ceased operating. For years, when Plaintiff checked the **Columbia County land records,** the only security instrument he saw was the original **2017 deed of trust** naming LoanStar/MERS/ Ticor. No assignments to PennyMac or Fannie Mae appeared of record.

3. PennyMac eventually began collecting Plaintiff's mortgage payments and servicing the loan. Neither LoanStar nor PennyMac ever sent the Plaintiff a clear "good-bye" and "hello" servicing-transfer notice at the time of transfer, and **Fannie Mae never sent** Plaintiff a written notice that it had purchased or owned his loan. Plaintiff and his wife keep all mortgage-related mail in a dedicated file cabinet, and there are no original transfer or ownership notices from LoanStar, PennyMac, or Fannie Mae in those files.

4. In 2025, Plaintiff discovered that he had been paying for homeowners insurance twice for several years- once through escrow portions of his monthly payments to PennyMac and once directly to his own insurer on a separate policy-while PennyMac's statements showed escrow charges for hazard insurance. This caused Plaintiff to question the accuracy of PennyMac's escrow handling and the basic chain of ownership of his loan.

5. On June 30, 2025, Plaintiff sent a **Qualified Written Request (QWR)** by certified mail to LoanStar at its last known address, which was returned **"RETURN TO SENDER - UNABLE TO FORWARD,"** confirming that LoanStar was no longer reachable at its recorded address even though it remained the lender on record.

6. In late July 2025, Plaintiff sent a detailed OWR and **Notice of Error** to Penny Mac by certified mail at its correspondence address in Thousand Oaks/Los Angeles, California. USPS tracking and the signed green card show PennyMac received it on August 4, 2025, but PennyMac did not send written acknowledgement stating they had received QWR. On August 11, 2025, Plaintiff sent a second written **Notice of Error and Request** for Information, followed by an August 29, 2025 **Regulation X** Request for Information and fa September 3, 2025 deficiency/ deadline notice. Plaintiff's letters identiied specific servicing errors and requested specific categories of information, including the identity of the owner, original note and endorsements, recorded assignments, escrow histories, insurance records, and credit-reporting details.

6. PennyMac responded in part but labeled Plaintiff's requests **"overly broad"** & **"burdensome"**, and refused to provide many categories of information. Even while admitting that servicing transferred from LoanStar to PennyMac, and that Fannie Mae was the owner/investor. Plaintiff disputes that PennyMac complied with its investigation and response duties under **RESPA** and **Regulation X**.

7. After Plaintiff's written disputes, PennyMac then continued to furnish derogatory information about the loan to consumer reporting agencies as a straightforward **"seriously delinquent"** account. Never indicating that the account was being disputed. Also, without correcting amounts inflated by disputed fees and escrow errors. Plaintiff later obtained credit reports and a Capital One credit-limit denial letter that was completely based on this negative mortgage reporting.

8. Plaintiff filed this action in **Columbia County Circuit Court** on October 27, 2025 and recorded a **lis pendens** on November 12, 2025 to protect title while the dispute was litigated. It was only after these filings that MERS would execute, and Defendants record, a **"Corporate Assignment of Deed of Trust"** purporting to assign MERS's beneficial interest to PennyMac on November 25, 2025-almost eight years after origination and shortly after this **suit** and **lis pendens**.

9. Plaintiff has been, and remains willing to pay, a lawful creditor once Defendants **demonstrate a clear right to enforce** the note and deed of trust. Defendants must also correct the servicing and credit-reporting violations. Plaintiff brought this action to enforce statutory duties and obtain a clear judicial determination of who, if anyone, presently holds a valid lien on his home.

10. **Footnote**: Plaintiff's name is Ivan Richard Higgs. Some of the Defense's filings have mistakenly used "Van Richard Higgs." All such references are to the same plaintiff.


A motion to dismiss under **Rule 12(b)(6)** tests the sufficiency of the complaint, but not the merits of the case. The Court **must accept** all well-pleaded factual allegations as true, construe them in the light most favorable to the plaintiff, and draw all reasonable inferences in the plaintiff's favor. A complaint need only contain sufficient factual matter, accepted as true, to **"state a claim to relief that is plausible on its face."** Allegations by a self-represented litigant are to be liberally construed, and leave to amend should be freely given unless it is absolutely clear that amendment would be futile.

## IV. ARGUMENT

### A. Rule 12(b)(6) and Pro Se Pleadings

A complaint survives a **Rule 12(b)(6)** motion if it contains enough factual matter, accepted as true, to "state a claim to relief that is plausible on its face. **Bell At/. Corp. v. Twombly, 550 U.S. 544, 570 (2007); Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)**. The Court must accept all well-pleaded factual allegations as true and draw all reasonable inferences in the plaintiff's favor. **Twombly, 550 U.S. at 555-56.**

Because Plaintiff is self-represented, his allegations must be liberally construed and held to less stringent standards than formal pleadings drafted by lawyers. **Haines v. Kerner, 404 U.S. 519, 520-21 (1972); Hebbe v. Pliler, 627 F.3d 338, 342 (9th Cir. 2010)** (Haines standard survives Iqbal). Dismissal with prejudice at the initial pleading stage is disfavored, and leave to amend should be freely given when justice so requires. **Fed. R. Civ. P. 15(a)(2)**. Against this standard, Plaintiff's **RESPA, FCRA,** and quiet-title allegations are more than sufficient to state plausible claims, or at minimum warrant leave to amend.

### B. Plaintiff States a Plausible Claim Under RESP A and Regulation X (Against PennyMac)

**RESPA, 12 U.S.C. § 2605(e),** and its implementing **Regulation X, 12 C.F.R. Part 1024**, impose duties on mortgage servicers to acknowledge and respond to a borrower's written **"qualified written request"** and **"notice of error"** regarding the servicing of a loan. When a servicer receives such a request, it must: **(1)** provide a written acknowledgment within _five_ business days, **12 C.F.R. § 1024.36(c)**; **(2)** conduct a reasonable investigation; and **(3)** provide a substantive written response within prescribed time limits, correcting any errors or explaining why the information is unavailable, **§§ 1024.35(e), 1024.36(d)**. A servicer who fails to comply is liable for actual damages, statutory damages for a pattern or practice, costs, and attorney's fees. **12 u.s.c. § 2605(f).**

The Ninth Circuit has recognized a borrower's private right of action under these provisions. **Medrano v. Flagstar Bank, FSB, 704 F.3d 661, 665--67 (9th Cir. 2012)** (RESPA applies to written inquiries that relate to servicing and the receipt and application of payments).

Here, Plaintiff alleges, and his declaration and exhibits show, that:

1. In late July 2025, Plaintiff mailed a detailed written **Qualified Written Request** and **Notice of Error** to PennyMac at its designated correspondence address, by certified mail. USPS records and the signed green card show PennyMac received it on August 4, 2025.

2. On August 11, 2025, Plaintiff sent a second written **Notice of Error** and **Request for Information** expressly invoking **RESPA** and **Regulation X, 12 C.F.R. §§ 1024.35-1024.36.** These letters identified specific servicing errors, including:

   o failure to provide required "hello" and "good-bye" servicing-transfer notices under **12 U.S.C. § 2605(b)-(c);**

   o escrow misapplication and duplicate homeowners-insurance charges;

   o unexplained late fees and charges; and

   o negative credit reporting during an active dispute.

3. Plaintiff's letters requested discrete categories of information directly tied to servicing, including the identity of the owner/investor, an original color photocopy or scan of the note (front and back), and all endorsements & allonges, all recorded assignments & substitutions of trustee, the life-of-loan payment, escrow histories, force-placed or duplicate insurance records, servicing notes & call logs, and the information PennyMac furnished to consumer reporting agencies.

4. PennyMac responded in part on August 18, 2025, treating the correspondence as a **RESPA/Regulation X** request, but declared that Plaintiff's requests were "**overly broad**" and that any items not enclosed were "**unduly burdensome, irrelevant to the servicing of the loan, or proprietary**". PennyMac nonetheless admitted that servicing had transferred from LoanStar to PennyMac and that Federal National Mortgage Association (Fannie Mae) was the owner/investor.

5. When PennyMac's production remained incomplete, Plaintiff sent a further **Regulation X, Request for Information, and Notice of Error** on August 29, 2025, again by certified mail, and a "**Deficiency and Deadline Confirmation**" letter on September 3, 2025, specifically identifying categories of information PennyMac still had not provided, while giving a concrete deadline to cure.

These allegations are precisely the type of servicing-related disputes **RESPA** and **Regulation X** are meant to address: they concern "the receipt of payments from a borrower and the application of payments to principal, interest, escrow, or other charges," not loan origination terms. **Medrano, 704 F.3d at 665-66.**

Defendants argue that Plaintiff **"attempts to manufacture purported statutory violations"** and that his requests were **"to broad or burdensome"**. That misstates the law and the facts. **Regulation X** requires servicers to respond to written notices of error and requests for information **"with respect to the servicing of a mortgage loan." 12 C.F.R. §§ 1024.35(a), 1024.36(a)**. There is no exception that allows a servicer to unilaterally label a request **"overly broad"** and simply refuse to investigate or respond; if information is unavailable or confidential, the servicer must so state in writing and explain why.**§§ 1024.35(e)(l)(i)(B), 1024.36(d)(l)(ii).** Plaintiff specifically tied his requests to concrete problems, duplicate insurance charges, missing transfer notices, unexplained fees, and unclear ownership-based on his actual statements and records. That is not **"manufacturing"** anything; it is exercising rights Congress expressly gave borrowers under **§ 2605**.

At the pleading stage, Plaintiff has more than plausibly alleged that PennyMac: **(1)** received his **QWRs** and **Notices of Error; (2)** failed to timely acknowledge and fully investigate; **(3)** refused to provide required information or proper written explanations; and **(4)** caused him actual damages, including further confusion about who owned the loan, improper fees, and the escalation of delinquency and credit damage. **See 12 U.S.C. § 2605(().** **The RESPA/Regulation X claim should not be dismissed.**

### C. Plaintiff states a Plausible FCRA Furnisher-Liability Claim (Against PennyMac)

**The Fair Credit Reporting Act, 15 U.S.C. § 1681s-2(b)**, imposes duties on **"furnishers"** of credit information when they receive notice from a consumer reporting agency that a consumer disputes the accuracy of information. Upon receiving such notice, the furnisher must: **(1)** conduct an investigation with respect to the disputed information; **(2)** review all relevant information provided by the agency; **(3)** report the results to the agency; and **(4)** if the information is inaccurate, incomplete, or cannot be verified, modify, delete, or permanently block reporting of that information. **15 U.S.C. § 1681s-2(b)(l).** A consumer has a private right of action against a furnisher for willful or negligent noncompliance with these duties. **15 U.S.C § 1681n, 16810; Gorman v. Wolpoff & Abramson, LLP, 584 F.3d 1147,**

The Ninth Circuit has held that a consumer states a claim by alleging: (1) he disputed information with a credit reporting agency; (2) the agency notified the furnisher; (3) the furnisher failed to reasonably investigate or correct the information; and (4) the consumer suffered damage as a result. **Gorman, 584 F.3d at 1154-57; Carvalho v. Equifax Info. Servs., LLC, 629 F.3d 876, 890-91 (9th Cir. 2010).**

Here, Plaintiff alleges that:

He put the mortgage account into dispute through written notices to Penny Mac and through disputes submitted to one or more consumer reporting agencies. His written notices expressly directed PennyMac to suspend adverse reporting during the dispute and requested "all credit-reporting records furnished while the account was disputed, including **ACDV** responses and **Metro 2** dispute coding."

After these disputes, Plaintiff obtained credit reports and investigation results showing that PennyMac continued to furnish information that his mortgage account was **30, 60, 90, and 120 days delinquent** without any notation that the account was **"in dispute,"** and without correcting amounts inflated by contested fees and escrow charges.

Plaintiff received a written adverse-action notice from Capital One dated approximately December 10, 2025, expressly relying on the negative mortgage trade-line as a reason for denying an increase to his credit limit. Those facts plausibly allege that PennyMac, as a furnisher, either failed to conduct a reasonable investigation in response to bureau disputes or failed to correct and accurately report the disputed status of the account, in violation of § 1681s-2(b). A trade-line that portrays a borrower as simply **"seriously delinquent"** without any dispute notation, while the borrower is actively contesting ownership, fees, and escrow handling, can be materially misleading and therefore **"inaccurate"** under the **FCRA. See Gorman, 584 F.3d at 1163** (information may be actionable if it is misleading in such a way and to such an extent that it can be expected to adversely affect credit decisions).

Plaintiff further alleges concrete damages: reduced credit scores, denial of requested credit by Capital One, and emotional distress while facing potential loss of his home. That is adequate to support a furnisher-liability claim at this stage, and the **FCRA** claim should not be dismissed.

**D. Quiet Title and Declaratory Relief: Real Controversy Over the Chain of Title and Late Assignment**

Under Oregon law, a person "claiming an interest or estate in real property may maintain a suit in equity against another who claims an adverse interest or estate in the property, for the purpose of determining such conflicting or adverse claims." **ORS 105.605. The Oregon Trust Deed Act, ORS 86.705-86.990**, governs trust deeds like Plaintiff's, and Oregon's recording statutes, **ORS Chapter 93**, govern the effect of recorded and unrecorded instruments.

Plaintiff alleges that:

He is the record owner of the property at **54248 Kalberer Rd**, encumbered by a **2017 trust deed** identifying LoanStar as lender, MERS as beneficiary/nominee, and Ticor Title as trustee.

LoanStar later ceased operations, and yet the **Columbia County Records**, for years, showed only the original 2017 trust deed and **NO ASSIGNMENT** to Penny Mac or Fannie Mae.

PennyMac began servicing the loan and collecting payments, even though no assignment of the trust deed to Penny Mac appeared in public records. Plaintiff had never received proper written transfer or ownership notices from LoanStar, Penny Mac, or Fannie Mae.

Only after Plaintiff filed this action (October 27, 2025) and recorded a **lis pendens** (November 12, 2025) did MERS execute, and Defendants record a **"Corporate Assignment of Deed of Trust"** to PennyMac on November 25, 2025, many years after.

These allegations present a concrete, live controversy over: **(I)** whether Penny Mac and / or Fannie Mae can establish a lawful chain of title from the original lender; **(2)** the validity and effect of the November 25, 2025 assignment; and **(3)** who presently holds a valid, enforceable lien on Plaintiff's home. That is the core function of a quiet-title and declaratory-judgment action, not a request for a "free house." origination and only after the dispute became public.

These allegations present a concrete, live controversy over: **(I)** whether Penny Mac and/or Fannie Mae can establish a lawful chain of title from the original lender; **(2)** the validity and effect of the November 25, 2025 assignment; and **(3)** who presently holds a valid, enforceable lien on Plaintiff's home. That is the core function of a quiet-title and declaratory-judgment action, not a request for a "free house."

While Oregon law recognizes that the beneficial interest in a trust deed generally follows the note by operation of law, the validity and timing of assignments, and the identity of the actual **"beneficiary"** and **"person entitled to enforce"** the note, remain factual and legal questions. See **ORS 86.705(2), (4), (8); ORS 73.0301 (definition of "person entitled to enforce" under the UCC)**. Plaintiff alleges that the original lender is defunct, that recorded assignments were missing until after suit, and that no defendant has yet produced a clear, consistent chain of transfers of the note and trust deed. Those allegations are sufficient, at a minimum, to warrant discovery and a declaratory determination rather than dismissal on the pleadings.

### E. Fannie Mae and MERS Are Proper Defendants

Defendants argue that Fannie Mae and MERS are merely "nominal" or "fraudulently joined" parties. The Complaint and Defendants' own submissions contradict this.

PennyMac's written correspondence to Plaintiff identifies Fannie Mae as the owner or investor of his loan, while PennyMac acts as servicer and beneficiary of record. Fannie Mae's claimed ownership is directly at issue in determining who has standing to enforce the note and trust deed and whose interests are affected by any quiet-title or declaratory judgment. Likewise, MERS appears as nominee/beneficiary of record on the 201 7 trust deed and is the entity that executed the November 25, 2025 **"Corporate Assignment of Deed of Trust"** that Defendants rely on. MERS' authority and the validity of that assignment are part of the chain-of-title dispute.

Because both Fannie Mae and MERS are alleged participants in the claimed chain of title and beneficiaries of the security interest in Plaintiff's home, they are proper parties. Whether they ultimately are entitled to judgment is a question for later; it is not a basis for pleading-stage dismissal.

### F. At Minimum, Leave to Amend Should Be Granted

If the Court concludes that any of Plaintiff's claims are not pleaded with sufficient technical detail, the appropriate remedy is to allow amendment, not to dismiss with prejudice. **Fed. R. Civ. P. 15(a)(2) (The court should freely give leave when justice so requires).** This is Plaintiff's first federal response, he is proceeding without counsel, and he has already shown his ability and willingness to add detail and attach supporting documents. If necessary, Plaintiff can amend to:

1. Attach additional **QWR, NOE**, and credit-dispute correspondence;

2. More specifically identify the statutory subsections of **RESPA, Regulation X**, and the **FCRA** implicated by Defendants' conduct;

3. Plead in greater detail the dates and content of credit bureau disputes and investigation results; and

4. Attach certified copies of the 2017 trust deed, the November 25, 2025 assignment, and county recording indexes.

Because amendment can plainly cure any perceived pleading defects, dismissal with prejudice would be improper.

### G. Ticor Title Is a Proper Party as Trustee Under the Deed of Trust

Ticor Title has filed a **Joinder in the Motion to Dismiss**, arguing that Plaintiff's Complaint does not state a claim against it. That argument ignores Ticor's role under the recorded **2017 deed of trust** and the **quiet-title and declaratory relief** that Plaintiff seeks.

The 2017 trust deed securing Plaintiff's loan identifies Ticor as the trustee. As trustee under an Oregon trust deed, Ticor holds bare legal title to the property in trust for the benefit of the alleged beneficiary and is the party that would conduct or participate in any nonjudicial foreclosure proceedings. **See ORS 86.705(8) (defining "trustee")** and **ORS 86.710 (authorizing trust deeds to secure obligations and describing trustee's role)**. Because Plaintiff's quiet-title claim seeks a judicial determination of the validity and enforceability of that trust deed and the later-recorded November 25, 2025 **"Corporate Assignment of Deed of Trust,"** the trustee of record is a necessary party to ensure complete relief and to bind the record title. **See ORS 105 .605** (quiet title action may be brought against "another who claims an adverse interest or estate in the property").

Plaintiff's Complaint alleges that the chain of title and assignments for his loan are defective and that the November 25, 2025 assignment was recorded only after this lawsuit and **lis pendens**. Those allegations implicate the interests and duties of the trustee named in the deed of trust. Ticor's participation is therefore required to determine the status of the deed of trust, the effect of the late assignment, and the identity of any party with power to foreclose under Oregon law.

To the extent the Court concludes that the current pleadings do not spell out Ticor's role with enough detail, the appropriate remedy is to allow Plaintiff to amend to clarify Ticor's status as trustee and its connection to the relief sought, not to dismiss Ticor from the case at the threshold.

**H. Counsel's "Attempts to Manufacture Purported Statutory Violations" Remark Is Misplaced**

Defendants' motion asserts that **"Plaintiff's complaint attempts to manufacture purported statutory violations."** That statement unfairly impugns Plaintiff's honesty and mischaracterizes the nature of his claims.

Plaintiff's allegations are grounded in real, contemporaneous documents and communications: certified-mail **QWRs** and **Notices of Error**; Penny Mac's own response letters; county recording records; mortgage statements; credit-bureau disclosures; and an adverse-action letter from Capital One. He has not invented documents or fabricated events; he has attached and described them as accurately as he can as a self-represented homeowner.

Whether those facts ultimately establish liability under **RESPA, the FCRA,** or Oregon law is a matter for legal analysis and, eventually, evidence. I is not a reason to accuse Plaintiff of **"manufacturing"** violations. Disagreement with a pro se litigant's interpretation of complex statutes does not transform genuine disputes over servicing, credit reporting, and chain of title into bad faith. To the extent the motion suggests otherwise, the Court should disregard that rhetoric and focus on whether the pleaded facts, taken as true, state any plausible claim for relief. Which they do.

**V. Conclusion**

For the foregoing reasons, Plaintiff respectfully requests that the **Court deny Defendants' Motion to Dismiss** in its entirety. In the alternative, if the Court determines that any claim is not adequately pleaded, Plaintiff requests leave to file an amended complaint to cure any deficiencies.

Dated: 1 – 7 – 2026

Respectfully submitted,

BY: _____

_/s/ **Ivan R. Higgs, Plaintiff, Pro Se**
*Plaintiff reserves all rights and remedies at law and in equity*

54248 Kalberer Rd

Scappoose, Oregon

Phone: 503-543-2956