Ivan R. Higgs
54248 Kalberer Rd
Scappoose, Oregon 97056
(503) 543-2956
ivanhggs@yahoo.com
Plaintiff, Pro Se

**UNITED STATES DISTRICT COURT**
**DISTRICT OF OREGON**
**PORTLAND DIVISION**

IVAN RICHARD HIGGS,
Plaintiff,

v.

PENNYMAC LOAN SERVICES, LLC; FEDERAL NATIONAL MORTGAGE ASSOCIATION (FANNIE MAE); MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. (MERS); LOAN STAR HOME LOANS, LLC d/b/a LOANSTAR HOME LENDING; TICOR TITLE; and DOES 1-10,
Defendants.

**Case No. 3:25-cv-02335-YY**

**PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION UNDER FED. R. CIV. P. 65**

## LR 7-1 CERTIFICATION AND RULE 65 POSTURE

Plaintiff Ivan Richard Higgs certifies that, in compliance with Local Rule 7-1(a), he made a good-faith effort to confer with counsel of record for PennyMac Loan Services, LLC, Federal National Mortgage Association, Mortgage Electronic Registration Systems, Inc., and Ticor Title regarding the emergency **Rule 65** relief requested in this motion and preservation of the status quo. Plaintiff was unable to reach an agreement. Because the trustee-sale process is active and Plaintiff seeks emergency preservation of the status quo, Plaintiff files this motion under **Federal Rule of Civil Procedure 65**. On June 11, 2026, the Court clarified that its prior restriction on additional motion practice does not apply to **Rule 65** motions. Ex. 22; Ex. 43.

## MOTION

Plaintiff moves for a temporary restraining order and preliminary injunction preserving the status quo and enjoining Defendants, Clear Recon Corporation, and all officers, agents, employees, attorneys, trustees, servicers, vendors, auctioneers, and persons acting in active concert or participation with them from conducting, authorizing, advertising, continuing, completing, or recording any trustee sale or trustee's deed concerning the real property located at 54248 Kalberer Rd, Scappoose, Oregon 97056 (the "Property"), including the trustee sale noticed for October 13,

## RELIEF REQUESTED

1. Temporarily restraining and preliminarily enjoining any trustee sale, foreclosure sale, auction, postponement-to-sale, trustee's deed, lockout, eviction, or transfer of title concerning the Property until further order of the Court;
2. Ordering Defendants and Clear Recon Corporation to preserve all servicing, foreclosure, trustee, MERS, Fannie Mae, investor, vendor, notary, assignment, and sale records concerning the Property;
3. Ordering production or identification of the Appointment/Substitution of Successor Trustee, Notice of Default and Election to Sell, Notice of Trustee's Sale, affidavits of mailing, affidavits of service, affidavits of service attempts/posting, affidavits of publication, and any Oregon Foreclosure Avoidance Program certificate or compliance documents;
4. Ordering Defendants to produce or identify the source of MERS' claimed authority to execute the November 25, 2025 Corporate Assignment and any authority from LoanStar, any LoanStar successor, Fannie Mae, PennyMac, or the person entitled to enforce the Note;
5. Ordering Defendants to produce or identify PennyMac's Oregon mortgage-servicer license status or exemption for all servicing, collection, escrow, credit-reporting, default, acceleration, foreclosure-referral, and trustee-sale acts occurring after Oregon's mortgage-servicer licensing requirement became operative;
6. Ordering Defendants to preserve and produce or identify all **RESPA/QWR/Notice of Error/Request for Information** logs, FCRA dispute-investigation records, credit-reporting transmission records, servicing notes, escrow records, payoff/reinstatement records, and foreclosure-referral records concerning Plaintiff's loan;
7. Ordering Defendants and Clear Recon to produce proof of statutory notice compliance as to Jennifer Higgs/ Thomson, including first-class mail, certified mail, return receipts, personal service, occupant service, posting, and publication;
8. Waiving bond under **Fed. R. Civ. P. 65(c),** or setting a nominal bond, because the injunction preserves the status quo, the home is unique, Plaintiff is pro se, and Defendants' recoverable harm from delay is financial and calculable.

## INTRODUCTION

This is not a request for a windfall. Plaintiff is asking the Court to stop a trustee sale long enough to require the foreclosing parties to prove the authority chain, prove trustee authority, prove Oregon statutory notice compliance, and prove the lawful party and amount before Plaintiff's home is sold.

The facts now form a who-what-when-where-why-and-how record. The Deed of Trust identifies LoanStar as lender, Ticor as trustee, and Mortgage Electronic Registration Systems, Inc. ("MERS") as nominee/beneficiary. Ex. 4. MERS was not the lender and was not owed the debt. Oregon law requires actual authority, not labels.

After this dispute was already in litigation and after lis pendens was of record, MERS and/or PennyMac recorded a Corporate Assignment on November 25, 2025, Instrument No. 2025-06917, purporting to assign not only the Deed of Trust but also the Note, beneficial interest, money due, and accrued rights to PennyMac. Ex. 5; Ex. 6.
PennyMac has admitted in writing that servicing transferred from LoanStar to PennyMac effective August 1, 2017, and PennyMac identified Fannie Mae as owner/investor with pool/trust number BH4959. Exs. 9-11. Oregon licensing records raise serious questions about PennyMac's Oregon mortgage-servicer licensing status for the period after Oregon's mortgage-servicer licensing requirement became operative. Ex. 13. On or about June 11, 2026, after Plaintiff filed an Emergency Notice regarding foreclosure activity, trustee-sale papers were handed to Plaintiff at the home. Exs. 20-22. The papers relate to a trustee sale set for October 13, 2026. Jennifer Higgs/ Thomson is a co-owner, grantor/trustor, and occupant, but she was at work when the papers were delivered, was not asked for, and was not handed papers. Exs. 23-24.
The Court has already clarified that Rule 65 motion practice is available. Ex. 22; Ex. 43. Without an injunction, the sale process will continue while the authority chain, statutory notice, successor-trustee authority, and licensing issues remain unadjudicated.

## FACTUAL BACKGROUND

### A. The 2017 loan documents identify LoanStar, Ticor, and MERS.

On or about June 26, 2017, Plaintiff obtained a mortgage loan from LoanStar Home Loans, LLC d/b/a LoanStar Home Lending to purchase the Property. The Deed of Trust identifies Ivan Higgs and Jennifer Thomson as borrowers/trustors, LoanStar as lender, Ticor as trustee, and MERS as nominee/beneficiary. Ex. 4. Jennifer Thomson is now Jennifer Higgs. Jennifer signed the Deed of Trust but did not sign the Note. Exs. 4, 24. That distinction matters for statutory notice and ownership/occupancy, because Jennifer is a co-owner, grantor/ trustor, and occupant whose interest may be affected by a trustee sale.

### B. PennyMac admits the servicing transfer and Fannie Mae investor information.

PennyMac admitted that servicing of the loan transferred from LoanStar to PennyMac effective August 1, 2017. Ex. 10. PennyMac also identified Fannie Mae as owner/investor and identified Fannie Mae pool/trust number BH4959. Exs. 9-11.
The MERS milestone records show the loan was registered by LoanStar shortly after origination, show servicing transfer activity to PennyMac, and show beneficial-rights information involving Fannie Mae. Exs. 7-8. These records raise questions about who held what interest and when, and whether each actor had recorded authority and actual authority to act.

### C. Plaintiff disputed servicing, accounting, ownership, and authority before foreclosure escalated.

Beginning in 2025, Plaintiff sent written requests, notices of error, and requests for information to PennyMac concerning servicing, escrow, insurance, accounting, credit reporting, ownership, and

authority. Exs. 14-17.

PennyMac acknowledged Plaintiff's inquiry and stated that if the inquiry concerned a payment dispute, PennyMac would not furnish adverse information to consumer reporting agencies regarding the disputed payment for 60 days. Ex. 15. Plaintiff's credit-reporting exhibits show adverse reporting and resulting harm. Ex. 18.

**D. The Corporate Assignment was recorded after litigation and lis pendens were already in play.**

Plaintiff filed suit and recorded lis pendens against the Property. The recorded lis pendens is Columbia County Instrument No. 2025-006555. Ex. 5. A Notice of Filing of Lis Pendens was also filed in the court record. Exs. 1-2.

The Corporate Assignment from MERS to PennyMac was recorded later on November 25, 2025, as Instrument No. 2025-06917. Ex. 6. The assignment was recorded after the dispute had ripened into litigation and after public title/foreclosure-authority notice had been placed of record.

The timing is not a technicality. **ORS 93.740** gives lis pendens notice effect from recording. The post-lis-pendens Corporate Assignment does not moot, erase, or automatically resolve the authority dispute already pending before the Court. At minimum, it confirms that Defendants seek to rely on a later-recorded assignment while the same authority chain is under judicial challenge. The Court should preserve the status quo until the validity and effect of that assignment are adjudicated.

**E. The Court record shows the assignment/authenticity issues are actively disputed.**

Plaintiff sought targeted discovery into the November 25, 2025 Corporate Assignment, the original promissory Note, notary/vendor logs, powers of attorney, corporate resolutions, vendor contracts, and related authorization documents. Exs. 34-37.

The Court later entered a new scheduling order extending discovery until 90 days after final ruling on the pending dispositive/amendment motions and denied Plaintiff's discovery-extension motion as moot. Ex. 43. That was not a merits ruling on the assignment/authenticity issues.

**F. Plaintiff has diligently pursued LoanStar service and the successor-entity trail.**

Plaintiff attempted service on LoanStar and responded to the Court's Order to Show Cause by explaining that LoanStar appeared to have been acquired, renamed, or succeeded by another entity. Ex. 50.

Plaintiff continued investigating and filed a supplemental notice explaining the trail through LoanStar, Commerce Home Mortgage, Change Home Mortgage, Change Home Loans, Change Lending, Paracorp, and Data Research. Exs. 38-42, 51-53.

LoanStar remains central because the Note and Deed of Trust begin with LoanStar. Plaintiff's inability to complete service sooner was caused by corporate acquisition, name changes, inactive registry status, and registered-agent confusion-not bad faith or lack of diligence.

**G. The trustee-sale notice raises immediate irreparable harm and statutory-notice issues.**

Plaintiff received trustee-sale papers concerning an October 13, 2026 trustee sale. Ex. 20. The PennyMac dashboard also showed foreclosure processing and disabled online payments. Ex. 21. Jennifer Higgs/Thomson was at work when the papers were delivered. The papers were handed to Ivan Higgs. The person delivering the papers did not ask for Jennifer, did not wait for Jennifer, and did not hand Jennifer any papers. Plaintiff and Jennifer are not aware of Jennifer receiving separate first-class mail, certified mail, personal service, occupant service, or other statutory notice. Exs. 23-24.

Clear Recon's proof of authority and proof of statutory compliance have not been produced to Plaintiff. Plaintiff disputes the sufficiency of statutory notice under **ORS 86.756, ORS 86.764**, and **ORS 86.774**, and disputes whether Clear Recon has recorded and properly supported authority under **ORS 86.752**.

## LEGAL STANDARD

**Federal Rule of Civil Procedure 65** authorizes temporary restraining orders and preliminary injunctions. Rule 65(d) binds parties, their officers, agents, servants, employees, attorneys, and other persons in active concert or participation with them who receive actual notice.

Under ***Winter v. Natural Resources Defense Council, Inc.,*** **555 U.S. 7, 20 (2008)**, a plaintiff seeking preliminary injunctive relief must show likely success on the merits, likely irreparable harm, the balance of equities tips in his favor, and an injunction is in the public interest.

The Ninth Circuit also recognizes the serious-questions approach: a preliminary injunction may issue when serious questions going to the merits are raised, the balance of hardships tips sharply in the movant's favor, irreparable harm is likely, and the injunction is in the public interest. ***Alliance for the Wild Rockies v. Cottrell,*** **632 F.3d 1127, 1131-35 (9th Cir. 2011)**.

Loss of an interest in real property constitutes irreparable injury. ***Park Village Apartment Tenants Ass'n v. Mortimer Howard Trust,*** **636 F.3d 1150, 1159 (9th Cir. 2011).**

Plaintiff's underlying federal claims also arise under federal statutes. **RESPA, 12 U.S.C. § 2605,** governs mortgage servicing duties, qualified written requests, escrow administration, credit-reporting protection during certain payment disputes, and servicer prohibitions. **FCRA, 15 U.S.C. § 1681s-2(b),** imposes duties on furnishers after notice of a consumer dispute from a consumer reporting agency. Plaintiff also seeks declaratory relief under **28 U.S.C. § 2201** because an actual controversy exists concerning Defendants' claimed authority to enforce the Note, Deed of Trust, assignment, servicing/default pipeline, and foreclosure process.

Oregon law also supports pre-sale judicial intervention. Oregon's Trust Deed Act permits nonjudicial foreclosure only when statutory conditions are satisfied, and the statutory notice period gives a grantor time to seek judicial intervention before the sale occurs. ***Brandrup v. ReconTrust Co., N.A.,*** **353 Or. 668, 677, 303 P.3d 301 (2013).** That timing matters because, once a trustee's sale is completed, **ORS 86.797(1)** forecloses and terminates the interests of persons who received statutory notice and sharply limits post-sale remedies. Plaintiff seeks relief before any sale is completed, before title changes hands, and before post-sale finality issues arise.

## ARGUMENT

### I. Serious questions exist regarding MERS' authority and the post-lis-pendens Corporate Assignment.

The Deed of Trust labels MERS as nominee/beneficiary, but MERS was not the lender and was not owed the debt. Ex. 4. Under ***Brandrup v. ReconTrust Co.,*** **353 Or. 668, 303 P.3d 301 (2013)**, MERS' designation as beneficiary does not make MERS the Oregon Trust Deed Act beneficiary unless MERS is the lender or lender's successor. MERS' authority, if any, must derive from the original beneficiary and successors with actual authority.

Plaintiff does not contend that every transfer of the Note had to be separately recorded. Plaintiff's argument is narrower: MERS' label as nominee/beneficiary did not make MERS the OTDA beneficiary, and the 2025 Corporate Assignment is void or, at minimum, invalid and legally ineffective to support nonjudicial foreclosure unless Defendants prove MERS had actual authority from the true beneficiary or its successors when MERS executed the assignment.

***Niday v. GMAC Mortgage, LLC,*** **353 Or. 648, 302 P.3d 444 (2013)**, applied the same Oregon Trust Deed Act principles to MERS-based nonjudicial foreclosure disputes and recognized that genuine issues may exist where the foreclosure record does not establish the required authority chain.

***Federal National Mortgage Association v. Goodrich,*** **275 Or. App. 77, 364 P.3d 696 (2015)**, further confirms that a foreclosure claimant cannot rely on MERS label alone where the record does not establish MERS' authority from the actual beneficiary. Here, Defendants' own MERS corporate disclosure shows MERS is a subsidiary of MERSCORP Holdings through ICE entities; it does not prove MERS was the lender, noteholder, LoanStar's successor, or agent with actual authority to transfer the Note and all accrued rights after litigation began. Ex. 47.

The November 25, 2025 Corporate Assignment purports to assign the Deed of Trust, Note, beneficial interest, money due, and accrued rights to PennyMac. Ex. 6. That assignment was recorded after the property was already under litigation and lis pendens. Exs. 5-6. The Court should stop the sale until Defendants prove that MERS had lawful capacity and actual authority to execute that assignment and that the assignment was effective as foreclosure authority.

### II. Serious questions exist regarding compliance with ORS 86.752 and Clear Recon's trustee authority.

**ORS 86.752** prohibits foreclosure by advertisement and sale unless the trust deed, assignments, and any appointment of successor trustee are recorded in the counties where the property is located. Plaintiff has not been provided a complete recorded foreclosure chain establishing Clear Recon's successor-trustee authority, notice of default, election to sell, and statutory proof of compliance.

Because the current sale is being pursued through a trustee-sale process, Clear Recon's authority is not a side issue. It is a statutory condition precedent to nonjudicial foreclosure. The Court should require the Appointment/Substitution of Successor Trustee, Notice of Default and Election to Sell, Notice of Trustee's Sale, and all affidavits of mailing, service, posting, and publication before allowing any sale to proceed.

## III. Serious questions exist regarding Jennifer Higgs/Thomson's statutory notice.

The Deed of Trust and title materials identify Jennifer Thomson/Higgs as a borrower/trustor/co-owner, and she is an occupant of the Property. Exs. 4, 24. **ORS 86.756** requires notice to the grantor by both first-class and certified mail with return receipt requested. **ORS 86.764** requires notice of sale to be served or mailed to the grantor and other listed persons. **ORS 86.774** requires service/publication and recording of affidavits of mailing, service, service attempts/posting, and publication at or before the sale.

***NW Property Wholesalers, LLC v. Spitz,*** **252 Or. App. 29, 287 P.3d 1106 (2012)**, recognizes the importance of the statutory notice method for grantor-occupants. Here, the sale papers were handed to Ivan while Jennifer was at work; Jennifer was not asked for, not handed papers, and has not received separate first-class mail, certified mail, personal service, or occupant-service notice to Plaintiff's knowledge. Exs. 23-24.

Plaintiff cannot prove what Clear Recon did not do inside its own system. Plaintiff can declare what occurred at the door, what Jennifer did not receive, and what proof has not been provided. Oregon law requires the trustee to maintain and record proof of statutory notice compliance. That proof has not been produced.

## IV. Serious questions exist regarding PennyMac's Oregon servicing authority and licensing status.

PennyMac admits servicing transferred from LoanStar to PennyMac effective August 1, 2017. Ex. 10. Oregon's mortgage-servicer licensing framework requires a person to obtain or renew a license before directly or indirectly servicing an Oregon residential mortgage loan, unless an exception applies. ORS 86A.306.

Plaintiff's Oregon licensing records show PennyMac's Oregon Mortgage Servicer License MS-47, its issue/status dates, and separate mortgage-lending license information. Ex. 13. Plaintiff does not ask the Court to finally adjudicate licensing violations in this emergency motion. Plaintiff asks the Court to preserve the status quo until PennyMac proves its license or exemption for all servicing, collection, escrow, credit-reporting, default, acceleration, foreclosure-referral, and trustee-sale acts that depend on PennyMac's claimed authority.

If PennyMac lacked required servicing authority or cannot prove exemption during any relevant period, serious questions exist regarding the servicing/default/foreclosure pipeline leading to the scheduled sale.

## V. Serious questions exist regarding RESPA, FCRA, and federal servicing duties.

Plaintiff's **Rule 65** request is also supported by serious questions under federal law. PennyMac is the admitted servicer of Plaintiff's loan. Ex. 10. **RESPA, 12 U.S.C. § 2605(e)**, requires a mortgage servicer to acknowledge and respond to qualified written requests and borrower inquiries relating to servicing. **Section 2605(e)(3)** also restricts adverse credit reporting during the 60-day period after receipt of certain qualified written requests relating to disputed payments. **Section 2605(k)(1)(C)** prohibits a servicer from failing to take timely action to respond to a borrower's requests to correct

errors relating to payment allocation, payoff balances, avoiding foreclosure, or other standard servicer duties. Plaintiff sent written requests, notices of error, and requests for information concerning servicing, escrow, accounting, credit reporting, ownership, and authority before foreclosure escalated. Exs. 14-17. PennyMac acknowledged Plaintiff's inquiry and stated that if the inquiry concerned a payment dispute, PennyMac would not furnish adverse information to consumer reporting agencies regarding the disputed payment for 60 days. Ex. 15. Plaintiff's credit-reporting exhibits show adverse reporting and resulting harm. Ex. 18.

**FCRA, 15 U.S.C. § 1681s-2(b)**, further requires a furnisher that receives notice of a consumer dispute from a consumer reporting agency to conduct a reasonable investigation, review relevant information, report the results, and correct, delete, modify, or block information that is incomplete, inaccurate, or unverifiable.

Plaintiff disputes whether PennyMac complied with those federal duties before using disputed servicing, accounting, default, and credit-reporting information as part of the foreclosure pipeline.

Plaintiff does not ask the Court to finally adjudicate **RESPA** or **FCRA** liability in this emergency motion. Plaintiff asks the Court to preserve the status quo because the same disputed servicing, accounting, credit-reporting, and default pipeline now supports a nonjudicial sale of Plaintiff's home.

## VI. Plaintiff has shown likely irreparable harm.

The scheduled sale threatens Plaintiff's home and Jennifer's home. The loss of real property is irreparable. Money damages after a wrongful sale would not restore the unique property interest, the home, the right of possession, the family disruption, or the statutory right to have foreclosure authority and notice compliance determined before sale.

The sale also threatens to moot or severely impair the Court's ability to adjudicate the authority chain, MERS assignment, trustee authority, and notice defects before title changes hands.

## VII. The balance of equities sharply favors preserving the status quo.

Plaintiff faces loss of the home. Defendants face only delay while they prove the authority they already claim to possess. If Defendants and Clear Recon have lawful authority, a temporary injunction simply requires them to show it. If they do not, a sale now would cause exactly the irreparable harm **Rule 65** exists to prevent. Plaintiff is not refusing to pay. Plaintiff has stated that he is ready, willing, and able to cure upon proof of the lawful creditor, lawful authority, and accurate amount. Exs. 23, 28.

## VIII. The public interest favors compliance with Oregon's nonjudicial foreclosure statutes.

Oregon allows nonjudicial foreclosure only if the statutory safeguards are followed. The public interest is not served by allowing a home to be sold while the foreclosing parties' authority, trustee appointment, notice compliance, and licensing authority remain seriously disputed and undocumented. An injunction would not cancel the debt or award Plaintiff a windfall. It would require proof before sale.

**CONCLUSION**

Plaintiff respectfully requests that the Court grant a temporary restraining order and preliminary injunction stopping the October 13, 2026 trustee sale and any related foreclosure transfer activity until Defendants and Clear Recon prove lawful beneficiary authority, lawful servicer authority, lawful successor-trustee authority, statutory notice compliance as to all grantors/owners/occupants, and Oregon foreclosure compliance.

Plaintiff reserves all rights and remedies at law and in equity.

DATED: June 15, 2026.

Respectfully submitted,

/s/ Ivan R. Higgs
Ivan R. Higgs
Plaintiff, Pro Se
54248 Kalberer Rd
Scappoose, OR 97056
(503) 543-2956
ivanhggs@yahoo.com

**CERTIFICATE OF SERVICE**

I certify that on June 15, 2026, I served a true and correct copy of this filing and all supporting papers through the Court's CM/ECF system on all counsel of record, including counsel for PennyMac Loan Services, LLC, Federal National Mortgage Association, Mortgage Electronic Registration Systems, Inc., and Ticor Title.
I further certify that on June 15, 2026, I served a copy of this motion and supporting papers on Clear Recon Corporation by certified mail and first-class mail at:

Clear Recon Corporation
1915 NE Stucki Ave
Hillsboro, OR 97006
Trustee Ref. No. 144620-OR

To the extent any party is not served through CM/ECF, I will serve that party by lawful means permitted by the Federal Rules of Civil Procedure and the Local Rules of this Court.

Plaintiff reserves all rights and remedies at law and in equity.

DATED: June 15, 2026.

/s/ Ivan R. Higgs
Ivan R. Higgs
Plaintiff, Pro Se