**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF OREGON**

| | | |
|---|---|---|
| IVAN RICHARD HIGGS, | ) | Case No. 3:25-cv-02335-YY |
| Plaintiff, | ) | |
| v. | ) | |
| PENNYMAC LOAN SERVICES, LLC; | ) | |
| FEDERAL NATIONAL MORTGAGE | ) | |
| ASSOCIATION; | ) | |
| MORTGAGE ELECTRONIC REGISTRATION | ) | |
| SYSTEMS, INC.; | ) | |
| LOANSTAR HOME LOANS, LLC dba | ) | |
| LOANSTAR HOME LENDING; and | ) | |
| TICOR TITLE, | ) | |
| Defendants. | ) | |

## PROPOSED FIRST AMENDED COMPLAINT

a. DECLARATORY JUDGMENT

b. QUIET TITLE (ORS 105.605)

c. VIOLATION OF REAL ESTATE SETTLEMENT PROCEDURES ACT (12 U.S.C. § 2605; REGULATION X)

d. VIOLATION OF FAIR CREDIT REPORTING ACT (15 U.S.C. § 1681s-2(b))

e. ACCOUNTING

f. REQUEST FOR INJUNCTIVE RELIEF

JURY TRIAL DEMANDED

Plaintiff Ivan Richard Higgs ("Plaintiff"), pro se, alleges as follows:

### INTRODUCTION

1. This action arises from Defendants' conduct concerning Plaintiff's residential mortgage loan, the servicing of that loan, the handling of insurance and escrow payments, the processing of Plaintiff's written notices of error and requests for information, the furnishing of disputed credit information, and Defendants' claimed authority to enforce the Deed of Trust against Plaintiff's property.

2. Plaintiff seeks declaratory relief, quiet title, an accounting, damages, and injunctive relief because Defendants have failed to establish a lawful and complete chain of authority for the loan, the Deed of Trust, and the threatened foreclosure.

3. Plaintiff alleges that the claimed chain of title is defective, that the recorded instruments and foreclosure-related documents relied upon by Defendants are void, invalid, or unenforceable, and that Defendants therefore lack lawful authority to enforce the asserted lien against the Property.

4. Plaintiff was current on his loan payments when he initiated this action in state court. The foreclosure proceedings did not commence until February 2026, after this lawsuit was filed. Defendants removed this case from state court to federal court in December 2025.

5. Any threatened nonjudicial foreclosure is a consequence of those servicing and title defects.

## JURISDICTION AND VENUE

6. This Court has subject matter jurisdiction under 28 U.S.C. § 1331 because Plaintiff's claims arise under federal law, including the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2605 et seq., and the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 et seq.

7. This Court has supplemental jurisdiction over Plaintiff's related state-law claims under 28 U.S.C. § 1367.

8. Venue is proper in this District under 28 U.S.C. § 1391 because a substantial part of the events and omissions giving rise to the claims occurred here, and the Property at issue is located in Columbia County, Oregon, within this District.

## PARTIES

9. Plaintiff Ivan Richard Higgs is an individual residing in Columbia County, Oregon, and is the borrower and owner in possession of the Property.

10. Defendant PennyMac Loan Services, LLC ("PennyMac") is a mortgage loan servicer that

services Plaintiff's loan and account.

11. Defendant Federal National Mortgage Association ("Fannie Mae") is a federally chartered corporation that, on information and belief, claims to own or have an interest in Plaintiff's loan and/or the Deed of Trust.

12. Defendant Mortgage Electronic Registration Systems, Inc. ("MERS") is a Delaware corporation named in the Deed of Trust as nominee for the lender and lender's successors and assigns.

13. On information and belief, MERS was administratively dissolved in the State of Oregon in 2010 and has had no legal authority to act in Oregon since that time. Plaintiff has documentary evidence of MERS's dissolution.

14. Defendant LoanStar Home Loans, LLC dba LoanStar Home Lending ("LoanStar") was the original lender on the loan at issue.

15. Defendant Ticor Title ("Ticor") is, on information and belief, the original trustee named in the Deed of Trust and the trustee identified in the recorded loan documents and foreclosure-related notices.

## FACTUAL ALLEGATIONS

### A. The Loan, Note, Deed of Trust, and Trustee

16. On or about June 26, 2017, Plaintiff obtained a residential mortgage loan from LoanStar in the original principal amount of $321,750, evidenced by a promissory note ("Note").

17. The loan was secured by a Deed of Trust recorded in Columbia County, Oregon, on June 28, 2017, as Instrument No. 2017-006018 ("Deed of Trust").

18. The Deed of Trust identifies LoanStar as the lender, Ticor as the trustee, and Plaintiff as the borrower.

19. The Deed of Trust names MERS as a separate corporation acting solely as nominee for the lender and lender's successors and assigns, and states that MERS is the beneficiary of the Security Instrument.

20. Plaintiff alleges that the Deed of Trust and related loan documents were later transferred, assigned, securitized, or otherwise handled in a manner that created a disputed chain of title and enforcement authority.

21. Plaintiff alleges that Fannie Mae now claims to be the owner of the Note or holder of the beneficial interest, and PennyMac acts as servicer for Fannie Mae or another claimed principal.

22. Plaintiff alleges that Ticor's role as trustee is central to any trustee-sale or foreclosure-related action because a trustee acts only within the authority granted by the Deed of Trust and applicable law.

**B. LoanStar, MERS, and the Chain of Title**

23. LoanStar was the original lender identified in the Deed of Trust.

24. On information and belief, LoanStar was acquired by Commerce Home Mortgage, LLC on or about June 26, 2018, and Commerce Home Mortgage, LLC later became Change Lending, LLC.

25. On information and belief, LoanStar's business registration in Oregon lapsed in 2019.

26. No recorded assignment reflecting a lawful transfer of beneficial interest from LoanStar or its lawful successor to the current claimed beneficiary was recorded in Columbia County between June 28, 2017, and November 26, 2025, other than the later corporate assignment alleged below.

27. On or about November 26, 2025, an instrument titled "Corporate Assignment of Deed of Trust" was recorded in Columbia County as Instrument No. 2025-06917 ("Corporate Assignment").

28. The Corporate Assignment purports to transfer beneficial interest under the Deed of Trust from MERS, as nominee for LoanStar and its successors and assigns, to PennyMac.

29. The Corporate Assignment was signed by Monya Jones as "Vice President" of MERS and notarized by Cierra Griffin, Notary Public, State of Michigan.

30. Plaintiff further alleges that MERS was administratively dissolved in Oregon in 2010, seven years before Plaintiff's loan was originated and fifteen years before MERS purported to execute the Corporate Assignment.

31. A dissolved entity has no legal authority to act, execute assignments, or transfer interests in real property. Because MERS was dissolved in Oregon at the time it purported to execute the Corporate Assignment, the assignment is void and of no legal effect.

32. Plaintiff alleges that at the time of the Corporate Assignment, MERS was not the holder of the Note, did not own the secured obligation, and did not have lawful authority to assign beneficial interest in the Deed of Trust absent authority from the actual beneficiary or its lawful successor.

33. Plaintiff further alleges that the Corporate Assignment is void, invalid, or unenforceable because it was executed without lawful authority and because Defendants have not established a complete and lawful chain of title authorizing the transfer.

34. Under Oregon law, nonjudicial foreclosure requires compliance with the statutory trust deed scheme, including the recorded trust deed, any assignments of the trust deed, and the authority of the acting parties. See ORS 86.735(1).

35. The Oregon Supreme Court has held that where MERS is named as a nominee for the lender, MERS is not the beneficiary for purposes of Oregon's Trust Deed Act unless it is also the holder of the promissory note or otherwise holds the secured obligation. See Brandrup v. ReconTrust Co., N.A., 353 Or. 668, 689-90 (2013); Niday v. GMAC Mortg., LLC, 353 Or. 648, 661 (2013).

36. In Fed. Home Loan Mortg. Corp. v. Smith, 287 Or. App. 42 (2017), the Oregon Court of Appeals applied Brandrup and held that a purported MERS assignment did not establish the authority necessary to support foreclosure on the record before it.

37. Plaintiff alleges that the same defects exist here.

38. Plaintiff further alleges that the Deed of Trust follows the obligation it secures and cannot be validly separated from the enforceable debt. See Carpenter v. Longan, 83 U.S. (16

Wall.) 271, 274 (1872).

39. Because the Corporate Assignment was executed by an entity lacking lawful authority, it is void and of no effect.

40. Consequently, PennyMac and Fannie Mae cannot establish the lawful chain of assignments required by law to support foreclosure.

**C. Ticor Title's Role**

41. Ticor was the original trustee named in the Deed of Trust.

42. As trustee, Ticor's role is to act only in accordance with the Deed of Trust and applicable Oregon trust deed law.

43. To the extent Ticor participated in, issued, recorded, or authorized trustee-related documents, notices, or foreclosure actions, Plaintiff alleges that Ticor did so without lawful authority if the underlying chain of title and assignment authority were defective.

44. Ticor is therefore a necessary and proper party to the extent Plaintiff seeks to determine the validity of the trust deed, the trustee's authority, and the validity of any foreclosure-related action.

**D. Lis Pendens and the Later Recorded Assignment**

45. Plaintiff was current on his loan payments when he initiated this action in state court.

46. Plaintiff recorded a Notice of Lis Pendens in Columbia County on November 7, 2025, as Instrument No. 2025-006555.

47. The Corporate Assignment was recorded on November 26, 2025, almost three weeks after Plaintiff recorded the Notice of Lis Pendens.

48. Plaintiff alleges that the Corporate Assignment was recorded in response to Plaintiff's legal challenge and was an attempt by Defendants to create a chain of title after that chain was challenged in this lawsuit.

49. Under ORS 93.740(2), any conveyance or encumbrance recorded after the filing of a notice of lis pendens is void as to the person who recorded the notice for all rights and

equities in the real property that are adjudicated in the suit.

50. Because the Corporate Assignment was recorded after Plaintiff recorded the Notice of Lis Pendens, the assignment is void as to Plaintiff under ORS 93.740(2).

**E. RESPA, Regulation X, and PennyMac's Servicing Conduct**

51. On or about July 30, 2025, Plaintiff sent PennyMac a written Request for Information and Notice of Error concerning the loan.

52. The Notice of Error identified specific servicing errors, including PennyMac's handling of homeowners insurance payments, escrow accounting, duplicate or misapplied payments, assessed fees, and PennyMac's claimed authority to service and enforce the loan.

53. PennyMac received the Notice of Error on or about August 4, 2025, and sent an acknowledgment on or about August 5, 2025.

54. Under RESPA and Regulation X, PennyMac was required to acknowledge, investigate, and respond to Plaintiff's notice within the applicable time limits and to correct errors or provide a reasoned written response.

55. PennyMac failed to conduct a reasonable investigation and failed to provide a complete and substantive response within the required period.

56. On information and belief, PennyMac was not licensed to service mortgage loans in the State of Oregon until 2018. Plaintiff's loan was originated in June 2017. Plaintiff alleges that any servicing activities conducted by PennyMac before it was properly licensed in Oregon were unauthorized and unlawful.

57. Instead, on or about September 4, 2025, while Plaintiff's dispute was pending, PennyMac furnished adverse information to consumer reporting agencies concerning the disputed account.

58. Plaintiff further sent additional notices and disputes on or about September 15, 2025, and on or about September 17, 2025.

59. PennyMac's responses on or about September 25 and 26, 2025, failed to address the

substance of Plaintiff's disputes or correct the errors.

60. On or about October 6, 2025, and thereafter, PennyMac continued to furnish adverse information to consumer reporting agencies concerning disputed payments and account information.

61. As a direct and proximate result of PennyMac's conduct, Plaintiff suffered actual damages, including approximately $2,887.44 in unauthorized fees, approximately $1,650.84 in escrow deficiency, approximately $5,000 in lost credit opportunities associated with the Capital One denial, damage to credit score and credit reputation, emotional distress, and out-of-pocket expenses.

62. Plaintiff reserves the right to prove additional damages through discovery and at trial.

**F. FCRA, Credit Disputes, and PennyMac's Investigation Duties**

63. Plaintiff disputed the inaccurate information furnished by PennyMac with consumer reporting agencies, including Experian and TransUnion.

64. Upon information and belief, the consumer reporting agencies notified PennyMac of Plaintiff's disputes pursuant to 15 U.S.C. § 1681i(a)(2).

65. After receiving notice of the disputes from the consumer reporting agencies, PennyMac had a duty under 15 U.S.C. § 1681s-2(b) to conduct a reasonable investigation, review all relevant information, and correct inaccurate reporting.

66. PennyMac failed to conduct a reasonable investigation and instead continued to verify and report inaccurate information.

67. The duty to conduct a reasonable investigation includes the duty to consider information bearing on the furnisher's claimed authority and the accuracy of the account information reported. See Gross v. CitiMortgage, Inc., 33 F.4th 1246 (9th Cir. 2022).

68. As a direct result of PennyMac's willful and/or negligent failure to comply with the FCRA, Plaintiff suffered actual damages, including credit damage, emotional distress, and costs.

**G. The Pending Foreclosure Sale**

69. The Trustee's Notice of Sale is dated May 28, 2026, and was recorded in Columbia County on June 5, 2026.

70. The Notice of Sale sets a nonjudicial foreclosure sale of the Property for October 13, 2026.

71. The Notice identifies Fannie Mae as the beneficiary and PennyMac as the servicer.

72. Plaintiff alleges that the sale is unlawful because Defendants have not established a valid chain of title or lawful authority to foreclose, and because Ticor, as trustee, may not proceed on defective or unauthorized instructions.

73. Unless restrained by this Court, Defendants will proceed with the sale, causing Plaintiff irreparable harm through the loss of his home.

## CLAIMS FOR RELIEF

**COUNT I**

Declaratory Judgment

(Against All Defendants)

74. Plaintiff realleges and incorporates by reference paragraphs 1 through 73.

75. An actual controversy exists between Plaintiff and Defendants concerning the validity of the loan-chain documents, the identity of the lawful beneficiary, the authority of MERS to assign, the authority of PennyMac to service and enforce, and Ticor's authority to act as trustee.

76. Plaintiff seeks a judicial declaration under 28 U.S.C. §§ 2201 and 2202 that:

a. MERS was not the beneficiary for purposes of Oregon's Trust Deed Act unless otherwise proven by Defendants;

b. the Corporate Assignment of Deed of Trust recorded as Instrument No. 2025-06917 is void, invalid, or unenforceable;

c. Defendants PennyMac and Fannie Mae lack lawful authority to foreclose unless they prove a valid chain of title and enforcement authority; and

d. Ticor lacks authority to proceed with trustee-sale activity unless the trustee acts on lawful, valid, and properly documented authority.

## COUNT II

Quiet Title

(Against All Defendants)

77.  Plaintiff realleges and incorporates by reference paragraphs 1 through 76.

78.  This Count is brought under ORS 105.605.

79.  Plaintiff is the owner and person in possession of the Property.

80.  Defendants claim adverse interests in the Property through the Deed of Trust, the Corporate Assignment, the trustee-sale notices, and related foreclosure documents.

81.  Defendants' adverse claims are without merit because the instruments upon which they rely are void, invalid, or unenforceable as alleged herein.

82.  The Deed of Trust, as Defendants seek to enforce it, creates a cloud on Plaintiff's title.

83.  Plaintiff seeks judgment quieting title in his favor and declaring that Defendants have no right, title, or interest in the Property except as may be proven lawful by competent evidence and applicable law.

84.  Plaintiff does not seek a free house or to avoid a lawful debt. Plaintiff has set aside funds and remains ready, willing, and able to bring the Loan current within approximately thirty (30) days after Defendants identify the lawful creditor, establish lawful authority to enforce the Loan, and provide a complete and accurate accounting of the amount properly due. Plaintiff was current on his payments when this action was filed, demonstrating that this case is about Defendants' lack of lawful authority, not an attempt to avoid a lawful debt.

85.  Plaintiff alleges that no tender is required to challenge a void or unenforceable lien or to

require proof of the party entitled to enforce the asserted lien.

## COUNT III

Violation of RESPA, 12 U.S.C. § 2605, and Regulation X

(Against Defendant PennyMac)

86. Plaintiff realleges and incorporates by reference paragraphs 1 through 85.

87. PennyMac is a servicer subject to RESPA and Regulation X.

88. Plaintiff sent written notices and requests concerning servicing errors, escrow accounting, insurance payments, fees, and related information.

89. PennyMac failed to acknowledge, investigate, and respond in compliance with RESPA and Regulation X.

90. PennyMac furnished adverse information concerning disputed matters while Plaintiff's notices were pending, in violation of 12 C.F.R. § 1024.35(i)(1).

91. As a direct and proximate result, Plaintiff suffered actual damages, including approximately $2,887.44 in unauthorized fees, approximately $1,650.84 in escrow deficiency, approximately $5,000 in lost credit opportunities associated with the Capital One denial, credit damage, emotional distress, and out-of-pocket expenses.

92. Plaintiff is entitled to actual damages, costs, and any other relief allowed by law.

## COUNT IV

Violation of FCRA, 15 U.S.C. § 1681s-2(b)

(Against Defendant PennyMac)

93. Plaintiff realleges and incorporates by reference paragraphs 1 through 92.

94. PennyMac is a furnisher of information under the FCRA.

95. Plaintiff disputed the inaccurate information furnished by PennyMac.

96. The consumer reporting agencies notified PennyMac of the disputes.

97. PennyMac failed to conduct a reasonable investigation and continued to furnish inaccurate information.

98. PennyMac's investigation duties include consideration of the information relevant to the dispute and the accuracy of the account history furnished. See Gross v. CitiMortgage, Inc., 33 F.4th 1246 (9th Cir. 2022).

99. As a direct and proximate result, Plaintiff suffered actual damages, including credit damage, emotional distress, and costs.

100. Plaintiff seeks actual damages, statutory damages if available, punitive damages if the violation is found willful, and costs under 15 U.S.C. §§ 1681n and 1681o.

## COUNT V

Accounting

(Against Defendant PennyMac)

101. Plaintiff realleges and incorporates by reference paragraphs 1 through 100.

102. PennyMac, as the servicer, controls the loan payment history, escrow records, insurance disbursements, fees, late charges, and related account records.

103. An accounting is necessary to determine the precise amount owed, if any, after correcting for alleged servicing errors, improper charges, misapplied payments, and escrow discrepancies.

104. Plaintiff has demanded an accounting, but PennyMac has failed and refused to provide a full and accurate accounting.

105. Plaintiff has no plain, speedy, or adequate remedy at law.

## COUNT VI

Request for Injunctive Relief

(Against All Defendants)

106. Plaintiff realleges and incorporates by reference paragraphs 1 through 105.

107. Defendants have initiated or threatened nonjudicial foreclosure proceedings and have set a sale date of October 13, 2026.

108. Plaintiff is likely to succeed on the merits because Defendants' foreclosure authority

depends on disputed and allegedly void or unenforceable instruments.

109. Plaintiff will suffer irreparable harm if the sale proceeds because he will lose his home, and the loss of real property constitutes irreparable harm.

110. The balance of hardships favors Plaintiff, and the public interest is served by requiring compliance with Oregon and federal law before foreclosure.

111. Plaintiff requests temporary, preliminary, and permanent injunctive relief enjoining Defendants, and their agents, successors, trustees, and assigns, from selling, transferring, or otherwise enforcing the Property based on the challenged authority unless and until lawful authority is established.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment in his favor and grant the following relief:

a. Declare that the Corporate Assignment of Deed of Trust is void, invalid, or unenforceable;

b. Declare that Defendants lack lawful authority to foreclose unless and until they establish a valid chain of title and enforcement authority;

c. Quiet title in Plaintiff's favor as against Defendants' adverse claims to the extent permitted by law;

d. Award actual damages against PennyMac in an amount to be proven at trial, including approximately $2,887.44 in unauthorized fees, approximately $1,650.84 in escrow deficiency, approximately $5,000 in lost credit opportunities associated with the Capital One denial, and other damages to be established through discovery and at trial;

e. Award statutory damages, where available, under RESPA and the FCRA;

f. Award punitive damages under the FCRA if the evidence supports a willful violation;

g. Order PennyMac to provide a full and accurate accounting;

h. Grant temporary, preliminary, and permanent injunctive relief;

i. Award Plaintiff costs and any further relief the Court deems just and proper.

**JURY DEMAND**

Plaintiff demands a trial by jury on all issues so triable.

DATED: July 20, 2026.

Respectfully submitted,
/s/ Ivan Richard Higgs
Ivan Richard Higgs, Pro Se
54248 Kalberer Rd
Scappoose, OR 97056
(503) 543-2956
ivanhggs@yahoo.com