**UNITED STATES DISTRICT COURT**
**DISTRICT OF OREGON**
**PORTLAND DIVISION**

| | | |
|---|---|---|
| IVAN RICHARD HIGGS, Plaintiff, | ) | Case No. 3:25-cv-02335-YY |
| v. | ) | |
| PENNYMAC LOAN SERVICES, LLC; | ) | |
| FEDERAL NATIONAL MORTGAGE | ) | |
| ASSOCIATION (FANNIE MAE); | ) | |
| MORTGAGE ELECTRONIC REGISTRATION | ) | |
| SYSTEMS, INC. (MERS); LOAN STAR | ) | |
| HOME LOANS, LLC d/b/a LOANSTAR | ) | |
| HOME LENDING; TICOR TITLE; and DOES | ) | |
| 1-10, Defendants. | ) | |

# PLAINTIFF'S EMERGENCY MOTION FOR TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE RE PRELIMINARY INJUNCTION TO HALT TRUSTEE'S SALE

## I. INTRODUCTION

Plaintiff Ivan Richard Higgs, Pro Se, respectfully moves this Court, pursuant to Federal Rule of Civil Procedure 65, for a Temporary Restraining Order (TRO) and Order to Show Cause Re Preliminary Injunction to immediately halt the scheduled trustee's sale of his residential property located at 54248 Kalberer Rd, Scappoose, Oregon 97056 (the "Property").

The trustee's sale is scheduled for October 13, 2026, at 12:00 p.m. If the Court does not act, Plaintiff and his wife Jennifer will lose their home in less than two weeks based on a foreclosure proceeding plagued by procedural defects, violations of Oregon statutory notice requirements, disputed chain-of-title issues, and unresolved federal RESPA and FCRA violations.

This motion is supported by the Declaration of Ivan R. Higgs, the Declaration of Jennifer Higgs, and documentary exhibits demonstrating:

a. Statutory notice violations as to co-grantor Jennifer Higgs under ORS 86.756, 86.764, and 86.774;

b. A post-lis pendens corporate assignment raising serious questions about

beneficiary authority and whether PennyMac took with notice of Plaintiff's claims;

c. Professional securitization audit evidence showing Plaintiff's loan was securitized into a Fannie Mae REMIC trust in 2017, yet the Deed of Trust was never properly transferred, and an assignment was not recorded until November 2025, more than eight years later and only after Plaintiff filed this lawsuit;

d. Failure by Clear Recon Corporation, the purported successor trustee, to provide documents or respond to Plaintiff's written demand under ORS 86.786 and 86.789;

e. Violations of RESPA and FCRA by PennyMac Loan Services, LLC, including failure to respond to qualified written requests and unlawful credit reporting during active disputes;

f. Plaintiff's repeated willingness to cure the alleged default upon receiving proper accounting and proof of lawful authority.

Plaintiff does not seek a "free house." He seeks to preserve the status quo so that Defendants and Clear Recon can be required to prove their authority, comply with Oregon statutory requirements, and provide accurate accounting before stripping Plaintiff and his wife of their home.

## II. RULE 65 STANDARD FOR TEMPORARY RESTRAINING ORDER

A party seeking a TRO must demonstrate:

a. A likelihood of success on the merits;

b. A likelihood of irreparable harm in the absence of preliminary relief;

c. That the balance of equities tips in the moving party's favor; and

d. That an injunction is in the public interest.

Winter v. Natural Res. Def. Council, Inc., 555 U.S. 7, 20 (2008); Alliance for the Wild Rockies

v. Cottrell, 632 F.3d 1127, 1131 (9th Cir. 2011).

Plaintiff meets all four requirements.

### III. IRREPARABLE HARM

The scheduled October 13, 2026 trustee's sale will result in the irreparable loss of Plaintiff's and Jennifer Higgs's home. Real property is unique, and the loss cannot be adequately compensated by monetary damages. Stuhlbarg Int'l Sales Co. v. John D. Brush & Co., 240 F.3d 832, 841 (9th Cir. 2001).

Once the Property is sold at trustee's sale, Plaintiff and his wife will lose:

* Their home and place of residence;
* Their equity in the Property;
* Their ability to cure the alleged default and reinstate the loan; and
* Their right to challenge the authority and compliance of the foreclosing parties.

Jennifer Higgs has submitted a declaration stating that she was deeply upset and frightened by the trustee-sale papers, and the threat of losing their home has caused substantial emotional distress. (Higgs Decl. ¶ 24; J. Higgs Decl. ¶ 7).

Moreover, the foreclosure is proceeding despite serious unresolved questions about:

* Whether Jennifer Higgs received proper statutory notice as a co-grantor under Oregon law;
* Whether MERS had authority to assign the Deed of Trust to PennyMac in November 2025, more than eight years after the loan was securitized;
* Whether PennyMac is the lawful beneficiary entitled to foreclose;
* Whether Clear Recon Corporation has lawful successor trustee authority;
* Whether the accounting provided by PennyMac is accurate; and
* Whether federal RESPA and FCRA violations have occurred.

The harm is imminent and cannot be undone. The Court should grant emergency relief to

preserve the status quo pending resolution of Plaintiff's claims.

## IV. FACTUAL BACKGROUND

### A. The Property, the Loan, and the Parties

Plaintiff Ivan R. Higgs and his wife Jennifer Higgs (née Jennifer Thomson) live at 54248 Kalberer Rd, Scappoose, Oregon 97056. (Higgs Decl. ¶ 2; J. Higgs Decl. ¶ 1). This is their home and primary residence.

In 2017, Plaintiff obtained a mortgage loan from LoanStar Home Loans, LLC d/b/a LoanStar Home Lending in the principal amount of $414,000.00 to purchase the Property. (Higgs Decl. ¶ 3; Ex. A). The loan is evidenced by a promissory Note dated June 26, 2017, and secured by a Deed of Trust of the same date. (Id.; Ex. A).

The Deed of Trust identifies:

* LoanStar Home Loans, LLC d/b/a LoanStar Home Lending as Lender;
* Ticor Title as Trustee; and
* Mortgage Electronic Registration Systems, Inc. ("MERS") as nominee/beneficiary. (Ex. A).

Jennifer Thomson (now Jennifer Higgs) signed the Deed of Trust as co-grantor/trustor. (Ex. A at 9; Higgs Decl. ¶ 4; J. Higgs Decl. ¶ 2). Jennifer did not sign the Note. (Higgs Decl. ¶ 4). As a co-grantor and co-owner of the Property, Jennifer is entitled to all statutory notice protections under Oregon's Trust Deed Act.

### B. Servicing Transfer and Fannie Mae Ownership

PennyMac Loan Services, LLC admitted in writing that servicing of Plaintiff's loan transferred from LoanStar to PennyMac effective August 1, 2017. (Higgs Decl. ¶ 5; Ex. C). PennyMac also identified Federal National Mortgage Association ("Fannie Mae") as the owner/investor of the loan and identified Fannie Mae pool/trust number BH4959. (Id.).

Plaintiff reviewed MERS records showing the loan was registered by LoanStar shortly after origination, servicing transferred to PennyMac, and beneficial-rights activity involved Fannie Mae. (Higgs Decl. ¶ 6). However, Plaintiff disputes whether the MERS records establish actual authority to assign the Note, Deed of Trust, beneficial interest, money due, and accrued rights to PennyMac. (Id.).

**C. Oregon Licensing Issues**

Plaintiff reviewed Oregon licensing records concerning PennyMac's Oregon Mortgage Servicer License MS-47 and its status history. (Higgs Decl. ¶ 7). Based on those records, Plaintiff disputes whether PennyMac had an active Oregon mortgage-servicer license or valid exemption for all servicing, collection, escrow, credit-reporting, default, acceleration, foreclosure-referral, and trustee-sale activity at issue. (Id.).

**D. Plaintiff's Requests for Information, RESPA/FCRA Violations, and Corporate Assignment Recorded After Lis Pendens**

In 2025, Plaintiff sent written requests, notices of error, requests for information, and follow-up letters to PennyMac concerning servicing, escrow, insurance, accounting, credit reporting, ownership, and foreclosure authority. (Higgs Decl. ¶ 8; Ex. G, Ex. H). PennyMac did not provide all requested authority and accounting records. (Higgs Decl. ¶ 8).

PennyMac acknowledged Plaintiff's inquiry and stated that if the inquiry concerned a payment dispute, PennyMac would not furnish adverse information to consumer reporting agencies regarding the disputed payment for 60 days. (Higgs Decl. ¶ 9). However, Plaintiff later saw negative credit reporting on his credit reports while the disputes were active. (Id.; Ex. J). This violates 12 C.F.R. § 1024.35(i)(1) and 15 U.S.C. § 1681s-2(b).

Plaintiff filed this action and recorded a lis pendens concerning the Property on November 7, 2025. (Higgs Decl. ¶ 10; Ex. K). The recorded lis pendens is Columbia County Instrument No. 2025-006555. (Id.). Plaintiff recorded the lis pendens to give public notice of his title, possession, and foreclosure-authority dispute as authorized by ORS 93.740.

After Plaintiff's lawsuit and lis pendens were already in play, a Corporate Assignment of Deed of Trust was recorded on November 25, 2025, as Instrument No. 2025-06917. (Higgs Decl. ¶ 11; Ex. L). That Corporate Assignment purports to assign the Deed of Trust, Note, beneficial interest, money due, and accrued rights from MERS to PennyMac. (Id.).

The Corporate Assignment was recorded 18 days after Plaintiff's lis pendens. Under ORS 93.740, the lis pendens gave constructive notice to all persons, including MERS and PennyMac, of Plaintiff's claims disputing the foreclosure authority and chain of title. Any assignment recorded after the lis pendens is subject to Plaintiff's claims. Plaintiff disputes whether MERS had lawful capacity and actual authority to execute that assignment. (Higgs Decl. ¶ 11).

**E. Professional Securitization Audit Confirms Broken Chain of Title**

Plaintiff obtained professional mortgage securitization audit reports analyzing the loan's chain of title and securitization history. (Higgs Decl. ¶ 26; Ex. W, Ex. X). The audit reports confirm that Plaintiff's loan was securitized into Fannie Mae REMIC Trust 2017-59 with a settlement date of July 31, 2017, less than one month after loan origination. (Id.).

The audit report states: "The Deed of Trust and the Note have taken two distinctly different paths. The Deed of Trust was never transferred. The $414,000.00 note may have been however pooled, sold, transferred with other loans and Deed of Trusts and this pool of loans..." (Id.). This finding is corroborated by searches of the Fannie Mae loan lookup database and MERS database, both of which confirm that Fannie Mae owns the loan and PennyMac is the servicer. (Id.). If the Note was transferred into the Fannie Mae REMIC Trust on July 31, 2017, then under Oregon law and securitization law, the Deed of Trust should have been transferred at the same time. The Note and Deed of Trust cannot be split.

The fact that MERS did not record an assignment until November 25, 2025, more than eight years after securitization, raises serious questions about whether MERS ever had authority to assign the Deed of Trust, whether the assignment is an improper attempt to "fix" a broken chain of title, and whether the foreclosure is being pursued by parties lacking standing.

**F. Discovery Efforts Concerning the November 25, 2025 Assignment**

Plaintiff sought targeted discovery concerning the November 25, 2025 Corporate Assignment, the original promissory Note, notary/vendor logs, powers of attorney, corporate resolutions, vendor contracts, and related authorization documents. (Higgs Decl. ¶ 12). Plaintiff sought this discovery because the assignment and authority chain are central to the foreclosure dispute. (Id.). Plaintiff has continued to investigate LoanStar because the Note and Deed of Trust begin with LoanStar. Plaintiff attempted service on LoanStar and later investigated the successor-entity trail involving Commerce Home Mortgage, Change Home Mortgage, Change Home Loans, Change Lending, Paracorp, and Data Research. (Higgs Decl. ¶ 13). The difficulty serving LoanStar has not been caused by bad faith or delay by Plaintiff. It has been caused by corporate acquisition, name changes, inactive registry status, registered-agent issues, and confusion over the proper entity or agent for service. (Higgs Decl. ¶ 14).

**G. Trustee-Sale Notice and Jennifer's Statutory Notice Violations**

On or about June 11, 2026, Plaintiff was handed trustee-sale papers at his home. (Higgs Decl. ¶ 15; Ex. R). The papers concerned the Property being put up for auction on October 13, 2026. (Id.).

Jennifer was at work when the papers were delivered. The papers were handed to Ivan Higgs. Jennifer was not personally handed the papers in Ivan's presence. (Higgs Decl. ¶ 16; J. Higgs Decl. ¶ 4). The person who delivered the papers did not, in Ivan's presence, ask to personally serve Jennifer, wait for Jennifer, or make a separate personal-service attempt on Jennifer. (Higgs Decl. ¶ 17; J. Higgs Decl. ¶ 4).

Jennifer received only first-class mail concerning the trustee's sale. She did not receive certified mail with return receipt requested, and she never signed for any certified mail. (J. Higgs Decl. ¶ 5). As of the date of the declarations, Plaintiff is not aware of Jennifer receiving separate personal service, certified mail with return receipt requested, occupant-service notice, or any separate statutory trustee-sale notice addressed to her. (Higgs Decl. ¶ 18; J. Higgs Decl. ¶ 5).

Plaintiff has not received any affidavit of mailing, affidavit of service, affidavit of service attempts and posting, affidavit of publication, certified-mail receipt, USPS tracking record, process-server declaration, or other proof showing statutory notice compliance as to Jennifer. (Higgs Decl. ¶ 19).

**H. Clear Recon's Authority and Failure to Respond**

Plaintiff disputes whether Clear Recon Corporation has lawful successor trustee authority. (Higgs Decl. ¶ 20). Plaintiff has not been provided a complete recorded Appointment/Substitution of Successor Trustee, Notice of Default and Election to Sell, Notice of Trustee's Sale record, affidavits of mailing, affidavits of service, affidavits of posting, affidavits of publication, or proof of statutory compliance. (Id.).

On June 12, 2026, Plaintiff sent a written demand to Clear Recon Corporation via certified mail, requesting documentation of its authority and compliance with Oregon foreclosure statutes. (Higgs Decl. ¶ 21; Ex. T, Ex. U). Clear Recon received the demand. (Ex. V). Clear Recon has not responded to Plaintiff's demand. (Higgs Decl. ¶ 21).

**I. Plaintiff's Willingness to Cure**

Plaintiff is not seeking a "free house." Plaintiff is willing to cure the alleged default once the lawful creditor, lawful authority, and correct amount are proven. (Higgs Decl. ¶ 22). Plaintiff has disputed:

* Who has authority to demand payment;
* Whether the accounting is accurate; and
* Whether the foreclosure chain is lawful. (Id.).

Plaintiff sent written communications to PennyMac in August 2025 explicitly stating his willingness to "remit the undisputed amount or tender in full upon receipt of a complete accounting and identification of the lawful party entitled to enforce." (Ex. G, Ex. H). This demonstrates Plaintiff's good faith and willingness to resolve the dispute if Defendants can prove

their authority and provide accurate accounting.

## V. LEGAL STANDARD - LIKELIHOOD OF SUCCESS ON THE MERITS

Plaintiff is likely to succeed on the merits of his claims for the following reasons:

### A. Oregon Statutory Notice Requirements - Fatal Defect as to Jennifer Higgs

Oregon's Trust Deed Act requires strict compliance with statutory notice provisions. Nw. Props. Wholesalers, LLC v. Scott, 361 Or. 644, 651, 398 P.3d 476 (2017). Oregon law defines "grantor" to include each person who holds record title to the trust property at the time notice is given.

ORS 86.752(1).

Jennifer Higgs signed the Deed of Trust as co-grantor and holds record title to the Property. (Higgs Decl. ¶ 4; J. Higgs Decl. ¶ 2; Ex. A). She is a "grantor" under ORS 86.752(1) and is entitled to all statutory notice protections.

ORS 86.756 requires the trustee to mail the notice required by ORS 86.754 to the last-known address of each grantor and occupant of residential trust property by both first-class mail and certified mail with return receipt requested. ORS 86.764 reiterates the dual-notice requirement. Jennifer received only first-class mail. She did not receive certified mail with return receipt requested, and she never signed for certified mail. (J. Higgs Decl. ¶ 5; Higgs Decl. ¶ 18).

This is a fatal statutory defect. Oregon courts require strict compliance. Nw. Props. Wholesalers, LLC v. Scott, 361 Or. 644, 651, 398 P.3d 476 (2017). The failure to send certified mail with return receipt requested to a co-grantor violates ORS 86.756 and ORS 86.764 and renders the foreclosure procedurally defective.

Moreover, ORS 86.774(7) requires the trustee to file an affidavit in the county records stating that mailing was completed as required by ORS 86.764. Plaintiff has not been provided any such affidavit showing compliance as to Jennifer. (Higgs Decl. ¶ 19).

Plaintiff is likely to succeed in showing that the foreclosure must be halted due to failure to provide statutory notice to co-grantor Jennifer Higgs.

**B. Post-Lis Pendens Assignment - PennyMac Took With Notice**

Plaintiff recorded a lis pendens on November 7, 2025. (Higgs Decl. ¶ 10; Ex. K). The lis pendens was recorded in Columbia County as Instrument No. 2025-006555. (Id.).
ORS 93.740 provides that a lis pendens gives constructive notice to all persons of the pendency of the action and the claims asserted. Any interest acquired after the lis pendens is recorded is subject to the claims in the lawsuit.

The Corporate Assignment from MERS to PennyMac was not recorded until November 25, 2025, 18 days after the lis pendens. (Higgs Decl. ¶ 11; Ex. L). This means that if PennyMac acquired any interest through the November 25, 2025 assignment, it acquired that interest with constructive notice of Plaintiff's claims disputing the foreclosure authority, chain of title, and MERS's authority to assign.

Plaintiff is likely to succeed in showing that PennyMac cannot rely on the November 25, 2025 assignment to establish its authority because it took subject to Plaintiff's lis pendens and the claims asserted in this lawsuit.

**C. MERS Authority and the November 2025 Assignment**

MERS's authority to assign a deed of trust has been the subject of significant litigation in Oregon and nationwide. In Brandrup v. ReconTrust Co., 303 Or. App. 274, 464 P.3d 1222 (2020), the Oregon Court of Appeals held that MERS, as a mere nominee, lacked authority to assign the beneficial interest in the deed of trust because it never held the promissory note or the beneficial interest. Similarly, in Niday v. GMAC Mortg., LLC, 251 Or. App. 278, 284 P.3d 1157 (2012), the court held that MERS could not demonstrate that it was the "beneficiary" or "successor in interest" required by Oregon's Trust Deed Act.

Here, the November 25, 2025 Corporate Assignment purports to assign the Deed of Trust, Note, beneficial interest, money due, and accrued rights from MERS to PennyMac. (Ex. L). However, PennyMac's own August 2025 letter admits that Fannie Mae is the owner/investor of the loan. (Ex. C). If Fannie Mae owned the loan, then MERS, as a mere nominee, never held the beneficial

interest and had no authority to assign it to PennyMac in November 2025.

Moreover, professional securitization audit reports confirm that Plaintiff's loan was securitized into Fannie Mae REMIC Trust 2017-59 on July 31, 2017, less than one month after origination. (Higgs Decl. ¶ 26; Ex. W, Ex. X). The audit states that "The Deed of Trust was never transferred." If the Note was transferred into the trust in 2017 but the Deed of Trust was not, this creates a fatal split-the-note problem. Under Oregon law, the Note and Deed of Trust cannot be separated.

The November 2025 MERS assignment, recorded more than eight years after securitization and 18 days after Plaintiff's lis pendens, appears to be an improper attempt to "cure" a defective chain of title. MERS never held the beneficial interest; Fannie Mae did from July 2017 forward. This Court should not allow a foreclosure to proceed based on a defective, post-lis-pendens assignment that MERS had no authority to execute. Plaintiff is likely to succeed in showing that MERS lacked authority to assign the Deed of Trust to PennyMac and that the November 2025 assignment is invalid.

**D. Clear Recon's Failure to Respond to ORS 86.786 and 86.789 Demand**

ORS 86.786 and ORS 86.789 require a trustee to provide certain information and documents to a grantor upon written request. Plaintiff sent a written demand to Clear Recon Corporation on June 12, 2026, requesting documentation of its successor trustee authority, the chain of beneficial interest, and compliance with Oregon foreclosure statutes. (Higgs Decl. ¶ 21; Ex. T, Ex. U).

Clear Recon received the demand. ( Ex. V). Clear Recon has not responded. (Higgs Decl. ¶ 21). This failure raises serious questions about whether Clear Recon has lawful authority to conduct the trustee's sale and whether the foreclosure is procedurally compliant. Plaintiff is likely to succeed in showing that Clear Recon has failed to establish its authority and has violated Oregon statutory requirements.

**E. RESPA and FCRA Violations**

Plaintiff sent qualified written requests to PennyMac in August 2025 pursuant to 12 C.F.R. §

1024.36 (RESPA/Regulation X). (Ex. G, Ex. H). Under 12 C.F.R. § 1024.36(d), a servicer must respond in writing within 30 days, or 45 days if the request is overbroad. PennyMac acknowledged receipt but did not provide all requested documents or a substantive written response. (Higgs Decl. ¶ 8). This violates 12 C.F.R. § 1024.36.

Moreover, under 12 C.F.R. § 1024.35(i)(1), if a borrower submits a notice of error concerning a payment dispute, the servicer may not furnish adverse credit information to consumer reporting agencies for 60 days. PennyMac acknowledged that it would suspend credit reporting for 60 days. (Higgs Decl. ¶ 9). However, Plaintiff later saw negative credit reporting on his credit reports while the disputes were active. (Id.; Ex. J). This violates 12 C.F.R. § 1024.35(i)(1) and 15 U.S.C. § 1681s-2(b) (FCRA).

Plaintiff is likely to succeed on his RESPA and FCRA claims.

## VI. BALANCE OF EQUITIES AND PUBLIC INTEREST

The balance of equities tips sharply in Plaintiff's favor. Plaintiff and his wife face the imminent, irreparable loss of their home. The harm to Plaintiff cannot be undone if the sale proceeds.

By contrast, Defendants and Clear Recon will suffer no harm from a brief delay while this Court adjudicates Plaintiff's claims. If Defendants can prove their authority, provide accurate accounting, and demonstrate compliance with Oregon statutory requirements, they can proceed with foreclosure after this Court resolves the merits. If they cannot, then the foreclosure should not proceed.

The public interest strongly favors halting a foreclosure that is procedurally defective and that violates Oregon statutory protections designed to protect homeowners. Oregon's Trust Deed Act requires strict compliance precisely to prevent wrongful foreclosures. Allowing a foreclosure to proceed in violation of statutory notice requirements, with disputed authority, and with unresolved federal consumer-protection violations would undermine public confidence in the foreclosure process and the rule of law.

Moreover, Plaintiff has demonstrated his willingness to cure the alleged default upon receiving

proof of lawful authority and accurate accounting. (Higgs Decl. ¶ 22; Ex. G, Ex. H). Plaintiff is not seeking a windfall or a "free house"; he is seeking basic due process and compliance with the law before losing his home.

The balance of equities and the public interest both favor granting the TRO.

## VII. RULE 65(b) - NOTICE AND SECURITY

Plaintiff respectfully requests that the Court set security in the amount of $5,000.00. Given the serious statutory violations, the disputed chain of title, the unresolved federal consumer-protection violations, and Plaintiff's willingness to cure, a bond of $5,000.00 is reasonable and sufficient to protect Defendants from any minimal harm they might suffer from a brief delay.

## VIII. CONCLUSION AND RELIEF REQUESTED

Plaintiff respectfully requests that this Court issue a Temporary Restraining Order and Order to Show Cause Re Preliminary Injunction:

a. Immediately enjoining and restraining Defendants PennyMac Loan Services, LLC, Federal National Mortgage Association (Fannie Mae), Mortgage Electronic Registration Systems, Inc. (MERS), and Clear Recon Corporation, and their agents, employees, successors, and assigns, and all persons in active concert or participation with them, from conducting, proceeding with, or completing the trustee's sale scheduled for October 13, 2026, or any other sale of the Property, pending further order of this Court;

b. Ordering Clear Recon Corporation, PennyMac Loan Services, LLC, MERS, and any other party claiming authority to foreclose to produce within ten (10) days:

    i. a. Complete recorded chain of assignments from LoanStar to PennyMac or the current beneficiary;

    ii. b. Proof of authority for MERS to execute the November 25, 2025

Corporate Assignment;

iii. c. Proof that Jennifer Higgs received statutory notice by certified mail with return receipt requested as required by ORS 86.756 and ORS 86.764;

iv. d. Affidavits of mailing and service showing compliance with ORS 86.774;

v. e. Complete Appointment/Substitution of Successor Trustee appointing Clear Recon Corporation;

vi. f. Complete accounting showing the amount necessary to cure the alleged default and reinstate the loan;

vii. g. All documents responsive to Plaintiff's June 12, 2026 demand under ORS 86.786 and ORS 86.789;

c. Setting an expedited hearing on Plaintiff's request for a preliminary injunction;

d. Waiving the security requirement under Fed. R. Civ. P. 65(c), or setting a nominal bond amount;

e. Granting such other and further relief as the Court deems just and proper.

DATED: July 21, 2026

Respectfully submitted,
/s/ Ivan R. Higgs

Ivan R. Higgs
Plaintiff, Pro Se
54248 Kalberer Rd
Scappoose, Oregon 97056
(503) 543-2956
ivanhggs@yahoo.com