UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION


IVAN RICHARD HIGGS,

        Plaintiff,

    v.

PENNYMAC LOAN SERVICES, LLC; FEDERAL
NATIONAL MORTGAGE ASSOCIATION
(FANNIE MAE); MORTGAGE ELECTRONIC
REGISTRATION SYSTEMS, INC. ("MERS");
LOAN STAR HOME LOANS, LLC dba
LOANSTAR HOME LENDING; TICOR TITLE;
and DOES 1-10,

        Defendants.

Case No. 3:25-cv-02335-YY

FINDINGS AND
RECOMMENDATIONS


YOU, Magistrate Judge.

## FINDINGS

Plaintiff Ivan Richard Higgs, who is representing himself in this matter, has brought this suit asserting claims related to a dispute over a mortgage loan and a potential foreclosure on plaintiff's property in Scappoose, Oregon. Plaintiff obtained the loan from defendant Lone Star Home Loans, LLC ("Loan Star") in 2017. Not. Removal, Ex. A ("Compl.") at 2, ECF 1-1. The loan is secured by a recorded Deed of Trust. Defendant Mortgage Electronic Registration

Systems, Inc. ("MERS") is designated as the nominee for Loan Star and its successors and assigns. *Id.*, Ex. C at 1, ECF 1-3.[1]

In October of 2025, plaintiff filed suit in state court against Loan Star and MERS, along with PennyMac Loan Services, LLC ("PennyMac"), Federal National Mortgage Association ("Fannie Mae"), Ticor Title, and several unidentified Doe defendants. Not. Removal 2, ECF 1; *see also id.*, Ex. 1 at 1, ECF 1-1. MERS assigned all of its interest in the deed to PennyMac via a recorded assignment in November of 2025. *Id.* at 17, ECF 1-3. In December of 2025, defendants PennyMac, Fannie Mae, and MERS removed the case to federal court. Not. Removal 1, ECF 1. Those same defendants have filed a motion to dismiss plaintiff's complaint under Federal Rules of Civil Procedure 8(a)(2) and Rule 12(b)(6). Mot. Dismiss, ECF 8. Defendant Ticor Title has joined that motion. ECF 12. Defendant Loan Star has not yet been served, and plaintiff has moved for leave to use alternative service to attempt to bring Loan Star into the case. ECF 50.

After defendants' motion to dismiss was filed and fully briefed, plaintiff twice attempted to supplement or otherwise bolster the factual allegations in the complaint. First, plaintiff filed a Motion to Lodge and File Supplemental Declaration and Exhibits Not Previously Docketed, ECF 22. Some of the documents plaintiff submitted with that motion include written correspondence with PennyMac regarding the status of plaintiff's mortgage after he apparently stopped making payments to PennyMac, the current servicer of the loan, sometime around September of 2025. Pl.

---

[1] Defendants PennyMac, Fannie Mae, and MERS have asked the court to take judicial notice of the Deed of Trust and the later-mentioned Corporate Assignment of Trust to PennyMac. *See* ECF 9. Those same materials were attached to plaintiff's initial complaint, and they are appropriate documents for judicial notice. *See Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001) ("[A] court may consider material which is properly submitted as part of the complaint on a motion to dismiss without converting the motion to dismiss into a motion for summary judgment. If the documents are not physically attached to the complaint, they may be considered if the documents' authenticity is not contested and the plaintiff's complaint necessarily relies on them.") (simplified).

Mot. Supp., Ex. S-9 at 2, ECF 22-2. Then, plaintiff filed a Motion for Leave to File First Amended Complaint and a proposed amended complaint. ECF 25, 25-1. The court held a hearing on the outstanding motions to dismiss on May 19, 2026, at which time the court attempted to explain some of the deficiencies in the complaint to plaintiff. ECF 43. That hearing was continued at plaintiff's request because he was not prepared to respond to defendants' arguments, and the hearing was subsequently resumed on July 16, 2026. ECF 55.

At the continuation hearing, plaintiff represented that he had again worked to amend the complaint based on the arguments raised in defendants' motions and the court's explanation as to why the claims were deficient. The court directed the parties to confer about plaintiff's new proposed amendments, and following the hearing, plaintiff filed a "Proposed First Amended Complaint" in which he asserts the following claims and requests for relief:

1. A declaratory judgment regarding a "controversy . . . concerning the validity of the loan-chain documents, the identity of the lawful beneficiary, the authority of MERS to assign, the authority of PennyMac to service and enforce, and Ticor's authority to act as trustee." Proposed First Am. Compl. ¶ 75, ECF 56.

2. A quiet title claim against all defendants. *Id.* ¶¶ 77–85.

3. A claim under the Real Estate Settlement Procedures Act ("RESPA") and "Regulation X" against PennyMac. *Id.* ¶¶ 86–92.

4. A claim under the Fair Credit Reporting Act ("FCRA") against PennyMac. *Id.* ¶¶ 93–100.

5. A claim for "accounting" against PennyMac. *Id.* ¶¶ 101–05.

6. A request for injunctive relief to stop the foreclosure sale of the subject property scheduled for October 13, 2026. *Id.* ¶¶ 106–11.

As explained more fully below, plaintiff's Proposed First Amended Complaint and the various motions and other materials plaintiff has filed in support of his allegations fail to adequately

address the deficiencies that defendants have raised in their motions to dismiss. Accordingly, all the claims asserted in plaintiff's most recent Proposed First Amended are subject to dismissal. Given that conclusion, there is no basis upon which to grant plaintiff's motion for alternative service as to defendant Loan Star.

## I.	Motion to Dismiss Standard

A motion to dismiss under Rule 12(b)(6) requires the court to examine whether the complaint contains sufficient factual allegations to show that the pleader is entitled to relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing Fed. R. Civ. P. 8(a)(2)). While a complaint need not contain detailed factual allegations, "formulaic recitation[s] of the elements of a cause of action" or "naked assertion[s]" devoid of "further factual enhancement" are not sufficient. *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 557 (2007)). In the absence of a cognizable legal theory or sufficient facts to support a cognizable legal theory, the claim should be dismissed. *Taylor v. Yee*, 780 F.3d 928, 935 (9th Cir. 2015). To survive a motion to dismiss, the plaintiff must plead facts sufficient for the "court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 663.

In evaluating a motion to dismiss, the court must accept the allegations of material fact as true and construe those allegations in the light most favorable to the non-moving party. *Parks Sch. of Bus., Inc. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995). In addition to the factual allegations in the complaint, the court may consider documents that are attached to or incorporated by reference in the complaint, where the parties do not contest the authenticity of those documents, as well as matters capable of judicial notice. *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005).

**II.      Quiet Title Claim**

Plaintiff asserts a quiet title claim against all defendants. Prop. First Am. Compl. ¶¶ 77–85. "To secure a judgment quieting title, [a plaintiff] must prove that he has a substantial interest in, or claim to, the disputed property and that his title is superior to that of [the defendant]." *Strickland v. Citizens Bank, N.A.*, No. 3:23-cv-01126-IM, 2024 WL 195651, at *5 (D. Or. Jan. 18, 2024) (citing *Coussens v. Stevens*, 200 Or. App. 165, 171 (2005)). A plaintiff must "expressly allege that: (1) his title is superior to that of [the defendant]; and (2) the subject loan has been satisfied or that [the plaintiff] is ready, willing and able to tender the full amount owed on the loan." *Id.* (quoting *Collier v. Wilmington Savs. Fund Soc'y, FSB, as Tr. of Stanwich Mortg. Loan Tr. A*, Case No. 2:20-cv-681-HL, 2022 WL 1223253, at *1 (D. Or. Apr. 26, 2022)).

Plaintiff alleges that he has a mortgage on the property that is secured by a deed of trust. Prop. First Am. Compl. ¶¶ 16–19, ECF 56. He also alleges that the loan is in foreclosure. *Id.* ¶¶ 4–5. Plaintiff asserts that he has "funds and remains ready, willing, and able to bring the Loan current within approximately thirty (30) days after Defendants identify the lawful creditor, establish lawful authority to enforce the Loan, and provide a complete and accurate accounting of the amount properly due." *Id.* ¶ 84. These allegations do not state a claim for quiet title. "[U]nder Oregon law a quiet-title claim is an equitable claim in which the plaintiff must demonstrate her title in the subject property is greater than that of the defendant." *Swango v. Nationstar Sub1, LLC*, 292 F. Supp. 3d 1134, 1144 (D. Or. 2018). According to the complaint, the property is subject to a mortgage and a deed of trust, and "[a] mortgagor[2] . . . cannot

---

[2] A "mortgagor" is "[s]omeone who mortgages property; the mortgage-debtor, or borrower. MORTGAGOR, Black's Law Dictionary (12th ed. 2024).

demonstrate that [he] has greater title over the subject property than the mortgagee[3] when the subject property secures an outstanding indebtedness." *Id.* A plaintiff "must allege [he] has tendered payment of the full amount of the outstanding debt in order to maintain [a] quiet-title claim." *Id.* Simply alleging that the loan payments can be brought up-to-date is not sufficient.

Moreover, to succeed on a quiet title claim, a plaintiff must "prevail on the strength of [his] own title as opposed to the weaknesses of defendants' title." *Coussens v. Stevens*, 200 Or. App. at 171. Plaintiff's allegations regarding purported problems with the PennyMac's "chain of title and enforcement authority" are not relevant to determining the strength of plaintiff's own claim to title. *See Collier*, 2022 WL 1223253 at *2 ("The facts that [the plaintiffs] identify as 'disputed'—such as whether there is an uninterrupted chain of recorded written assignments, whether [the defendant] can establish the terms of the Note, whether [the plaintiffs] are exposed to the risk of another party seeking to enforce the instrument, and whether Bank of America is the party who lost the Note—are not material to whether [the plaintiffs] can quiet title under Oregon law."). Plaintiff's quiet title claim is therefore subject to dismissal.

## III.   RESPA Claim

In his RESPA claim against PennyMac, plaintiff cites broadly to 12 U.S.C. § 2605 and to "Regulation X," and more specifically asserts that "PennyMac furnished adverse information concerning disputed matters while Plaintiff's notices were pending, in violation of 12 C.F.R. § 1024.35(i)(1)." Prop. Am. Compl. ¶¶ 86–92, ECF 56. Under RESPA, the servicer of a federally related mortgage loan is required to provide a timely written response to a qualified written

---

[3] A "mortgagee" is the mortgage-holder, or the "[o]ne to whom property is mortgaged; the mortgage creditor, or lender." MORTGAGEE, Black's Law Dictionary (12th ed. 2024).

request ("QWR") from a borrower that seeks "information relating to the servicing of such loan." 12 U.S.C. § 2605(e)(1)(A), (e)(2)); *see also Medrano v. Flagstar Bank, FSB*, 704 F.3d 661, 665 (9th Cir. 2012). Similarly, Regulation X requires loan servicers to provide a timely response to a borrower's written request for information ("RFI") that seeks "information relating to the servicing of the mortgage loan."12 C.F.R. § 1024.36(a). For both RESPA or Regulation X, it is necessary for the request to be related to the servicing of the loan before a servicer's duty to respond is triggered. *McCoy v. Wells Fargo Bank, N.A.*, No. 1:20-cv-00176-CL, 2021 WL 4451423, at *4 (D. Or. July 21, 2021), *report and recommendation adopted,* No. 1:20-cv-00176-CL, 2021 WL 4449967 (D. Or. Sept. 28, 2021) (collecting cases).[4]

Section 1024.35 of Regulation X pertains to so-called "notice of errors" or "NOE." It provides that a servicer who receives an NOE from a borrower "must either notify the borrower that the error has been corrected or explain why it believes no error has occurred." *Est. of Coineandubh v. Boeing Emps. Credit Union*, No. 3:19-cv-05527-RBL, 2019 WL 3859726, at *3 (W.D. Wash. Aug. 16, 2019). Section 1024.35(a) defines an NOE as "[a] qualified written request that asserts an error relating to the servicing of a mortgage loan, and section 1024.35(b) identifies the specific categories of errors that a borrower may identify." Similar to the QWRs discussed above, the regulations do not require a servicer to respond to a purported NOE that it reasonably determines is "overbroad," among other things. 12 C.F.R. § 1024.35(g). And district courts in the Ninth Circuit have found that NOEs, like QWRs or RFIs, are limited to errors pertaining to loan servicing. *McCoy*, 2021 WL 4451423 at *4) (collecting cases).

---

[4] Although plaintiff's complaint does not identify the specific RESPA provision that PennyMac is alleged to have violated, given the close parallels between 12 U.S.C. § 2605(e) and Regulation X, the court presumes that plaintiff could amend the complaint to include the specific RESPA provision and continues with the analysis.

RESPA defines the term "servicing" as "receiving any scheduled periodic payments from a borrower pursuant to the terms of any loan ... and making the payments of principal and interest and such other payments with respect to the amounts received from the borrower." 12 U.S.C. § 2605(i)(3); *see also McCoy*, 2021 WL 4451423 at *5. "Servicing 'does not include the transactions and circumstances surrounding a loan's origination—facts that would be relevant to a challenge to the validity of the underlying debt or the terms of a loan agreement. Such events precede the servicer's role in receiving the borrower's payments and making payments to the borrower's creditors.' " *McCoy*, 2021 WL 4451423 at *5 (quoting *Medrano*, 704 F.3d at 666-67).

Plaintiff sent a purported written "Request for Information and Notice of Error" to PennyMac on July 30, 2025,[5] which states as follows:

> This is a formal Qualified Written Request ("QWR") pursuant to the Real Estate Settlement Procedures Act (RESPA), Section 6, 12 U.S.C. § 2605(e), and as defined under 12 C.F.R. § 1024.31, concerning the servicing of the above-referenced mortgage loan. This correspondence is submitted to identify specific account errors and to request certain documentation and information.
>
> Please consider this letter a formal request for:
>
> 1. A complete and certified copy of the original Promissory Note bearing wet-ink signatures;
>
> 2. All assignments, transfers, or conveyances of the Note and Deed of Trust since origination;
>
> 3. The name, address, and contact information for the current owner or investor of the loan;
>
> 4. A complete payment history on the loan, including principal, interest, escrow, and late fees;

---

[5] *See* Prop. First Am. Compl. ¶ 51, ECF 56.

5. The full chain of title reflecting all endorsements or alonges to the Note;

6. The MEAS Milestone history and MIN Summary Report, if applicable;

7. All servicing records, including escrow disbursements, advances, and suspense accounts;

8. Any and all pooling and servicing agreements, trust agreements, and securitization information (including the name of the REMIC trust, trustee, and CUSIP);

9. A copy of the Mortgage Insurance certificate, if any, and premium payment records;

10. Any and all documents submitted to the IRS related to the disposition or sale of the loan;

11. The name and NMLS number of the individual loan originator and the broker of record.[6]

PennyMac responded in writing to plaintiff request on August 18, 2025, in relevant part as follows:

> Your correspondence is overly broad and lacks specificity. Therefore, [PennyMac has] gathered the following information for your review; however, if you requested any documents or information that we have not included, PennyMac has determined your request to be unduly burdensome, irrelevant to the servicing of the loan, or the information you requested is considered proprietary.

---

[6] Pl. Supp. Ex. 1 at 1, ECF 20-2; *see also* Prop. First Am. Compl. ¶ 88 ("Plaintiff sent written notices and requests concerning servicing errors, escrow accounting, insurance payments, fees, and related information."). Although plaintiff did not include the contents of this purported QWR in the complaint, plaintiff's motion to supplement the record with these materials is granted. Pl. Mot. Supp. 2, ECF 20. The complaint necessarily relies on the contents of this letter and neither party disputes the authenticity of the document. Furthermore, plaintiff could readily amend the complaint to attach these materials. *See Lee*, 250 F.3d at 688 (describing materials appropriate to consider in resolving a motion to dismiss); *see also Watson v. Bank of Am., N.A.*, No. 3:16-cv-00513-GPC-MDD, 2016 WL 3552061, at *9 (S.D. Cal. June 30, 2016) ("Plaintiff must allege facts of when the letter was sent, to whom it was directed, why it was sent, and the contents of the letter so that it may determine if the letter qualifies as a[n] NOE.").

> [PennyMac] confirmed that the servicing of the loan transferred
> from LoanStar Home Loans, LLC to PennyMac, effective August
> 1, 2017. At the time of transfer, the loan was due for the August
> 2017 payment. As of the date of this letter, the loan is due for the
> August 2025 payment. The unpaid principal balance Is
> $315,566.66.
>
> Please find the enclosed document copies: Note, Deed of Trust,
> Welcome Letter, Notification of Assignment, Sale or Transfer of
> Your Mortgage Loan ("404 Notice"), MERS Milestone Report,
> and a Customer Account Activity Statement reflecting activity that
> has occurred since PennyMac began servicing the loan. A payoff
> quote and servicing file have been requested and will be sent to
> you under separate cover.
>
> Should you wish to view the original loan documents, such as the
> Note or Deed of Trust, please contact PennyMac directly at (800)
> 777-4001 to make arrangements at our California servicing office.[7]

Plaintiff's July 30, 2025 "Request for Information and Notice of Error" is comprised almost entirely of requests not related to the "servicing" of the loan as that term is defined by RESPA. Requests for "wet-ink signature" documents, assignments of the Deed of Trust, and the "full chain of title" are related to the loan's origination or otherwise plaintiff's challenge to the validity of the underlying debt. "[RESPA] distinguishes between letters that relate to borrowers' disputes regarding servicing, on the one hand, and those regarding the borrower's contractual relationship with the lender, on the other. That distinction makes sense because only servicers of loans are subject to § 2605(e)'s duty to respond—and they are unlikely to have information regarding those loans' originations." *Medrano*, 704 F.3d at 667.

Given that limitation of the statute, RESPA does not require servicers to respond to a written request that the servicer "reasonably determines" is too broad or unduly burdensome. 12 C.F.R. § 1024.36(f); *see also Brewer v. Wells Fargo Bank, N.A.*, No. 4:16-cv-02664-HSG, 2017

---

[7] Pl. Supp. Ex. 3 at 1, ECF 20-2 (some formatting modified). The analysis regarding the consideration of plaintiff's written correspondence for resolving defendants' motion to dismiss is the same for PennyMac's written response.

WL 1315579, at *5 (N.D. Cal. Apr. 6, 2017). However, "[t]o the extent a servicer can reasonably identify a valid information request in a submission that is otherwise overbroad or unduly burdensome, the servicer shall comply with the requirements of paragraphs (c) and (d) of [that] section with respect to that requested information." 12 C.F.R 1024.36(f)(1)(iv); *see also Brewer*, 2017 WL 1315579 at *5.

Here, PennyMac reasonably determined that many of plaintiff's requests were overly broad and otherwise not related to the servicing of plaintiff's loan, but it responded to plaintiff's requests that *did* relate to servicing by apparently sending some of its records including a "Customer Account Activity Statement" and a "servicing file."[8] Furthermore, plaintiff's complaint does not allege what in particular is insufficient about PennyMac's response regarding the servicing of loan. For all those reasons, plaintiff's proposed amended complaint fails to state a claim under RESPA or Regulation X. *See Brewer*, 2017 WL 1315579 at *5 (granting the defendant's motion to dismiss because "(1) [the plaintiffs'] facially overbroad requests sought a broad range of documents that went well beyond the limited subject matter of a valid QWR, (2) [the defendant] provided [the plaintiffs] with a copy of their promissory note in response to the QWRs, and (3) the complaint lacks any specificity as to what in particular was insufficient about [the defendant's] response").

## IV.     FCRA Claim

Plaintiff's FCRA claim asserts that PennyMac violated 15 U.S.C. § 1681s-2(b) by "fail[ing] to conduct a reasonable investigation and continued to furnish inaccurate information" after plaintiff had notified "[t]he consumer reporting agencies" that he "disputed the inaccurate information furnished by PennyMac." Prop. First Am. Compl. ¶¶ 95–97, ECF 56. "Congress

---

[8] Pl. Supp. Ex. 3 at 1, ECF 20-2.

11 – FINDINGS AND RECOMMENDATIONS

enacted FCRA to ensure accurate reporting about the 'credit worthiness, credit standing, credit capacity, character, and general reputation of consumers.' " *Gross v. CitiMortgage, Inc.*, 33 F.4th 1246, 1250–51 (9th Cir. 2022) (quoting 15 U.S.C. § 1681(a)(2)). The statute allows for consumers to file a dispute with a credit reporting agency, "which in turn notifies the entities that 'furnished' information about the consumer's debt." *Id.* at 1251 (quoting 15 U.S.C. § 1681i(a)). Under FCRA, a furnisher has a duty to conduct an "investigation with respect to the disputed information," and the investigation must be "reasonable and non-cursory." *Id.* (citing 15 U.S.C. § 1681s-2(b); *Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d 1147, 1157 (9th Cir. 2009)). To succeed on a FCRA claim against a furnisher, a consumer must make a primary showing that "the furnisher's report was inaccurate." *Willcot v. Reg'l Acceptance Corp.*, No. 3:25-cv-02111-AB, 2026 WL 1705924, at *3 (D. Or. June 11, 2026) (quoting *Gross*, 33 F.4th at 1251). A "credit entry can be 'incomplete or inaccurate' within the meaning of the FCRA 'because it is patently incorrect, or because it is misleading in such a way and to such an extent that it can be expected to adversely affect credit decisions.' " *Gorman*, 584 F.3d at 1163 (quoting *Sepulvado v. CSC Credit Servs., Inc.,* 158 F.3d 890, 895 (5th Cir. 1998)).

Plaintiff's Proposed First Amended Complaint alleges that in September of 2025, "PennyMac furnished adverse information to consumer reporting agencies concerning the disputed account," and did so again in October. ¶¶ 57, 60, ECF 56. Plaintiff alleges that he "disputed the inaccurate information furnished by PennyMac with consumer reporting agencies, including Experian and TransUnion," and that upon receiving notice from these agencies, PennyMac "failed to conduct a reasonable investigation and instead continued to verify and report inaccurate information." *Id.* ¶¶ 63–66. But nowhere does plaintiff's Proposed First Amended Complaint specifically identify what the specific inaccurate information was that

PennyMac is alleged to have furnished. On that basis alone, the FCRA claim fails because it impossible to analyze the legal sufficiency of plaintiff's claims without these critical facts.

There are fatal problems too with the various theories suggested by a broad read of the latest iteration of the complaint and plaintiff's supporting materials. The Proposed First Amended Complaint states that plaintiff "was current on his loan payments when he initiated this action in state court" in October of 2025. *Id.* ¶ 45. It also alleges that the property is subject to a "pending foreclosure sale" that is set for October 13, 2026, and that as of July 21, 2026, plaintiff "has set aside funds and remains ready, willing, and able to bring the Loan current[.]" *Id.* ¶¶ 69–73, 84. In other words, plaintiff admits that he has defaulted on the loan. Thus, to the extent plaintiff is asserting that PennyMac wrongly furnished information to the credit reporting agencies that the loan is in default, the complaint fails to allege the required inaccuracy to sustain a FCRA claim. *See Mayes v. Wells Fargo Bank, N.A.*, No. 3:20-cv-01347-AJB-JLB, 2021 WL 5763833, at *2 (S.D. Cal. May 14, 2021) (granting the defendant's motion to dismiss the plaintiff's FCRA claims because the plaintiff "admitted that he fell behind on his car payments, and that the derogatory information related to those late and missed payments"); *Nikolos Edward Carrafield, Plaintiff, v. Upgrade, Inc., Defendant.*, No. 8:25-cv-2344-CBM-ADS, 2026 WL 2138823, at *2 (C.D. Cal. Mar. 24, 2026) (finding the plaintiff did not state a FCRA claim because the complaint did "not allege [that the plaintiff] did not owe the debt, that [the plaintiff] fully paid off the debt, nor allege any other nonconclusory facts demonstrating the information reported by [the defendant] was inaccurate").

To the extent plaintiff's materials could be read as asserting that PennyMac should have reported or somehow indicated that plaintiff was trying to dispute whether he actually had to pay back the loan because of a purported "chain of title" problem or some other technical deficiency

13 – FINDINGS AND RECOMMENDATIONS

in the underlying paperwork evidencing the loan, that is not a basis for a FCRA claim. *See* Prop. First Am. Compl. ¶ 40, ECF 56 ("PennyMac . . . cannot establish the lawful chain of assignments required by law to support foreclosure."); First Prop. First Am. Compl. ¶ 25, ECF 25-1 (alleging that PennyMac "failed to conduct a reasonable investigation" because it "continued to report the loan as 'seriously delinquent' without including any notation that the account was 'in dispute,' rendering the reporting materially misleading and incomplete"). This theory misunderstands PennyMac's statutory duties as a furnisher under the FCRA. Under section 1681s-2(b), furnishers are required to conduct a reasonable investigation to determine if the disputed information is "incomplete or inaccurate." *Chiang v. Verizon New England Inc.*, 595 F.3d 26, 37 (1st Cir. 2010). As discussed above, the facts regarding the status of plaintiff's loan payments are not disputed: he did not make several payments, and thus PennyMac's report that the account was "seriously delinquent" was not actually inaccurate. Pl. Resp. Mot. Dismiss 3, ECF 13. Plaintiff has instead asserted he can resort to some legal defense—for example, that there is some purported problem with the "corporate assignment" of the underlying note or some other "chain of title" issue—that excuses his obligation to pay on the loan. *See* Prop. First Am. Compl. ¶¶ 23–40. But to satisfy the first element of a section 1681s-2(b) claim, the complaint must allege a disputed *fact* (i.e., whether a payment past due or was timely made) underlying a purported inaccuracy. *Mehta v. Wells Fargo Bank, N.A.*, No. 2:17-cv-02532-AB-SS, 2018 WL 5880758, at *3 (C.D. Cal. Feb. 6, 2018); *see also Ramos v. Experian Info. Sols., Inc.*, No. 4:16-cv-06375-PJH, 2017 WL 1047019, at *8 (N.D. Cal. Mar. 20, 2017) ("Either the debtor has filed for bankruptcy protection, or he has not, as a matter of fact.").

Asserting a legal defense to payment, which is what plaintiff has done here, is not sufficient because PennyMac is "neither qualified nor obligated to matters that turn on questions

that can only be resolved a court of law." *Biggs v. Experian Info. Sols., Inc.*, 209 F. Supp. 3d 1142, 1144 (N.D. Cal. 2016) (quoting *Chiang*, 595 F.3d 26 at 38); *Mehta*, 2018 WL 5880758 ("The FCRA does not require [the defendant] to adjudicate [the plaintiff's] legal contentions [such as a 'contractual defense to the underlying debt'] in the course of a credit investigation."); *Artus v. Experian Info. Sols., Inc.*, No. 5:16-cv-03322-EJD, 2017 WL 346022, at *3 (N.D. Cal. Jan. 24, 2017) ("To satisfy the first element of a § 1681s-2(b) claim, a complaint's allegations must dispute *facts* underlying a purported inaccuracy; the presentation of *legal defenses* to payment will not suffice.") (emphasis in original); *see also Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d 876, 892 (9th Cir. 2010) (explaining that a credit reporting agency is not required to hold back from reporting "any information about the disputed item simply because the consumer asserts a legal defense," in part because "the very economic purpose for credit reporting companies would be significantly vitiated if they shaded every credit history in their files in the best possible light for the consumer"); *Denan v. Trans Union LLC*, 959 F.3d 290, 296 (7th Cir. 2020) ("The correct way to resolve legal defenses to [the] loans was in a lawsuit against [the] lenders" and then "[i]f a court had ruled the loans invalid and Trans Union had continued to report it as a valid debt, *then* [the plaintiffs] would have grounds for a potential FCRA claim.") (simplified) (emphasis in original); *Galea v. Wells Fargo Bank, N.A.*, 388 F. Supp. 3d 1212, 1215 (E.D. Cal. 2019) ("[C]ourts rely on the same standard for determining whether a credit report included 'inaccurate' information regardless of which entity a plaintiff sues.") (citing *Shaw v. Experian Info. Sols., Inc.*, 891 F.3d 749, 756 (9th Cir. 2018); *Gorman*, 584 F.3d at 1163).

Because plaintiff has not alleged the actual inaccuracy that PennyMac purportedly reported, his FCRA claim against PennyMac fails as a matter of law.

## V. Remaining Claims

The Proposed First Amended Complaint asserts claims for declaratory judgment, injunctive relief, and an accounting. ¶¶ 74–76, 101–11, ECF 56. However, a declaratory judgment and an injunction are remedies, not separate claims. *Ajetunmobi v. Clarion Mortg. Cap., Inc.*, No. 8:12-cv-00568-DOC-JPR, 2012 WL 2945051, at *10 (C.D. Cal. July 17, 2012), *aff'd,* 595 F. App'x 680 (9th Cir. 2014) ("Injunctive relief is a remedy, not a cause of action. In order to plead declaratory relief, a plaintiff must show a real and substantial controversy admitting of specific relief.") (citations omitted). The same is true for an accounting. *Motameni v. Adams*, No. 3:21-cv-01184-HZ, 2022 WL 3682940, at *8 (D. Or. Aug. 25, 2022) ("An accounting is an equitable remedy, not a separate cause of action. An interested party may compel an accounting of a business entity when a fiduciary relationship exists between the parties and one party has the duty to render an account to the other.") (simplified). Because plaintiff's claims for quiet title and claims under RESPA and FCRA all fail as a matter of law, these various remedies are subject to dismissal as well.

## VI. Further Leave to Amend

"[B]efore dismissing a pro se complaint the district court must provide the litigant with notice of the deficiencies in his complaint in order to ensure that the litigant uses the opportunity to amend effectively." *Akhtar v. Mesa*, 698 F.3d 1202, 1212 (9th Cir. 2012) (citation omitted). Here, plaintiff was advised of the deficiencies in his original complaint through the extensive briefing that the defendants filed in support of their motions to dismiss. The court also held a hearing on the motions to dismiss at which time the court attempted to explain some of the deficiencies to plaintiff. Plaintiff thereafter filed a Proposed First Amended Complaint, which still fails to allege valid claims for relief. It is also unclear how plaintiff could cure the defects in

his Proposed First Amended Complaint. As such, at this point, dismissal without further leave to amend is appropriate.

**VII.    Motion for Alternative Service—Defendant Loan Star**

Finally, plaintiff has filed an outstanding motion seeking leave to use an alternative means of service for defendant Loan Star. ECF 50. The only claim for relief stated against Loan Star is one for quiet title, and as explained above, that claim fails because plaintiff cannot demonstrate that his claim to title for the property is superior to any of the defendants. Because the complaint fails to state a viable claim against Lone Star, alternative service is unnecessary.

**RECOMMENDATIONS**

Defendants PennyMac Loan Services LLC, Federal National Mortgage Association, and Mortgage Electronic Registration Systems, Inc.'s Motion to Dismiss (ECF 8) and Request for Judicial Notice (ECF 9), and defendant Ticor Title's Joinder in Motion to Dismiss (ECF 12) should be granted. Plaintiff's Motion to Lodge and File Supplement Declaration and Exhibits (ECF 22) should be granted to the extent that these Findings and Recommendations rely on certain exhibits attached therein and otherwise should be denied. Plaintiff's Motion for Leave to File Sur-Reply in Opposition to Defendants' Motion to Dismiss (ECF 23) and plaintiff's Motion to Amend/Correct Complaint (ECF 25) should be denied because plaintiff has been given the opportunity to file a Proposed Amended Complaint (ECF 56) and still fails to cure the deficiencies identified by defendants in their motions to dismiss in the most recent iteration of the complaint. Plaintiff's Motion for Leave to Serve Loan Star Home Loans, LLC through the Oregon Secretary of State (ECF 50) should be denied because plaintiff fails to allege a valid quiet title claim against this defendant.

//

**SCHEDULING ORDER**

These Findings and Recommendations will be referred to a district judge. Objections, if any, are due Wednesday, August 26, 2026. If no objections are filed, then the Findings and Recommendations will go under advisement on that date.

If objections are filed, then a response is due within 14 days after being served with a copy of the objections. When the response is due or filed, whichever date is earlier, the Findings and Recommendations will go under advisement.

**NOTICE**

These Findings and Recommendations are not an order that is immediately appealable to the Ninth Circuit Court of Appeals. Any Notice of Appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure, should not be filed until entry of a judgment.

DATED August 5, 2026.

/s/ Youlee Yim You
Youlee Yim You
United States Magistrate Judge