IVAN RICHARD HIGGS
54248 Kalberer Rd
Scappoose, Oregon 97056
Telephone: (503) 543-2956
Email: ivanhggs@yahoo.com
IVAN RICHARD HIGGS, PRO SE

**UNITED STATES DISTRICT COURT**
**DISTRICT OF OREGON**
**PORTLAND DIVISION**

IVAN RICHARD HIGGS,
Plaintiff,

PENNYMAC LOAN SERVICES, LLC; FEDERAL NATIONAL MORTGAGE ASSOCIATION (FANNIE MAE); MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. (MERS); LOANSTAR HOME LOANS, LLC dba LOANSTAR HOME LENDING; and TICOR TITLE; and DOES 1-10,
Defendants.

Case No. 3:25-cv-02335-YY

**PLAINTIFF'S SPECIFIC OBJECTIONS TO MAGISTRATE JUDGE'S FINDINGS AND RECOMMENDATIONS**

**(REQUEST FOR ORAL ARGUMENT)**

Plaintiff Ivan Richard Higgs, proceeding pro se, respectfully objects to the Findings and Recommendations ("F&R"), ECF 62, issued by Magistrate Judge Youlee Yim You on August 5, 2026. Plaintiff files these objections pursuant to 28 U.S.C. § 636(b)(1)(B) and Fed. R. Civ. P. 72(b)(2). Plaintiff respectfully requests that the District Court conduct a de novo review of the portions of the F&R to which these objections are directed, reject the F&R's recommendation that all claims in the Proposed First Amended Complaint (ECF 56) be dismissed, and grant Plaintiff leave to file a Second Amended Complaint.

## I. STANDARD OF REVIEW

Under 28 U.S.C. § 636(b)(1), a district judge must "make a de novo determination of those portions of the [magistrate judge's] report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1)(C); see also Fed. R. Civ. P. 72(b)(3) ("the district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to."). The district judge "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C).

On a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the court must accept all well-pleaded factual allegations as true and construe them in the light most favorable to the plaintiff. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555–56 (2007). A complaint need only plead enough factual matter, accepted as true, to "state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570. The Ninth Circuit requires de novo review of those portions of the magistrate judge's report to which objection is made. United States v. Reyna-Tapia, 328 F.3d 1114, 1121 (9th Cir. 2003) (en banc) ("the court must review de novo the magistrate judge's findings and recommendations if objection is made, but not otherwise"); see also Fed. R. Civ. P. 72(b)(2) (requiring "specific" written objections). General or blanket objections that merely restate prior arguments are insufficient. See id.; see also 28 U.S.C. § 636(b)(1)(C) (district judge "may accept, reject, or modify" recommendations after de novo review).

For pro se litigants, the Ninth Circuit requires liberal construction of filings and mandates that a district court not dismiss a pro se complaint without leave to amend unless "it is absolutely clear that the deficiencies of the complaint could not be cured by amendment." Akhtar v. Mesa, 698

F.3d 1202, 1212 (9th Cir. 2012) (quoting Schucker v. Rockwood, 846 F.2d 1202, 1203–04 (9th Cir. 1988) (per curiam)).

## II. SPECIFIC OBJECTIONS

### A. Objection 1: The F&R Failed to Apply Controlling Oregon Supreme Court Authority on MERS's Authority (Quiet Title — F&R pp. 5–6)

The F&R dismissed Plaintiff's quiet title claim (ECF 56 ¶¶ 77–85) on the ground that Plaintiff failed to allege tender of the full amount owed and that chain-of-title defects are "not relevant to determining the strength of plaintiff's own claim to title." F&R 5–6 (citing Collier v. Wilmington Savs. Fund Soc'y, FSB, Case No. 2:20-cv-681-HL, 2022 WL 1223253, at *2 (D. Or. Apr. 26, 2022)). In doing so, the F&R never addressed the controlling Oregon Supreme Court authority that MERS lacks authority to hold or transfer legal title to a trust deed and that any purported agency authority must derive from the actual beneficiary.

The Oregon Supreme Court held in Brandrup v. ReconTrust Co., N.A., 353 Or. 668, 689–90, 303 P.3d 301 (2013), that "MERS holds neither [the beneficial interest nor the legal interest] in these cases, and, therefore, it cannot hold or transfer legal title to the trust deed." The court further held that "[m]ERS's authority, if any, to perform any act in the foreclosure process therefore must derive from the original beneficiary and its successors in interest." Id. at 705. In Niday v. GMAC Mortgage, LLC, 353 Or. 648, 661, 302 P.3d 444 (2013), the court held that "the 'beneficiary' of a trust deed under the Oregon Trust Deed Act is the person designated in that trust deed as the person to whom the underlying loan repayment obligation is owed"—i.e., the lender or its successor—not MERS as nominee.

The Oregon Court of Appeals applied these holdings in Fed. Home Loan Mortg. Corp. v. Smith, 287 Or. App. 42, 400 P.3d 1009 (2017), where the court held that a MERS assignment did not

establish the authority necessary to support foreclosure because MERS "held no beneficial interest in the deed and thus could not effect a valid assignment." Id. at 52. The court noted that "Nor is there any evidence that would permit a finding that MERS was an 'agent'" of the actual beneficiary. Id. Likewise, in Federal National Mortgage Ass'n v. Goodrich, 275 Or. App. 77, 364 P.3d 696 (2015), the Court of Appeals held that "the trust deeds, by themselves, do not establish the necessary relationship" to establish MERS's agency authority, and that "the original lenders and their successors, who are the other parties under defendants' theory of 'common agency,' are not signatories" to the trust deeds. Id. at 94 (citing Brandrup, 353 Or. at 709).

Plaintiff alleged in ECF 56 that: (1) MERS was designated "solely as nominee" for the original lender, LoanStar (¶ 19); (2) MERS was not the beneficiary under the Oregon Trust Deed Act (¶ 35); (3) MERS lacked authority to assign the Deed of Trust to PennyMac because it was not the holder of the Note and did not own the secured obligation (¶ 32); (4) the Corporate Assignment was signed by Monya Jones as "Vice President" of MERS (¶ 29); and (5) Defendants have not established a valid chain of title authorizing enforcement (¶¶ 33, 40).

The F&R applied the tender rule and dismissed the quiet title claim without first determining whether PennyMac is a valid mortgagee entitled to receive tender. This was error because the tender rule presupposes the existence of a valid mortgagee. If PennyMac acquired its interest through an assignment by an entity that lacked authority to assign under Brandrup and Niday, there may be no valid mortgagee to whom tender is owed. The F&R's reasoning circularly assumes the validity of the very assignment Plaintiff challenges.

The F&R should have addressed whether Plaintiff's allegations regarding MERS's lack of authority under Brandrup and Niday state a plausible claim that the Corporate Assignment is void. At a minimum, these allegations require factual development—particularly regarding

whether MERS had an actual agency relationship with the true beneficiary, which cannot be resolved on a motion to dismiss. See Brandrup, 353 Or. at 705 ("We are unable to determine the existence, scope, or extent of any such authority on the record before us."); Smith, 287 Or. App. at 52 (noting "Nor is there any evidence that would permit a finding that MERS was an 'agent'").

**B. Objection 2: The F&R Failed to Address the 12 C.F.R. § 1024.35(i)(1) Claim (RESPA — F&R pp. 7–11)**

Plaintiff specifically alleged that PennyMac violated 12 C.F.R. § 1024.35(i)(1) by furnishing adverse credit information to consumer reporting agencies within 60 days of receiving Plaintiff's notice of error. ECF 56 ¶ 90. The F&R analyzed whether Plaintiff's notice of error was overbroad—concluding that "Plaintiff's July 30, 2025 'Request for Information and Notice of Error' is comprised almost entirely of requests not related to the 'servicing' of the loan as that term is defined by RESPA," F&R 10—and whether PennyMac adequately responded, concluding that "plaintiff's proposed amended complaint fails to state a claim under RESPA or Regulation X," F&R 11. But the F&R never addressed Plaintiff's separate regulatory claim under § 1024.35(i)(1).

The regulation provides: "After receipt of a notice of error, a servicer may not, for 60 days, furnish adverse information to any consumer reporting agency regarding any payment that is the subject of the notice of error." 12 C.F.R. § 1024.35(i)(1). This prohibition is mandatory and applies from the date of receipt of the notice of error, regardless of whether the servicer ultimately concludes the notice was unfounded.

Plaintiff alleged he sent a notice of error on July 30, 2025 (ECF 56 ¶ 51), which PennyMac received on or about August 4, 2025 (¶ 53). The 60-day prohibition period therefore ran from

August 4, 2025 through approximately October 3, 2025. Plaintiff further alleged that "on or about September 4, 2025, while Plaintiff's dispute was pending, PennyMac furnished adverse information to consumer reporting agencies concerning the disputed account" (¶ 57), and that "on or about October 6, 2025, and thereafter, PennyMac continued to furnish adverse information" (¶ 60). The September 4, 2025 reporting falls squarely within the 60-day prohibition period.

This is a distinct violation that does not depend on whether the servicer reasonably determined the notice of error was overbroad. Even if PennyMac was permitted to disregard certain requests in the notice of error as overbroad under 12 C.F.R. § 1024.35(g), the prohibition on furnishing adverse information under § 1024.35(i)(1) applies to "any payment that is the subject of the notice of error." The F&R's analysis of whether the NOE was overbroad does not address this separate regulatory duty. The F&R's failure to address this specific regulatory violation is clear legal error.

**C. Objection 3: The F&R Mischaracterized Plaintiff as Having "Admitted Default" (FCRA — F&R pp. 12–13)**

The F&R states that "plaintiff admits that he has defaulted on the loan" and therefore cannot establish the inaccuracy element required for an FCRA claim. F&R 13. This finding is a factual error that mischaracterizes the allegations in ECF 56.

ECF 56 ¶ 45 alleges that "Plaintiff was current on his loan payments when he initiated this action in state court." Plaintiff filed suit in state court on October 27, 2025. ECF 32 (Order, Apr. 10, 2026). The F&R's own recitation of the facts acknowledges that plaintiff "apparently stopped making payments to PennyMac… sometime around September of 2025." F&R 2 (citing Pl. Mot. Supp., Ex. S-9 at 2, ECF 22-2). But the FCRA claim is not based on whether Plaintiff ultimately

defaulted—it is based on what PennyMac reported to consumer reporting agencies while Plaintiff's dispute was pending and whether that reporting was inaccurate or materially misleading.

The F&R conflates two distinct points: (1) whether Plaintiff eventually stopped making payments, and (2) whether the information PennyMac furnished to consumer reporting agencies was accurate and complete at the time it was reported. A borrower who is current when a dispute begins and who later stops making payments during the pendency of a servicer dispute has not "admitted" that all reporting during the dispute period was accurate. The F&R's reasoning improperly transforms Plaintiff's conditional tender allegation (¶ 84: "ready, willing, and able to bring the Loan current within approximately thirty (30) days after Defendants identify the lawful creditor") into an admission of default for FCRA purposes. The conditional nature of the tender—conditioned on Defendants establishing their authority to enforce—does not concede that PennyMac's credit reporting was accurate.

The F&R also cites cases in which plaintiffs expressly admitted falling behind on payments and where the derogatory information directly corresponded to those admitted delinquencies. See F&R 13 (citing Mayes v. Wells Fargo Bank, N.A., No. 3:20-cv-01347-AJB-JLB, 2021 WL 5763833, at *2 (S.D. Cal. May 14, 2021); Carrafield v. Upgrade, Inc., No. 8:25-cv-2344-CBM-ADS, 2026 WL 2138823, at* 2 (C.D. Cal. Mar. 24, 2026)). Those cases are distinguishable because the plaintiffs in those cases did not allege they were current when the dispute began, nor did they allege that the reporting occurred during a pending servicing dispute under RESPA.

**D. Objection 4: The F&R Failed to Analyze the Materially Misleading Reporting Theory Under Gorman (FCRA — F&R pp. 13–14)**

The F&R acknowledged that Plaintiff's materials could be read as asserting that PennyMac "continued to report the loan as 'seriously delinquent' without including any notation that the account was 'in dispute,' rendering the reporting materially misleading and incomplete." F&R 14 (quoting First Prop. First Am. Compl. ¶ 25, ECF 25-1). However, the F&R dismissed this theory as a "legal defense" that is "not a basis for a FCRA claim." Id. The F&R conflated two distinct theories and failed to analyze the one that is legally cognizable.

The first theory—that PennyMac should have adjudicated Plaintiff's chain-of-title defense before reporting—was correctly rejected by the F&R. See F&R 14 (citing Chiang v. Verizon New England Inc., 595 F.3d 26, 38 (1st Cir. 2010); Carvalho v. Equifax Info. Servs., LLC, 629 F.3d 876, 892 (9th Cir. 2010)).

The second theory—that PennyMac's failure to report the account as "in dispute" rendered the reporting "incomplete or inaccurate" within the meaning of the FCRA—is legally cognizable under binding Ninth Circuit authority. In Gorman v. Wolpoff & Abramson, LLP, 584 F.3d 1147, 1163 (9th Cir. 2009), the Ninth Circuit held that "a disputed credit file that lacks a notation of dispute may well be 'incomplete or inaccurate' within the meaning of the FCRA, and the furnisher has a privately enforceable obligation to correct the information after notice." The court further held that "a consumer report that contains technically accurate information may be deemed 'inaccurate' if the statement is presented in such a way that it creates a misleading impression." Id. (quoting Sepulvado v. CSC Credit Servs., Inc., 158 F.3d 890, 895 (5th Cir. 1998)).

Plaintiff alleged in ECF 56 that: (1) he disputed the information with consumer reporting agencies, including Experian and TransUnion (¶ 63); (2) the consumer reporting agencies notified PennyMac of the disputes pursuant to 15 U.S.C. § 1681i(a)(2) (¶ 64); and (3) PennyMac "failed to conduct a reasonable investigation and instead continued to verify and report inaccurate information" (¶¶ 65–66). The F&R acknowledged this theory but never analyzed whether the omission of a dispute notation, after CRA notice, satisfies the "incomplete or inaccurate" standard under Gorman. This was legal error.

Furthermore, the Ninth Circuit held in Gross v. CitiMortgage, Inc., 33 F.4th 1246, 1253 (9th Cir. 2022), that "FCRA will sometimes require furnishers to investigate, and even to highlight or resolve, questions of legal significance." The court rejected the argument that "legal" issues are categorically exempt from a furnisher's investigation duty. Id. The F&R cited Gross for the general FCRA framework (F&R 12) but did not address this holding, which is directly relevant to whether PennyMac's investigation was reasonable when Plaintiff's dispute involved questions about the validity of the enforcement chain.

The F&R should have analyzed the materially misleading theory separately from the legal defense theory. Under Gorman, a furnisher's failure to note that an account is disputed after receiving CRA notice can render the reporting incomplete or inaccurate, even if the underlying amount is technically correct. This is a distinct, legally cognizable FCRA theory that the F&R failed to address.

**E. Objection 5: The F&R Erred in Finding the Entire NOE Overbroad and Ignoring Servicing-Specific Allegations (RESPA — F&R pp. 7–11)**

The F&R concluded that Plaintiff's July 30, 2025 "Request for Information and Notice of Error" is "comprised almost entirely of requests not related to the 'servicing' of the loan." F&R 10. The

F&R based this conclusion on the list of requests quoted from the supplemental exhibits, which included requests for the original promissory note, assignments, chain of title, and securitization documents. F&R 8–10. However, the F&R ignored the servicing-specific allegations in ECF 56 and the portions of the NOE that do relate to servicing.

ECF 56 ¶ 52 alleges that "[t]he Notice of Error identified specific servicing errors, including PennyMac's handling of homeowners insurance payments, escrow accounting, duplicate or misapplied payments, assessed fees, and PennyMac's claimed authority to service and enforce the loan." ECF 56 ¶ 88 alleges that "Plaintiff sent written notices and requests concerning servicing errors, escrow accounting, insurance payments, fees, and related information." These allegations identify specific servicing-related errors that fall within RESPA's definition of "servicing."

RESPA defines "servicing" as "receiving any scheduled periodic payments from a borrower pursuant to the terms of any loan … and making the payments of principal and interest and such other payments with respect to the amounts received from the borrower." 12 U.S.C. § 2605(i)(3). The handling of homeowners insurance payments, escrow accounting, and assessed fees are squarely within this definition. See Medrano v. Flagstar Bank, FSB, 704 F.3d 661, 665–67 (9th Cir. 2012) (servicing does not include loan origination but does include receipt of payments, application of payments, and escrow administration).

The F&R itself acknowledged that "[t]o the extent a servicer can reasonably identify a valid information request in a submission that is otherwise overbroad or unduly burdensome, the servicer shall comply with the requirements of paragraphs (c) and (d) of [that] section with respect to that requested information." F&R 10–11 (quoting 12 C.F.R. § 1024.36(f)(1)(iv); see also Brewer v. Wells Fargo Bank, N.A., No. 4:16-cv-02664-HSG, 2017 WL 1315579, at *5

(N.D. Cal. Apr. 6, 2017)). The F&R then stated that "PennyMac reasonably determined that many of plaintiff's requests were overly broad" and that "it responded to plaintiff's requests that did relate to servicing by apparently sending some of its records." F&R 11. But the F&R never analyzed whether the specific servicing-related allegations in ECF 56 ¶ 52—insurance payments, escrow accounting, duplicate or misapplied payments, and assessed fees—state a valid notice of error under 12 C.F.R. § 1024.35.

Furthermore, the F&R found that "plaintiff's complaint does not allege what in particular is insufficient about PennyMac's response regarding the servicing of loan." F&R 11. But ECF 56 ¶ 55 alleges that "PennyMac failed to conduct a reasonable investigation and failed to provide a complete and substantive response within the required period." ECF 56 ¶ 59 alleges that "PennyMac's responses on or about September 25 and 26, 2025, failed to address the substance of Plaintiff's disputes or correct the errors." These allegations specifically identify the insufficiency of PennyMac's response. While Plaintiff could plead these allegations with greater specificity, the F&R's conclusion that the complaint "does not allege what in particular is insufficient" overlooks these specific allegations.

At a minimum, the F&R should have acknowledged that the NOE contained servicing-related requests and analyzed whether those specific requests state a valid RESPA claim. Instead, the F&R dismissed the entire RESPA claim based on the overbreadth of the chain-of-title requests, without separately analyzing the servicing-specific allegations.

**F. Objection 6: The F&R Misapplied Collier and Erred in Finding Chain of Title "Not Relevant" (Quiet Title — F&R pp. 5–6)**

The F&R held that "Plaintiff's allegations regarding purported problems with [PennyMac's] 'chain of title and enforcement authority' are not relevant to determining the strength of

plaintiff's own claim to title." F&R 6 (citing Collier, 2022 WL 1223253, at *2). This misapplies Collier and conflicts with controlling Oregon authority on void assignments.

In Collier, the court addressed a situation where the plaintiffs challenged "whether there is an uninterrupted chain of recorded written assignments, whether [the defendant] can establish the terms of the Note, whether [the plaintiffs] are exposed to the risk of another party seeking to enforce the instrument, and whether Bank of America is the party who lost the Note." Collier, 2022 WL 1223253, at *2. The Collier court held these facts were "not material to whether [the plaintiffs] can quiet title under Oregon law" because they went to the defendant's chain of title, not the plaintiff's own title. Id. Critically, however, Collier did not involve a challenge to the assignor's legal authority to execute the assignment. Collier involved an incomplete or disputed chain of title—not a void assignment by an entity that lacked legal authority to act.

Here, Plaintiff's claim is fundamentally different. Under Brandrup, 353 Or. at 689–90, and Niday, 353 Or. at 661, MERS is not the beneficiary under the Oregon Trust Deed Act and "cannot hold or transfer legal title to the trust deed." If MERS lacked authority to assign—as Plaintiff has alleged and as the Oregon Supreme Court has held requires proof of an actual agency relationship—the Corporate Assignment is void, not merely disputable. A void assignment is a nullity, not a "chain of title defect." See Carpenter v. Longan, 83 U.S. (16 Wall.) 271, 274 (1872) ("[A]n assignment of the [mortgage] alone is a nullity"). The distinction between a void assignment and a disputed or incomplete chain of title is legally significant because a void assignment means there is no valid mortgagee against whom the tender rule should be applied.

The F&R's reasoning—that chain of title is "not relevant"—effectively assumes the validity of the very assignment Plaintiff challenges. This is circular. If the Corporate Assignment is void

because MERS lacked authority under Brandrup and Niday, then PennyMac may have no interest in the property, and the quiet title analysis changes fundamentally. The F&R should have addressed whether Plaintiff's Brandrup/Niday-based challenge to the validity of the Corporate Assignment is distinguishable from the chain-of-title defects found irrelevant in Collier. Additionally, the F&R cited Swango v. Nationstar Sub1, LLC, 292 F. Supp. 3d 1134, 1144 (D. Or. 2018), for the proposition that "[a] plaintiff 'must allege [he] has tendered payment of the full amount of the outstanding debt in order to maintain [a] quiet-title claim.'" F&R 6. But the Swango court's reasoning presupposes that the defendant is a valid mortgagee entitled to receive tender. If PennyMac is not a valid mortgagee because the Corporate Assignment is void, then the tender rule does not apply to PennyMac. The F&R should have addressed this threshold question before applying the tender rule.

**G. Objection 7: The F&R Failed to Address the ORS 93.740(2) Lis Pendens Argument (Quiet Title — F&R pp. 5–6)**

Plaintiff alleged in ECF 56 ¶¶ 46–50 that he recorded a Notice of Lis Pendens in Columbia County on November 7, 2025 (Instrument No. 2025-006555), and that the Corporate Assignment was recorded on November 26, 2025 (Instrument No. 2025-06917)—almost three weeks after the lis pendens was recorded. ECF 56 ¶ 50 alleges that "[b]ecause the Corporate Assignment was recorded after Plaintiff recorded the Notice of Lis Pendens, the assignment is void as to Plaintiff under ORS 93.740(2)."

ORS 93.740(2) provides: "Except as provided in subsection (3) of this section, a conveyance or encumbrance that is not recorded in the manner provided by law before the filing of a notice of pendency that affects all or part of the same real property is void as to the person recording the notice of pendency for all rights and equities in the real property that are adjudicated in the suit."

ORS 93.740(2). The Oregon Court of Appeals has confirmed that this provision renders subsequent conveyances "void as to" the party who recorded the lis pendens. Vukanovich v. Kine, 251 Or. App. 807, 285 P.3d 733, 738 (2012) (quoting ORS 93.740(2) and holding that conveyances recorded after the lis pendens were "void as to" the filing party).

The F&R never addressed this argument. The F&R held that "Plaintiff's quiet title claim is therefore subject to dismissal," F&R 6, based on the tender rule and the irrelevance of chain-of-title defects, but did not address Plaintiff's separate statutory argument that the Corporate Assignment is void as to Plaintiff under ORS 93.740(2) because it was recorded after the Notice of Lis Pendens. This is a distinct legal theory from the Brandrup/Niday agency authority argument, and it is based on a different statute. The F&R's failure to address this argument is legal error.

If the Corporate Assignment is void as to Plaintiff under ORS 93.740(2), then PennyMac's claimed interest in the property—derived solely from the Corporate Assignment—may be void as to Plaintiff, which would directly affect the quiet title analysis. The F&R should have addressed this argument before concluding that the quiet title claim fails.

**H. Objection 8: The F&R Erred in Dismissing the Declaratory Judgment Claim as a "Remedy" Without Analyzing the Actual Controversy Requirement (F&R p. 16)**

The F&R dismissed Plaintiff's declaratory judgment claim (ECF 56 ¶¶ 74–76) by stating that "a declaratory judgment and an injunction are remedies, not separate claims." F&R 16 (citing Ajetunmobi v. Clarion Mortg. Cap., Inc., No. 8:12-cv-00568-DOC-JPR, 2012 WL 2945051, at *10 (C.D. Cal. July 17, 2012)). The F&R concluded that "because plaintiff's claims for quiet title and claims under RESPA and FCRA all fail as a matter of law, these various remedies are subject to dismissal as well." F&R 16.

This reasoning is circular and fails to analyze the declaratory judgment claim on its own terms. The Declaratory Judgment Act provides that "[i]n a case of actual controversy within its jurisdiction … any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). The statute expressly authorizes declaratory relief as an independent form of relief "whether or not further relief is or could be sought." Id.

The Supreme Court has held that the "actual controversy" requirement asks "whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." MedImmune, Inc. v. Genentech, Inc., 549 U.S. 118, 127 (2007) (quoting Maryland Casualty Co. v. Pacific Coal & Oil Co., 312 U.S. 270, 273 (1941)).

Plaintiff alleged in ECF 56 ¶ 75 that "[a]n actual controversy exists between Plaintiff and Defendants concerning the validity of the loan-chain documents, the identity of the lawful beneficiary, the authority of MERS to assign, the authority of PennyMac to service and enforce, and Ticor's authority to act as trustee." This is a specific allegation of an actual controversy between parties with adverse legal interests. A nonjudicial foreclosure sale is scheduled for October 13, 2026 (ECF 56 ¶ 70), which provides the "immediacy and reality" required by MedImmune. The F&R never analyzed whether this allegation satisfies the actual controversy requirement under 28 U.S.C. § 2201(a).

Moreover, the case the F&R cited—Ajetunmobi—actually supports Plaintiff's position. The Ajetunmobi court stated that "[i]n order to plead declaratory relief, a plaintiff must show a real and substantial controversy admitting of specific relief." Ajetunmobi, 2012 WL 2945051, at *10.

This is the actual controversy standard, not a categorical rule that declaratory judgment is never an independent claim. The F&R should have analyzed whether Plaintiff's allegations satisfy this standard, rather than dismissing the claim categorically as a "remedy."

If any of Plaintiff's substantive objections (Objections 1, 2, 3, 4, 5, 6, or 7) are sustained, the F&R's derivative dismissal of the declaratory judgment claim necessarily fails as well.

**I. Objection 9: The F&R Erred in Denying Leave to Amend Based on the "Unclear" Standard (Akhtar — F&R pp. 16–17)**

The F&R recommended dismissal without further leave to amend, stating that "it is also unclear how plaintiff could cure the defects in his Proposed First Amended Complaint." F&R 16–17. This standard directly conflicts with binding Ninth Circuit authority.

The Ninth Circuit requires that "a district court should not dismiss a pro se complaint without leave to amend unless 'it is absolutely clear that the deficiencies of the complaint could not be cured by amendment.'" Akhtar v. Mesa, 698 F.3d 1202, 1212 (9th Cir. 2012) (quoting Schucker v. Rockwood, 846 F.2d 1202, 1203–04 (9th Cir. 1988) (per curiam)) (emphasis added). The word "unclear" is the antithesis of "absolutely clear." If it is unclear whether the deficiencies can be cured, then it is not "absolutely clear" that they cannot be cured—and leave to amend must be granted. The F&R's statement that it is "unclear" how Plaintiff could cure the defects affirmatively establishes that the Akhtar standard for denying leave to amend has not been met.

Plaintiff has identified specific amendments that would cure the identified deficiencies:

1. **MERS authority:** Plaintiff can attach documentary evidence concerning MERS's Oregon corporate registration status, which further undermines Defendants' claimed authority, and allege with greater specificity the absence of any actual agency agreement between MERS and the lawful beneficiary, as required under Brandrup and Smith. See

Brandrup, 353 Or. at 705 (agency authority must be proven); Smith, 287 Or. App. at 52 (no evidence of agency). Plaintiff's core theory remains that MERS held no beneficial interest and could not assign the trust deed unless Defendants prove actual authority from the lawful beneficiary or successor—a question that cannot be resolved on a motion to dismiss.

2. **RESPA:** Plaintiff can plead the specific servicing-related requests with greater specificity, cite the exact regulatory provisions violated, and identify the specific deficiencies in PennyMac's response with page and date references.

3. **FCRA:** Plaintiff can identify with specificity the exact information PennyMac reported, the dates of the CRA disputes, the dates PennyMac received notice from the CRAs, and the specific respects in which the reporting was incomplete or materially misleading under the Gorman standard.

4. **§ 1024.35(i)(1):** Plaintiff can plead the exact dates of the adverse reporting and the 60-day period with precision, as the dates are already in the record (NOE received August 4, 2025; adverse reporting September 4, 2025).

5. **Lis pendens:** Plaintiff can attach the recorded Notice of Lis Pendens (Instrument No. 2025-006555, recorded November 7, 2025) and the Corporate Assignment (Instrument No. 2025-06917, recorded November 26, 2025) as exhibits.

The F&R's conclusion that dismissal without leave to amend is appropriate because it is "unclear" how Plaintiff could cure the defects is legal error under Akhtar.

**J. Objection 10: The F&R Erred in Denying Alternative Service for Defendant Loan Star (Derivative Error — F&R p. 17)**

The F&R denied Plaintiff's motion for leave to serve Defendant Loan Star Home Loans, LLC through the Oregon Secretary of State (ECF 50) on the sole ground that "the only claim for relief stated against Loan Star is one for quiet title, and as explained above, that claim fails because plaintiff cannot demonstrate that his claim to title for the property is superior to any of the defendants." F&R 17.

This recommendation is derivative of the F&R's erroneous quiet title dismissal. If the District Court sustains any of Plaintiff's objections to the quiet title dismissal (Objections 1, 6, or 7), the basis for denying alternative service necessarily fails. Plaintiff has attempted in good faith to serve Loan Star through traditional means and has demonstrated that Loan Star's business registration in Oregon lapsed in 2019 and that Loan Star was acquired by Commerce Home Mortgage, LLC, which later became Change Lending, LLC. ECF 56 ¶¶ 24–25; ECF 37 (Supplemental Notice regarding service). Service through the Oregon Secretary of State under ORS 63.121(2) is appropriate where a defendant's registered agent cannot be found or the defendant has ceased transacting business in Oregon. The F&R should have analyzed whether Plaintiff has demonstrated good cause for alternative service under Fed. R. Civ. P. 4(e)(1) and 4(h)(1), independent of the quiet title claim's survival.

## III. PRESERVATION OF ISSUES FOR APPELLATE REVIEW

Pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b)(2), Plaintiff has filed specific, written objections to each of the F&R's findings and recommendations identified above. Plaintiff respectfully submits these objections to preserve all issues raised herein for appellate review. Plaintiff objects to the F&R's legal conclusions and factual findings as to each objection

identified above and requests that the District Court conduct a de novo review of each objection. To the extent any objection is overruled, Plaintiff preserves the right to challenge that ruling on appeal, including but not limited to: (1) the F&R's application of the tender rule without first determining whether PennyMac is a valid mortgagee; (2) the F&R's failure to address 12 C.F.R. § 1024.35(i)(1); (3) the F&R's factual finding that Plaintiff "admitted default"; (4) the F&R's failure to analyze the materially misleading reporting theory under Gorman; (5) the F&R's dismissal of servicing-specific RESPA allegations; (6) the F&R's misapplication of Collier; (7) the F&R's failure to address ORS 93.740(2); (8) the F&R's categorical dismissal of the declaratory judgment claim; (9) the F&R's application of an "unclear" rather than "absolutely clear" standard for denying leave to amend; and (10) the F&R's derivative denial of alternative service.

## IV. REQUEST FOR ORAL ARGUMENT

Pursuant to Local Rule 7-1(e), Plaintiff respectfully requests oral argument on these objections. The objections involve complex questions of Oregon trust deed law, federal consumer protection statutes (RESPA and FCRA), and the standard for leave to amend as applied to pro se litigants. Oral argument would assist the Court in evaluating the specific contentions raised in each objection and would provide Plaintiff, as a pro se litigant, the opportunity to address any questions the Court may have regarding the factual basis for the claims or the proposed amendments. Plaintiff is available on any date and time convenient to the Court and is able to appear telephonically if preferred.

## V. CONCLUSION AND RELIEF REQUESTED

For the foregoing reasons, Plaintiff respectfully requests that the District Court:

1. Conduct a de novo review of the portions of the F&R to which these objections are directed, pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b)(3);
2. Reject the F&R's recommendation to grant Defendants' Motion to Dismiss (ECF 8) and sustain Plaintiff's objections as follows:
   a. Sustain Objection 1 (Brandrup/Niday — MERS authority);
   b. Sustain Objection 2 (12 C.F.R. § 1024.35(i)(1) — 60-day adverse reporting prohibition);
   c. Sustain Objection 3 (FCRA — erroneous "admitted default" finding);
   d. Sustain Objection 4 (FCRA — materially misleading reporting under Gorman);
   e. Sustain Objection 5 (RESPA — servicing-specific allegations);
   f. Sustain Objection 6 (Quiet Title — misapplication of Collier);
   g. Sustain Objection 7 (Lis Pendens — ORS 93.740(2));
   h. Sustain Objection 8 (Declaratory Judgment — actual controversy);
   i. Sustain Objection 9 (Akhtar — leave to amend);
   j. Sustain Objection 10 (Alternative Service — derivative error);
3. Grant Plaintiff leave to file a Second Amended Complaint that cures any identified pleading deficiencies, including by attaching documentary exhibits and pleading with greater specificity as described in Objection 9;
4. Deny Defendants' Motion to Dismiss (ECF 8) as to any claim for which leave to amend is granted;
5. Grant Plaintiff's Motion for Leave to Serve Loan Star Home Loans, LLC through the Oregon Secretary of State (ECF 50) to the extent the quiet title claim survives;
6. Grant oral argument on these objections; and

7. Award such other and further relief as the Court deems just and proper.

DATED: August 26, 2026
Respectfully submitted,
/s/ Ivan Richard Higgs
Ivan Richard Higgs
Plaintiff, Pro Se
54248 Kalberer Rd
Scappoose, Oregon 97056
(503) 543-2956
ivanhggs@yahoo.com

**CERTIFICATE OF SERVICE**

I certify that on August 26, 2026, I served a true and correct copy of Plaintiff's Objections to Magistrate Judge's Findings and Recommendations through the Court's CM/ECF system, which will transmit notice to all counsel of record.

/s/ Ivan Richard Higgs
Ivan Richard Higgs