# *PROPERTY SECURITIZATION ANALYSIS REPORT™*

***Prepared for:***

**IVAN HIGGS AND JENNIFER THOMSON**

***For Property Address***

***54248 KALBERER RD SCAPPOOSE, OR 97056***

***Prepared on:***

***June 01, 2025***

# SECTION 1: TRANSACTION DETAILS

## BORROWER & CO-BORROWER:

| BORROWER | CO-BORROWER |
|---|---|
| IVAN HIGGS | JENNIFER THOMSON |
| **CURRENT ADDRESS** | **SUBJECT ADDRESS** |
| 54248 KALBERER RD<br>SCAPPOOSE, OR 97056 | 54248 KALBERER RD<br>SCAPPOOSE, OR 97056 |

# SECTION 2: SECURITIZATION

## SECURITIZATION PARTICIPANTS:

| DEED OF TRUST | DATE | NOTE | DATE |
|---|---|---|---|
| LOANSTAR HOME LOANS, LLC, DBA LOANSTAR HOME LENDING<br><br>MIN:1012320-0000038766-8 | JUNE 26, 2017 | LOANSTAR HOME LOANS, LLC, DBA LOANSTAR HOME LENDING | JUNE 26, 2017 |
| | | FANNIE MAE REMIC TRUST 2017-59 | SETTLEMENT DATE:<br>JULY 31, 2017 |

The Deed of Trust and the Note have taken two distinctly different paths. The Deed of Trust was never transferred. The $414,000.00 note may have been however pooled, sold, transferred with other loans and Deed of Trusts and this pool of loans and Deed of Trusts in this security offering of $419,056,483. The webpage link can be found at:

**REGISTRANT**:

https://fanniemae.mbs-securities.com/fannie/deal/2017-059

**COPY OF BORROWER'S DEED OF TRUST (PAGE 1)**
**Shows Loan# 100039386 & MERS MIN # 1012320-0000038766-8**

4738170000911

**Title Order No.: 473817000911-RL**
**Escrow No.: 473817000911-RL**
**LOAN #: 100039386**

[Space Below This Line For Acknowledgment]

# DEED OF TRUST

**MIN 1012320-0000038766-8**
**MERS PHONE #: 1-888-679-6377**

DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

(A) **"Security Instrument"** means this document, which is dated **June 26, 2017,** together with all Riders to this document.

(B) "Borrower" is **IVAN HIGGS AND JENNIFER THOMSON.**

Borrower is the trustor under this Security Instrument.

(C) "Lender" is **LoanStar Home Loans, LLC, dba LoanStar Home Lending.**

Lender is **a Limited Liability Company,** organized and existing under the laws of **Texas.** Lender's address is **9020 SW Washington Square Road, Suite 350, Portland, OR 97223.**

(D) "Trustee" is **Ticor Title.**

(E) **"MERS"** is the Mortgage Electronic Registration Systems, Inc. Lender has appointed MERS as the nominee for Lender for this Loan, and attached a MERS Rider to this Security Instrument, to be executed by Borrower, which further describes the relationship between Lender and MERS, and which is incorporated into and amends and supplements this Security Instrument.

(F) **"Note"** means the promissory note signed by Borrower and dated **June 26, 2017.** The Note states that Borrower owes Lender **FOUR HUNDRED FOURTEEN THOUSAND AND NO/100*** * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * Dollars (U.S. **$414,000.00** ) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than **July 1, 2047.**

(G) **"Property"** means the property that is described below under the heading "Transfer of Rights in the Property."

(H) **"Loan"** means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

OREGON--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT Form 3038 1/01
Ellie Mae, Inc.

Page 1 of 10

Initials: IH JT

OREDEED 0315
OREDEED (CLS)
06/26/2017 10:08 AM PST

**COPY OF BORROWER'S NOTE (PAGE 1)**

**Shows MERS MIN # 1012320-0000038766-8 & Loan# 100039386, Address of Property, Name of Lender, Loan Amount, Monthly Payment beginning August 1, 2017.**

**LOAN #: 100039386**
**MIN: 1012320-0000038766-8**

## NOTE

| | | |
|---|---|---|
| **June 26, 2017**<br>**[Date]** | **Scappoose,**<br>**[City]** | **Oregon**<br>**[State]** |

**54248 Kalberer Rd, Scappoose, OR 97056**
**[Property Address]**

**1. BORROWER'S PROMISE TO PAY**

In return for a loan that I have received, I promise to pay U.S. **$414,000.00** (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is **LoanStar Home Loans, LLC, dba LoanStar Home Lending, a Limited Liability Company.**

I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

**2. INTEREST**

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of **4.125 %.**

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

**3. PAYMENTS**

**(A) Time and Place of Payments**
I will pay principal and interest by making a payment every month.

I will make my monthly payment on the **1st** day of each month beginning on **August 1, 2017.** I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on **July 1, 2047,** I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at **9020 SW Washington Square Road, Suite 350 Portland, OR 97223**

or at a different place if required by the Note Holder.

**(B) Amount of Monthly Payments**
My monthly payment will be in the amount of U.S. **$2,006.45.**

**4. BORROWER'S RIGHT TO PREPAY**

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

**5. LOAN CHARGES**

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any

Initials: ______

MULTISTATE FIXED RATE NOTE-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT Form 3200 1/01
Ellie Mae, Inc.
Page 1 of 3
F3200NOT 0107
F3200NOT (CLS)
06/26/2017 10:08 AM PST

**MERS SEARCH RESULT ON MIN# 1012320-0000038766-8 (as of June 1, 2025)**

**The loan is *registered* within the MERS database showing PennyMac Corp. as Servicer and Fannie Mae as Investor.**

MERS® ServicerID

1 Record Matched Your Search

MIN: **1012320-0000038766-8** Note Date: **06/26/2017** MIN Status: **Active**

Servicer: PennyMac Corp. Phone: **(866) 695-4122**

**Westlake Village, CA**

If you are a borrower on this loan, you can click here to enter additional information and display the Investor name.

MERS® ServicerID

## Investor

Select borrower type and enter borrower information to see Investor for MIN 1012320-0000038766-8.

(●) Investor for Individual Borrower

Your entries may be either upper or lower case.

Fields marked * are required.

Last Name*: HIGGS

SSN*: ___ - ___ - ___

☐ By checking this box, the borrower or borrower's authorized representative is attesting to the fact that he or she is in fact the borrower or borrower's authorized representative for the loan in question. Additionally, borrowers wishing to learn the identity of their loan's investor must confirm their identity by entering their last name or corporation name as well as their SSN or TIN. If this information does not match the information contained in the MERS® System for the borrower of the loan, the investor information will not be displayed. Borrowers should verify the results with their loan servicer. *

Submit

( ) Investor for Corporation/Non-Person Entity Borrower

Servicer: PennyMac Corp. Phone: **(866) 695-4122**

**Westlake Village, CA**

Investor: **Fannie Mae**

https://www.mers-servicerid.org/sis/common/results

**FANNIE MAE SEARCH RESULT ON BORROWERS ADDRESS (as of June 1, 2025)**

**The loan is *registered* within the Fannie Mae database showing Fannie Mae "Owns" the loan.**

# Fannie Mae Loan Lookup Results

## We found a match.

### Match results found for

**Name**
IVAN HIGGS

**Address**
54248 KALBERER ROAD

**City/State/Zip**
SCAPPOOSE, OR 97056

**Last 4 Digits of Social Security #**
****

**Mortgage Loan Closing Date**
2017-06-26

**Mortgage Servicer***
PennyMac Corp.

* The Company that collects your monthly payment. Check your mortgage statement to confirm the company and phone number for customer service.

### This means you may be eligible for certain Fannie Mae-only mortgage relief options.

Learn more by contacting a housing counselor or your mortgage servicer (the company listed on your mortgage statement). Contact your mortgage lender to see if you qualify for refinancing through RefiNow™ and if it's the best refinance option for you.

https://yourhome.fanniemae.com/calculators-tools/loan-lookup

**FANNIE MAE REMIC SEARCH RESULT ON BORROWER'S LOAN**

**Data taken from the REMIC Data Source**

GROUP | LOAN NUMBER | LENDER/ORIGINATOR | TERM | FIRST PAYMENT | SERVICER

1|28966736|N|100039386|WHOLESALE|LONESTAR HOME LOANS LLC|PENNY MAC CORP |4.125|4.125| 000414000.00|000414000.00|360|08/2017|360|07/2047|090|090|01|687| PURCHASE |PRIMARY||OR|97056|NO|2006.45||P||FANNIE MAE REMIC TRUST 2017-059

INTEREST RATE | LOAN AMOUNT | ZIP CODE | PAYMENT (P&I) | NAME OF TRUST | MATURITY DATE

TYPE OF RESIDENCE | CREDIT SCORE

**Fannie Mae REMIC Trust 2017-59**

**GROUP 1**

**CUSIP 3136AXMG7**

**PROPERTY REMIC SEARCH – LEVEL IV**

1|28966736|N|100039386|WHOLESALE|LONESTAR HOME LOANS LLC|PENNY MAC CORP |4.125|4.125| 000414000.00|000414000.00|360|08/2017|360|07/2047|090|090|01|687| PURCHASE |PRIMARY||OR|97056|NO|2006.45||P||FANNIE MAE REMIC TRUST 2017-059

| | | | | |
|---|---|---|---|---|
| **GROUP NUMBER**<br><br>**1**<br>**Matches REMIC Trust** | **LOAN NUMBER**<br><br>**100039386**<br>**Matches Loan Documents** | **ORIGINAL LENDER**<br>**LOANSTAR HOME LOANS, LLC, DBA LOANSTAR HOME LENDING**<br>**Matches Loan Documents** | **DEED OF TRUST SERVICER**<br>**PENNYMAC CORP.**<br>**Matches MERS result** | **INTEREST RATE**<br><br>**4.125%**<br>**Matches Note** |
| **LOAN AMOUNT**<br><br>**$414,000.00**<br>**Matches Loan Documents** | **TERM**<br><br>**360**<br>**Matches Loan Documents** | **DATE OF FIRST PAYMENT**<br>**08/2017**<br>**Matches Note** | **MATURITY DATE**<br>**07/2047**<br>**Matches REMIC Trust** | **CREDIT SCORE**<br><br>**687**<br>**Matches REMIC Trust** |
| **TYPE OF LOAN**<br><br>**PURCHASE/PRIMARY**<br>**Matches Loan Documents** | **CUSIP NUMBER**<br><br>**CUSIP 136AXMG7 (GROUP 1)**<br>**Matches REMIC Trust** | **PROPERTY ZIP CODE**<br>**97056**<br>**Matches Loan Documents** | **PAYMENT AMOUNT**<br><br>**2,006.45**<br>**Matches Note** | **NAME OF TRUST**<br>**FANNIE MAE REMIC TRUST 2017-59** |

# PARTIES/DEFENDANTS:

## $419,056,483

FannieMae®

**Guaranteed REMIC Pass-Through Certificates**
**Fannie Mae REMIC TRUST 2017-59**

## Wells Fargo Securities

July 25, 2017

**Settlement Date**
We expect to issue the certificates on July 31, 2017.

**Distribution Dates**
We will make payments on the certificates on the 25th day of each calendar month, or on the next business day if the 25th day is not a business day.

**Record Date**
On each distribution date, we will make each monthly payment on the certificates to holders of record on the last day of the preceding month.

### DESCRIPTION OF THE CERTIFICATES

The material under this heading describes the principal features of the Certificates. You will find additional information about the Certificates in the other sections of this prospectus supplement, as well as in the additional Disclosure Documents and the Trust Agreement. If we use a capitalized term in this prospectus supplement without defining it, you will find the definition of that term in the applicable Disclosure Document or in the Trust Agreement.

**General**

Structure. We will create the Fannie Mae REMIC Trust specified on the cover of this prospectus supplement (the "Trust") pursuant to a trust agreement dated as of May 1, 2010 and a supplement thereto dated as of July 1, 2017 (the "Issue Date"). We will issue the Guaranteed REMIC PassThrough Certificates (the "REMIC Certificates") pursuant to that trust agreement and supplement. We will issue the Combinable and Recombinable REMIC Certificates (the "RCR Certificates" and, together with the REMIC Certificates, the "Certificates") pursuant to a separate trust agreement dated as of May 1, 2010 and a supplement thereto dated as of the Issue Date (together with the trust agreement and supplement relating to the REMIC Certificates, the "Trust Agreement"). We will execute the Trust Agreement in our corporate capacity and as trustee (the "Trustee"). In general, the term "Classes" includes the Classes of REMIC Certificates and RCR Certificates.

The assets of the Trust will include six groups of Fannie Mae Guaranteed Mortgage Passthrough Certificates (the "Group 1 MBS," "Group 2 MBS," "Group 3 MBS," "Group 4 MBS," "Group 5 MBS" and "Group 6 MBS," and together, the "MBS").

Each MBS represents a beneficial ownership interest in a pool of first lien, one- to four-family ("single-family"), fixed-rate residential mortgage loans (the "Mortgage Loans") having the characteristics described in this prospectus supplement.

The Trust will include the "Lower Tier REMIC" and "Upper Tier REMIC" as "real estate mortgage investment conduits" (each, a "REMIC") under the Internal Revenue Code of 1986, as amended (the "Code").

**Fannie Mae Guaranty**. For a description of our guaranties of the Certificates and the MBS, see the applicable discussions appearing under the heading "Fannie Mae Guaranty" in the REMIC Prospectus and the MBS Prospectus. Our guaranties are not backed by the full faith and credit of the United States.

**Characteristics of Certificates** Except as specified below, we will issue the Certificates in book-entry form on the book-entry system of the U.S. Federal Reserve Banks. Entities whose names appear on the book-entry records of a Federal Reserve Bank as having had Certificates deposited in their accounts are "Holders" or "Certificateholders.".

**The MBS**

The MBS provide that principal and interest on the related Mortgage Loans are passed through monthly. The Mortgage Loans underlying the MBS are conventional, fixed-rate, fully-amortizing mortgage loans secured by first mortgages or deeds of trust on single-family residential properties. These Mortgage Loans have original maturities of up to 30 years.

In addition, the pools of mortgage loans backing the Group 2 MBS and Group 6 MBS have been designated as pools that include "jumbo-conforming" or "high balance" mortgage loans as described further under "The Mortgage Loans—Mortgage Loans with Original Principal Balances Exceeding our Traditional Conforming Loan Limits" in the MBS Prospectus dated June 1, 2016. For periodic updates to that description, please refer to the Pool Prefix Glossary available on our Web site at www.fanniemae.com. For additional information about the particular pools underlying the Group 2 MBS and Group 6 MBS, see the Final Data Statement for the Trust and the related prospectus supplement for each MBS. See also "Risk Factors—Risks Relating to Yield and Prepayment—"Jumbo-conforming" mortgage loans, which have original principal balances that exceed our traditional conforming loan limits, may prepay at different rates than conforming balance mortgage loans generally" in the MBS Prospectus dated June 1, 2016.

Furthermore, the Mortgage Loans backing the Group 4 MBS and Group 5 MBS are relocation Mortgage Loans made under agreements between lenders and employers that frequently relocate their employees. For additional information, see "Risk Factors—Risks Relating to Yield and Prepayment—Pools containing relocation mortgage loans may perform differently than do otherwise comparable pools containing non-relocation mortgage loans" and "The Mortgage Loans— Eligibility for Good Delivery into a TBA Trade—Special Feature Mortgage Loans—Relocation Loans" in the MBS Prospectus dated June 1, 2016.

**Distributions of Interest**

General. The Certificates will bear interest at the rates specified in this prospectus supplement. Interest to be paid on each Certificate (or added to principal, in the case of the Accrual Classes) on a Distribution Date will consist of one month's interest on the outstanding balance of that Certificate immediately prior to that Distribution Date

## PLAN OF DISTRIBUTION

We are obligated to deliver the Certificates to Wells Fargo Securities, LLC (the "Dealer") in exchange for the MBS. The Dealer proposes to offer the Certificates directly to the public from time to time in negotiated transactions at varying prices to be determined at the time of sale. The Dealer may effect these transactions to or through other dealers.

## LEGAL MATTERS

Katten Muchin Rosenman LLP will provide legal representation for Fannie Mae. K&L Gates LLP will provide legal representation for the Dealer.

https://fanniemae.mbs-securities.com/fannie/deal/2017-059

## How Fannie Mae Works

Fannie Mae buys mortgages from mortgage brokers, banks and credit unions, which transfers the lending risks from the lending institutions to the entity. Buying mortgages creates more liquidity for lenders, allowing them to underwrite more mortgages. For mortgage lenders to be eligible to sell their mortgages to Fannie Mae, they must meet the strict criteria and agree not to practice unethical lending. The agency packages similar types of loans into mortgage-backed securities and sells them to institutional and individual investors such as pension funds, endowment funds, hedge funds, and pension funds.

Even after selling the mortgage-backed securities to investors, Fannie Mae continues to own the underlying mortgages. It also pays the investors a share of the monthly mortgage payment on a pro-rata basis. Fannie Mae guarantees that it will make monthly payments on the mortgage-backed securities, inclusive of the principal and interest. It sets a specific percentage of mortgages to cater for low to middle-income families.

### How Fannie Mae Makes Money

One of the ways that Fannie Mae uses to make money is to borrow money at low rates and reinvest it into whole borrowings and mortgage-backed securities. It borrows from financial markets by selling bonds and purchasing whole loans from mortgage originators. Fannie Mae then securitizes the whole loans and creates mortgage-backed securities, which it sells to investors at a profit.

Fannie Mae also receives guaranty fees as compensation for assuming lending risks from financial institutions. The entity purchases mortgages from banks and credit unions as a way of writing off the debts from the books, and it assumes the lending risks associated with the mortgages. It then creates mortgage-backed securities from the underlying mortgages, which it sells to investors.

https://corporatefinanceinstitute.com/resources/knowledge/economics/fannie-mae/


Borrowers
IVAN HIGGS AND JENNIFER THOMSON
1
Lenders Originate MORTGAGE loans with
2
We create Fannie Mae MBS backed by pools of DEED OF TRUST loans and return the MBS to lenders. We assume credit risk, for which we receive guaranty fees.
$$
DEED OF TRUST
Lender LOANSTAR HOME LOANS, LLC, DBA LOANSTAR HOME LENDING
DEED OF TRUST
Fannie Mae MBS
Fannie Mae
DEED OF TRUST
Fannie Mae MBS
MBS Trust
$$
Fannie Mae MBS
Investors
3
Lenders sell Fannie Mae MBS to


MORTGAGE Broker “Unknown”
Lender
LOANSTAR HOME LOANS, LLC, DBA LOANSTAR HOME LENDING
Loan Proceeds
Loan
Borrowers
IVAN HIGGS AND JENNIFER THOMSON
Monthly Payments
Servicer
PENNYMAC CORP.
LOAN
CASH
Monthly Payments
Issuer/Trustee
FEDERAL NATIONAL MORTGAGE ASSOCIATION (Fannie Mae)
Custodian-Holds MORTGAGE Loan Documents on behalf of the Trustee
Underwriter
Rating Agency
Credit Enhancement Provider
Securities
Cash
Monthly Payment
Investors
Step 1 – The borrower obtains a loan from a Lender. This may be done with help from a MORTGAGE Broker. In many cases the Lender and the MORTGAGE Broker have no further interaction with the Borrower after the loan is made.
Step 2 – The Lender sells the loan to the Issuer and the Borrower begins making monthly payments to the Servicer.
Step 3 – The Issuer sells securities to the Investors. The Underwriter assists in the sale, the Rating Agency rates the securities, and the Credit Enhancement may be obtained.
Step 4 – The Servicer collects monthly payments from the Borrower and remits payments to the Issuer. The Servicer and the Trustee manage delinquent loans according to terms set forth in the Pooling & Servicing Agreement

# PROSPECTUS SUPPLEMENT

**Shows CUSIP# 3136AXMG7**

**Prospectus Supplement**
**(To REMIC Prospectus dated June 1, 2014)**

## $419,056,483

FannieMae

## Guaranteed REMIC Pass-Through Certificates
## Fannie Mae REMIC Trust 2017-59

### The Certificates

We, the Federal National Mortgage Association (Fannie Mae), will issue the classes of certificates listed in the chart on this cover.

### Payments to Certificateholders

We will make monthly payments on the certificates. You, the investor, will receive

- interest accrued on the balance of your certificate (except in the case of the accrual classes), and
- principal to the extent available for payment on your class.

We will pay principal at rates that may vary from time to time. We may not pay principal to certain classes for long periods of time.

### The Fannie Mae Guaranty

We will guarantee that required payments of principal and interest on the certificates are available for distribution to investors on time.

### The Trust and its Assets

The trust will own Fannie Mae MBS.

The mortgage loans underlying the Fannie Mae MBS are first lien, single-family, fixed-rate loans.

| Class | Group | Original Class Balance | Principal Type(1) | Interest Rate | Interest Type(1) | CUSIP Number | Final Distribution Date |
|---|---|---|---|---|---|---|---|
| PE ..... | 1 | $39,266,000 | PAC | 3.00% | FIX | 3136AXDZ5 | August 2044 |
| PG ..... | 1 | 10,330,000 | PAC | 3.00 | FIX | 3136AXLG8 | August 2047 |
| HD ..... | 1 | 2,472,000 | PAC | 3.00 | FIX | 3136AXMB8 | August 2047 |
| HA ..... | 1 | 8,200,000 | SUP/AD | 3.00 | FIX | 3136AXMC6 | July 2047 |
| HB ..... | 1 | 444,000 | SUP/AD | 3.00 | FIX | 3136AXMD4 | August 2047 |
| HZ ..... | 1 | 2,286 | SUP | 3.00 | FIX/Z | 3136AXME2 | August 2047 |
| FA ..... | 1 | 24,285,714 | PT | (2) | FLT | 3136AXMF9 | August 2047 |
| SA ..... | 1 | 24,285,714(3) | NTL | (2) | INV/IO | 3136AXMG7 | August 2047 |
| MA(4) ... | 2 | 83,640,000 | PAC/AD | 3.00 | FIX | 3136AXMH5 | November 2041 |
| MK(4) ... | 2 | 35,846,000 | PAC/AD | 3.00 | FIX | 3136AXMJ1 | August 2046 |
| MI(4) .... | 2 | 17,069,428(3) | NTL | 3.50 | FIX/IO | 3136AXMK8 | August 2046 |
| MU(4) ... | 2 | 9,688,000 | PAC/AD | 3.50 | FIX | 3136AXML6 | August 2047 |
| JZ ..... | 2 | 20,826,000 | SUP | 3.50 | FIX/Z | 3136AXMM4 | August 2047 |

*(Table continued on next page)*

If you own certificates of certain classes, you can exchange them for certificates of the corresponding RCR classes to be delivered at the time of exchange. The JA, MB, MC, DC, DA and KA Classes are the RCR classes. For a more detailed description of the RCR classes, see Schedule 1 attached to this prospectus supplement and "Description of the Certificates—Combination and Recombination—RCR Certificates" in the REMIC prospectus.

The dealer will offer the certificates from time to time in negotiated transactions at varying prices. We expect the settlement date to be July 31, 2017.

**Carefully consider the risk factors starting on page 14 of the REMIC prospectus. Unless you understand and are able to tolerate these risks, you should not invest in the certificates.**

You should read the REMIC prospectus as well as this prospectus supplement.

The certificates, together with interest thereon, are not guaranteed by the United States and do not constitute a debt or obligation of the United States or any agency or instrumentality thereof other than Fannie Mae.

The certificates are exempt from registration under the Securities Act of 1933 and are "exempted securities" under the Securities Exchange Act of 1934.

**Wells Fargo Securities**

July 25, 2017

### Settlement Date

We expect to issue the certificates on July 31, 2017.

### Distribution Dates

We will make payments on the certificates on the 25th day of each calendar month, or on the next business day if the 25th day is not a business day.

### Record Date

On each distribution date, we will make each monthly payment on the certificates to holders of record on the last day of the preceding month.

### Book-Entry and Physical Certificates

We will issue the classes of certificates in the following forms:

| Fed Book-Entry | Physical |
|---|---|
| All classes of certificates other than the R and RL Classes | R and RL Classes |

### Exchanging Certificates Through Combination and Recombination

If you own certificates of a class designated as "exchangeable" on the cover of this prospectus supplement, you will be able to exchange them for a proportionate interest in the related RCR certificates. Schedule 1 lists the available combinations of the certificates eligible for exchange and the related RCR certificates. You can exchange your certificates by notifying us and paying an exchange fee. We will deliver the RCR certificates upon such exchange.

We will apply principal and interest payments from exchanged REMIC certificates to the corresponding RCR certificates, on a pro rata basis, following any exchange.

### Interest Rates

During each interest accrual period, the fixed rate classes will bear interest at the applicable annual interest rates listed on the cover of this prospectus supplement or on Schedule 1.

During the initial interest accrual period, the floating rate and inverse floating rate classes will bear interest at the initial interest rates listed below. During each subsequent interest accrual period, the floating rate and inverse floating rate classes will bear interest based on the formulas indicated below, but always subject to the specified maximum and minimum interest rates:

| Class | Initial Interest Rate | Maximum Interest Rate | Minimum Interest Rate | Formula for Calculation of Interest Rate(1) |
|---|---|---|---|---|
| FA | 1.573% | 6.50% | 0.35% | LIBOR + 35 basis points |
| SA | 4.927% | 6.15% | 0.00% | 6.15% − LIBOR |

(1) We will establish LIBOR on the basis of the "ICE Method."

https://fanniemae.mbs-securities.com/fannie/deal/2017-059

# SECTION 3: FORECLOSURE

**Recorded Events on the Loan Including Foreclosure Issues and Securitization**

| Recorded Chain of Deed of Trust Possession | | Chain of Note Possession | |
|---|---|---|---|
| **Date** | **Original Deed of Trust** | **Date** | **Note Holder** |
| June 28, 2017<br>Instrument #<br>2017-006018<br>Official Records,<br>Columbia County<br>Oregon | IVAN HIGGS AND<br>JENNIFER THOMSON<br>(Borrowers)<br><br>LOANSTAR HOME LOANS, LLC,<br>DBA LOANSTAR HOME LENDING<br>(Lender)<br><br>**MIN# 1012320-0000038766-8** | June 26, 2017 | LOANSTAR HOME LOANS,<br>LLC, DBA LOANSTAR HOME<br>LENDING<br>Lender<br><br>Principal Amount:<br>$414,000.00 |
| Official Records,<br>Columbia County<br>Oregon | **NO ASSIGNMENT OF DEED OF TRUST FANNIE MAE are available for review.**<br>**Documents must be filed and recorded before a proper Foreclosure can proceed.** | Settlement Date:<br>July 31, 2017 | **FANNIE MAE REMIC TRUST 2017-59**<br>Issuing Entity<br><br>Principal Amount:<br>$414,000.00 |

***Note: The above analysis only covers bank actions related to primary active loan. Annotated DataTree search located in Exhibit I.***

# REPORT SUMMARY

**Deed of Trust:**

- On June 26, 2017, IVAN HIGGS AND JENNIFER THOMSON executed a negotiable promissory note and a security interest in the form of a DEED OF TRUST in the amount of $414,000.00. This document was filed as document number 2017-006018 in the Official Records of Columbia County, Oregon.

**Securitization (The Note):**

- The NOTE based on the research performed have been sold, transferred, assigned and securitized into the FANNIE MAE REMIC TRUST 2017-59 with a settlement date of July 31, 2017.

**No Assignment of Deed of Trust:**

- No Assignment of Deed of Trust was recorded in the Official Records, Columbia County, Oregon. Fannie Mae claims acquisition date on its web site, an Assignment to PennyMac Corp. instead of Fannie Mae conceals ownership of the loan from the homeowner. As such, this should be considered as a document of impropriety that clouds property title unless rescinded.

**Documentation Requirements for Transfer of Funds:**

- Documentation Requirements for Transfer of Funds. Fannie Mae records the authorization for automatic transfer of funds:
- The form must be signed by an authorized individual, such as someone listed on a Certificate of Authority, Incumbency, and Specimen Signatures (Form 360).

FannieMae

**Servicing Guide**
**Published March 9, 2016**

## E-3.2-09: Conducting Foreclosure Proceedings (11/12/2014)

### Conducting Foreclosure Proceedings When Fannie Mae Is the Mortgagee of Record

The servicer must conduct the foreclosure in Fannie Mae's name when Fannie Mae is the mortgagee of record for all mortgage loans except for regular servicing option MBS mortgage loans that are secured by properties located in Utah or Mississippi. For these mortgage loans, the servicer must request that Fannie Mae reassign the mortgage loan to it so the foreclosure can be completed in the servicer's name.

The servicer must execute any required substitutions of trustees when Fannie Mae has granted the servicer its LPOA to do so on Fannie Mae's behalf. However, if state law or customary practice prohibits an attorney-in-fact from executing substitutions of trustees, the servicer must submit the substitution of trustee documents to Fannie Mae for execution before the foreclosure proceedings begin.

### Conducting Foreclosure Proceedings When the Servicer Is the Mortgagee of Record

When the servicer is the mortgagee of record for a mortgage loan, the jurisdiction in which the security property is located will affect how the foreclosure proceedings are conducted or initiated.

In most states, the law firm must initiate the proceedings in the servicer's name when the servicer is the mortgagee of record or in the participating lender's name when the servicer is not the mortgagee of record for a participation pool mortgage loan. The law firm must subsequently have title vested in Fannie Mae's name in a manner that will not result in the imposition of a transfer tax.

The servicer and the law firm must determine the most appropriate method to use in each jurisdiction.

In any state or jurisdiction in which the foreclosure proceedings must be conducted in Fannie Mae's name to prevent the imposition of a transfer tax (such as Rhode Island; New Hampshire; Maine; or Orleans Parish, Louisiana), an assignment of the mortgage or Mortgage to Fannie Mae must be prepared and recorded in a timely manner to avoid any delays in the initiation of the foreclosure proceedings. If the servicer believes that a foreclosure proceeding must be conducted in Fannie Mae's name in any other jurisdiction to prevent the imposition of a transfer tax, the servicer must contact Fannie Mae's Legal department (see F-4-03, List of Contacts) for permission to do so.

When Fannie Mae's DDC or third-party document custodian has custody of an original unrecorded assignment of the mortgage to Fannie Mae, the servicer may either

- request return of that document so it can be recorded, or
- prepare a new assignment if doing so will expedite the process.

Once the assignment to Fannie Mae has been recorded, the foreclosure proceedings must be conducted in Fannie Mae's name.

https://www.fanniemae.com/content/guide/servicing/e/3.2/09.html

**C1-2-03, Ownership of Mortgage Loans Prior to Purchase or Securitization and Third-Party Security Interests (04/06/2022)**

**Mortgage Loan Certification Overview**

The Fannie Mae certification processes for whole loan and MBS deliveries are designed to assure Fannie Mae and the marketplace that all mortgage loans purchased or securitized by Fannie Mae conform to Fannie Mae's requirements and are not subject to any liens or claims of any third parties. Therefore, it is in Fannie Mae's interest that liens and claims in and to such notes are properly resolved as part of the loan pooling, certification, and acquisition processes.

It is critical to Fannie Mae's purchase or securitization of mortgage loans that Fannie Mae receives good delivery of loans that conform to Fannie Mae's requirements and, if applicable, meet the characteristics attributed to them in MBS disclosures. Therefore, Fannie Mae requires that mortgage sellers deliver mortgage documents to document custodians for review and certification prior to Fannie Mae's purchase or securitization of the loans. Document custodians must review all documents to ensure that all of the required documentation has been received and conform to Fannie Mae's requirements. Fannie Mae will not purchase whole loans or issue MBS until after it has received the document custodian's certification. The certification will state that the custodian has examined and maintains physical custody and control of the required documents for the mortgages.

**Control of Mortgage Notes During the Loan Certification Processes**

<u>Fannie Mae recognizes that possession of notes is an important element of a note owner's or secured lender's protection of its rights</u>. However, the nature of the whole loan purchase and MBS pooling and securitization processes requires that Fannie Mae, through its document custodian, obtains control of the notes as part of the certification review process and maintains control through the completion of the purchase or securitization process. Fannie Mae cannot purchase whole loans or permit pools to close and securities to be issued without being assured of continued control of the underlying notes.

Fannie Mae does not assert that it obtains ownership or title to the notes during the certification processes until such time as the purchase proceeds (cash or securities) for the certified loans are remitted pursuant to the terms of the purchase or securitization transaction. Any modifications or revisions to the terms of the notes or further physical movement of the notes during these processes are restricted; the certified documents must be "locked down" under the document custodian's control prior to Fannie Mae's remittance of the purchase proceeds. Fannie Mae recognizes that the legal rights of the mortgage seller delivering the notes (or, as applicable, of its warehouse lender) are unaffected by the certification processes until Fannie Mae has remitted purchase proceeds.

**Ownership Interest and Title to Mortgage Notes**

Effective upon the remittance of the purchase proceeds, Fannie Mae and/or its MBS trusts obtains and holds ownership and title to the notes and the notes will then be held by the document custodian on behalf of Fannie Mae. If the transaction fails to close as contemplated by the contract between Fannie Mae and the mortgage seller and purchase proceeds are not wired, Fannie Mae claims no ownership interest in the notes and requires that the document custodian return the notes to the mortgage seller or its warehouse lender, as applicable.

https://selling-guide.fanniemae.com/sel/c1-2-03/ownership-mortgage-loans-prior-purchase-or-securitization-and-third-party-security-interests#:~:text=However%2C%20the%20nature%20of%20the,Mae%20has%20remitted%20purchase%20proceeds.

## C2-2-06, Authorization to Transfer Funds (05/01/2024)

### Introduction

This topic explains how a lender authorizes Fannie Mae to transfer funds for whole loan deliveries into its designated accounts, including:

- Documentation Requirements
- Lender's Agreement Related to the Execution of the Authorization to Transfer Funds
- Authorization for Repetitive Transfers
- Changes to or Deletion of the Authority to Transfer Funds

### Documentation Requirements

Fannie Mae will not transfer purchase proceeds for whole loan deliveries to a lender's designated bank account until the lender has provided Fannie Mae with an executed Certificate of Authority, Incumbency, and Specimen Signatures (Form 360) that designates the person or persons authorized to establish, change, or delete wire transfer instructions on the lender's behalf.

https://selling-guide.fanniemae.com/sel/c2-2-06/authorization-transfer-funds

### Procedures Related to the Secure Transfer of Funds

Each lender is responsible for establishing and maintaining controls and procedures that ensure the confidentiality of all transfer instructions and payee codes and the integrity of its communications with Fannie Mae.

The lender agrees to be bound by any transfer instructions issued in its name and sent to Fannie Mae, whether or not they were authorized.

A lender is solely liable for transfers that are initiated (either directly or indirectly) as the result of a breach in its security arrangements or as the result of its failure to give Fannie Mae timely notice of an error, omission, or irregularity in establishing payee arrangements. The lender is fully responsible for notifying the Fannie Mae Asset Acquisitions by telephone and submitting written confirmation of the call to Fannie Mae within 24 hours of the breach. Fannie Mae will do everything possible to suspend operations until a correction is sent, including removing all payee codes on record for the lender and issuing new codes based on instructions the lender provides in accordance with Fannie Mae standard procedures. The lender is advised that these procedures will not be used to detect an error in the transmission or content of a transfer of funds to the lender's designated bank or an error in processing a request to set up a payee code for use in transferring funds.

**Fannie Mae doesn't directly "own" a property**, but rather holds ownership of the mortgage loan secured by the property, demonstrating their interest through the recorded deed of trust or mortgage document which is filed with the county recorder when a loan is purchased by Fannie Mae; essentially, they have a legal claim on the property if the borrower defaults on their loan and the property goes into foreclosure.

Key points about Fannie Mae's ownership indication:

- **Mortgage document:**

The primary way Fannie Mae shows ownership is through the mortgage document, which is recorded with the county when a loan is purchased by them.

- **Title report:**

Lenders must provide a title report to Fannie Mae to verify the property owner and any potential title issues before they purchase the loan.

- **No direct title ownership:**

While Fannie Mae has a legal claim on the property through the mortgage, the actual title (ownership) remains with the borrower until a foreclosure occurs.

## BLOOMBERG SEARCH SECTION

On **May 31, 2025**, a researched of the Bloomberg online Database was performed at the request of **IVAN HIGGS AND JENNIFER THOMSON** whose property address is noted herein above. The Loan Level Data search conducted using Bloomberg terminal to search for matching characteristics was based on Original Amount: **$414,000.00**; Origination Date: **June 26, 2017**; Location of Property: **Oregon**; Property Type: **Single Family Residence;** Occupancy: **Owner**; Zip Code **97056.** Examiner did, however, located a REMIC TRUST that matches the characteristics for securitizing this loan, namely the FANNIE MAE REMIC TRUST 2017-59 issued July 31, 2017.

**FANNIE MAE claims ownership of the loan on its web and must be given the foreclosure in its name. The loan is registered on the MERS web site showing Fannie Mae as the investor.**

**The exact identification of the Fannie Mae securitized trust or Fannie Mae corporate portfolio may be obtained through a Qualified Written Request; a Request for Information under Regulation X Real Estate Settlement Procedures Act or under Regulation Z Truth in Lending Act; a Freedom of Information Act request; voluntary Fannie Mae disclosure; or discovery through litigation.**

**Screen shots of this trust from the Bloomberg System follow:**

## DESCRIPTION OF SECURITY FROM BLOOMBERG

**Bond Summary**

FNR 2017-59 S 11-13⅞ / 11-25 Disc Mrg -245.9/ -301.1 BVA

As of 30 MPrepay 118 FWAL 7. Collateral 100.0% FNC BAM TOAS 43

FNR 2017-59 SA Mtge | Send | Page 1/4 Security Description

100% FNCL 4.0 S 4.410(247)101 CUSIP 3136AXMG7 Pool Level 95) Buy 96) Sell

1) Bond Summary | 2) Group Summary | 3) Comments | 4) Deal Summary

| | | | | | |
|---|---|---|---|---|---|
| Issuer | Fannie Mae | 6) Pro \| DSCO » | 7) Docs \| DSCO » | 16) Servicer | LESS THAN 1% (28.6%) |
| Series | 17-59 Class SA Mty 08/25/2047 | 14) ISIN | US3136AXMG73 | 17) Lead Mgr | Wells Fargo Securities LLC |
| 10) Class Description | IO, INV, NTL | FIGI | BBG00H0LZJ41 | 18) Trustee | Fannie Mae |

| Current | | Original | | Payment Details | |
|---|---|---|---|---|---|
| Bal USD | 5,833,195 | Bal USD | 24,285,714 | Next Pay | 06/25/2025 |
| Fct (May 25) | 0.240190400 | WAL | 7.29Yrs@ 190 PSA | Rcd Date | 05/31/2025 |
| Cpn (May 25) | 1.71355% | 1st Coupon | 4.92700% | Pay Day | 25th |
| Class/Grp Pct | 28.57% | Class/Grp Pct | 28.57% | Frequency | Monthly |
| Beg Accrue | 05/25/2025 | 1st Pay | 08/25/2017 | Pay Delay | 0 Days |
| End Accrue | 06/24/2025 | 1st Settle | 07/31/2017 | Day Count | 30/360 |
| | | Dated Date | 07/25/2017 | Calendar | US |
| | | Priced | 07/01/2017 | Call | Non-Callable |
| | | 1st Reset | 08/25/2017 | | |

| | CPR | PSA |
|---|---|---|
| 1m | 4.68 | 78 |
| 3m | 2.13 | 36 |
| 6m | 2.91 | 48 |
| 12m | 5.27 | 88 |
| Life | 14.75 | 270 |

| Additional Information | |
|---|---|
| TRACE | |
| Min Size | 100,000 |
| Increment | 1 |

| | Jun25 | May | Apr | Mar | Feb | Jan | Dec | Nov | Oct | Sep | Aug | Jul24 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| PSA | | 78 | 17 | 11 | 54 | 105 | 24 | 155 | 59 | 115 | 107 | 96 |
| CPR | | 4.68 | 1.02 | 0.66 | 3.26 | 6.30 | 1.42 | 9.30 | 3.52 | 6.87 | 6.40 | 5.79 |
| Fctr | | 0.24 | 0.24 | 0.24 | 0.24 | 0.24 | 0.25 | 0.25 | 0.25 | 0.25 | 0.25 | 0.26 |
| Cpn | 1.71 | 1.68 | 1.70 | 1.68 | 1.68 | 1.47 | 1.30 | 1.18 | 0.76 | 0.69 | 0.69 | 0.70 |
| VPR | | 4.68 | 1.02 | 0.66 | 3.26 | 6.30 | 1.42 | 9.30 | 3.52 | 6.87 | 6.40 | 3.26 |
| Buyout | | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 2.60 |

13) Cpn Details | FCG »

-1x(SOFR30A+11.448BP)+615BP

Cap 6.1500% @ -0.11%

Floor 0.0000% @ 6.04%

Monthly Reset

Reset 06/25 Pay 06/25

Australia 61 2 9777 8600 Brazil 5511 2395 9000 Europe 44 20 7330 7500 Germany 49 69 9204 1210 Hong Kong 852 2977 6000
Japan 81 3 4565 8900 Singapore 65 6212 1000 U.S. 1 212 318 2000 Copyright 2025 Bloomberg Finance L.P.
SN 455411 EDT GMT-4:00 ba1427-172 31-May-2025 09:34:03

## SECURITY DESCRIPTION

**Group Summary**

FNR 2017-59 SA Mtge | Send | Page 2/4 Security Description

100% FNCL 4.0 S 4.410(247)101 CUSIP 3136AXMG7 Pool Level 95) Buy 96) Sell

1) Bond Summary | 2) Group Summary | 3) Comments | 4) Deal Summary

Issuer Fannie Mae | 6) Pro | DSCO » | 7) Docs | DSCO » | 16) Servicer LESS THAN 1% (28.6%)

Series 17-59 | 15) Group Group 1: 30YR/4.0/FNMA/G1 | 17) Lead Mgr Wells Fargo Securities LLC

10) Collateral Summary FNCL 4 S | Cntry/Reg US | 18) Trustee Fannie Mae

| Current 05/2025 | | Original | |
|---|---|---|---|
| Bal USD | 20,416,184 | Bal USD | 85,000,000 |
| Net WAC | 4.0000 | Net WAC | 4.0000 |
| WAC | 4.410 | WAC | 4.414 |
| WAM | 20:7 247Mo | WAM | 29:3 351Mo |
| WALA | 8:5 101Mo | WALA | 0:7 7Mo |
| PAC % | 71.43 | PAC % | 61.26 |
| SUP % | 0 | SUP % | 10.17 |

11) History | SEV »

| | FNR 17-59 | | FNCL 4 S | |
|---|---|---|---|---|
| | CPR | PSA | CPR | PSA |
| 1m | 4.68 | 78 | 7.21 | 120 |
| 3m | 2.13 | 36 | 6.68 | 111 |
| 6m | 2.91 | 48 | 6.62 | 110 |
| 12m | 5.27 | 88 | 6.99 | 116 |
| Life | 14.75 | 270 | 12.83 | 283 |

| | May25 | Apr | Mar | Feb | Jan | Dec | Nov | Oct | Sep | Aug | Jul | Jun24 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| WAC | 4.4 | 4.4 | 4.4 | 4.4 | 4.4 | 4.4 | 4.4 | 4.4 | 4.4 | 4.4 | 4.4 | 4.4 |
| WAM | 247 | 248 | 249 | 250 | 251 | 252 | 253 | 254 | 255 | 256 | 257 | 258 |
| CPR | 4.68 | 1.02 | 0.66 | 3.26 | 6.30 | 1.42 | 9.30 | 3.52 | 6.87 | 6.40 | 5.79 | 13.27 |
| PSA | 78 | 17 | 11 | 54 | 105 | 24 | 155 | 59 | 115 | 107 | 96 | 221 |
| VPR | 4.68 | 1.02 | 0.66 | 3.26 | 6.30 | 1.42 | 9.30 | 3.52 | 6.87 | 6.40 | 3.26 | 13.27 |
| Buyout | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 2.60 | 0.00 |

Buyout | SEV »

| | VPR | Buyout |
|---|---|---|
| 1m | 4.68 | 0.00 |
| 3m | 2.13 | 0.00 |
| 6m | 2.91 | 0.00 |
| 12m | 5.05 | 0.22 |
| Life | 13.41 | 0.75 |

Australia 61 2 9777 8600 Brazil 5511 2395 9000 Europe 44 20 7330 7500 Germany 49 69 9204 1210 Hong Kong 852 2977 6000
Japan 81 3 4565 8900 Singapore 65 6212 1000 U.S. 1 212 318 2000 Copyright 2025 Bloomberg Finance L.P.
SN 455411 EDT GMT-4:00 ba1427-172 31-May-2025 09:34:14

**SECURITY DESCRIPTION**
**(No Comments Available)**



## SECURITY DESCRIPTION

**Deal Summary**

FNR 2017-59 S 11-13⅞ /11-25 Disc Mrg -245.9/-301.1 BVA

As of 30 M Prepay 118 FWAL 7. Collateral 100.0% FNC BAM TOAS 43

FNR 2017-59 SA Mtge Send Page 4/4 Security Description

100% FNCL 4.0 S 4.410(247)101 CUSIP 3136AXMG7 Pool Level 95) Buy 96) Sell

1) Bond Summary 2) Group Summary 3) Comments 4) Deal Summary

Classic Speeds

| | Description | 1M CPR | 1M PSA | Bonds | Bonds Bal(MM) | Group Bal(MM) |
|---|---|---|---|---|---|---|
| | All Collateral | | | R, RL | | 51.25 |
| 1) | Group 1: 30YR/4.0/FNMA/G1 | 4.68 | 77.93 | FA, HA, HB, HD, H... | 20.42 | 20.42 |
| 2) | Group 2: 30YR/3.5/FNMA/G2 | 12.25 | 204.16 | JA, JZ, MA, MB, M... | 9.29 | 9.29 |
| 3) | Group 3: 30YR/3.5/FNMA/G3 | 10.97 | 182.83 | CA, CB, CI, CW, L... | 6.03 | 6.03 |
| 4) | Group 4: 30YR/3.5/FNMA/G4 | 19.01 | 316.87 | DA, DB, DC, DV, D... | 6.43 | 6.43 |
| 5) | Group 5: 30YR/3.0/FNMA/G5 | 0.94 | 15.61 | KA, KG, KH, KI, K... | 6.70 | 6.70 |
| 6) | Group 6: 30YR/4.0/FNMA/G6 | 0.09 | 1.47 | NG, NI, NZ | 2.40 | 2.40 |

Australia 61 2 9777 8600 Brazil 5511 2395 9000 Europe 44 20 7330 7500 Germany 49 69 9204 1210 Hong Kong 852 2977 6000
Japan 81 3 4565 8900 Singapore 65 6212 1000 U.S. 1 212 318 2000 Copyright 2025 Bloomberg Finance L.P.
SN 455411 EDT GMT-4:00 ba1427-172 31-May-2025 09:34:47

**STRUCTURED FINANCE NOTES SCREEN**

**Lists of the primary related parties to the transaction**



**RATINGS HISTORY**
**(No Data Available)**



**<u>YIELD TABLE</u>**
**(Structure Paydown)**



**VIEW ALL LOAN CLASSES SCREEN**

This screen shows the splitting of the investment classes (first 26 out of 43 classes shown)

**Fidelity Investment Search Result for CUSIP# 3136AXMG7 (is shown below)**

SABR 2007-BR3 Paid Off Disc Mrg --/-- --

As of -- Prepay -- WAL -- Collateral 100.0% RESB

FNR 2017-59 Mtge | Export | Settings | View All Classes

FNR 2017-59 FANNIE MAE — 43 Classes

Template Agency — Legend

| | SSA | CF | Class | Orig(000) | Cpn | OWAL | Factor | Cusip | Tranche Description | Group |
|---|---|---|---|---|---|---|---|---|---|---|
| 1) | | Y | PE | 39,266 | 3.000 | 4.998 | 0.1083 | 3136AXDZ5 | PAC | 30YR/4.0/FNMA/G1 |
| 2) | | Y | PG | 10,330 | 3.000 | 15.986 | 1.0000 | 3136AXLG8 | PAC | 30YR/4.0/FNMA/G1 |
| 3) | | | HD | 2,472 | 3.000 | 2.978 | 0.0000 | 3136AXMB8 | PAC | 30YR/4.0/FNMA/G1 |
| 4) | | | HA | 8,200 | 3.000 | 7.574 | 0.0000 | 3136AXMC6 | SUP, AD | 30YR/4.0/FNMA/G1 |
| 5) | | | HB | 444 | 3.000 | 26.372 | 0.0000 | 3136AXMD4 | SUP, AD | 30YR/4.0/FNMA/G1 |
| 6) | | | HZ | 2 | 3.000 | 29.317 | 0.0000 | 3136AXME2 | Z, SUP | 30YR/4.0/FNMA/G1 |
| 7) | | Y | FA | 24,286 | 4.786 | 7.291 | 0.2402 | 3136AXMF9 | FLT, PT | 30YR/4.0/FNMA/G1 |
| 8) | | Y | SA | 24,286 | 1.714 | 7.291 | 0.2402 | 3136AXMG7 | IO, INV, NTL | 30YR/4.0/FNMA/G1 |
| 9) | | | MA | 83,640 | 3.000 | 4.147 | 0.0000 | 3136AXMH5 | AD, PAC | 30YR/3.5/FNMA/G2 |
| 10) | | | MK | 35,846 | 3.000 | 11.446 | 0.0000 | 3136AXMJ1 | AD, PAC | 30YR/3.5/FNMA/G2 |
| 11) | | | MI | 17,069 | 3.500 | 6.337 | 0.0000 | 3136AXMK8 | IO, NTL | 30YR/3.5/FNMA/G2 |
| 12) | | Y | MU | 9,688 | 3.500 | 20.692 | 0.9589 | 3136AXML6 | AD, PAC | 30YR/3.5/FNMA/G2 |
| 13) | | | JZ | 20,826 | 3.500 | 11.656 | 0.0000 | 3136AXMM4 | Z, SUP | 30YR/3.5/FNMA/G2 |
| 14) | | | CA | 20,765 | 3.500 | 3.992 | 0.0000 | 3136AXMN2 | SCH | 30YR/3.5/FNMA/G3 |
| 15) | | | CB | 5,000 | 3.000 | 3.992 | 0.0000 | 3136AXMP7 | SCH | 30YR/3.5/FNMA/G3 |
| 16) | | | CI | 714 | 3.500 | 3.992 | 0.0000 | 3136AXMQ5 | IO, NTL | 30YR/3.5/FNMA/G3 |
| 17) | | Y | CW | 16,450 | 3.500 | 14.956 | 0.3663 | 3136AXMR3 | SCH | 30YR/3.5/FNMA/G3 |
| 18) | | | LD | 1,644 | 3.500 | 2.507 | 0.0000 | 3136AXMS1 | SCH | 30YR/3.5/FNMA/G3 |
| 19) | | | LA | 1,777 | 3.500 | 13.724 | 0.0000 | 3136AXMT9 | SUP, AD | 30YR/3.5/FNMA/G3 |
| 20) | | | LE | 1,000 | 3.000 | 13.724 | 0.0000 | 3136AXMU6 | SUP, AD | 30YR/3.5/FNMA/G3 |
| 21) | | | LG | 1,000 | 4.000 | 13.724 | 0.0000 | 3136AXMV4 | SUP, AD | 30YR/3.5/FNMA/G3 |
| 22) | | | LZ | 3 | 3.500 | 27.486 | 0.0000 | 3136AXMW2 | Z, SUP | 30YR/3.5/FNMA/G3 |
| 23) | | | DB | 39,863 | 2.750 | 4.844 | 0.0000 | 3136AXMX0 | SEQ | 30YR/3.5/FNMA/G4 |
| 24) | | | ID | 8,542 | 3.500 | 4.844 | 0.0000 | 3136AXMY8 | IO, NTL | 30YR/3.5/FNMA/G4 |
| 25) | | | DV | 2,600 | 3.500 | 5.988 | 0.0000 | 3136AXMZ5 | AD, SEQ | 30YR/3.5/FNMA/G4 |
| 26) | | | DW | 2,989 | 3.500 | 11.827 | 0.0000 | 3136AXNA9 | AD, SEQ | 30YR/3.5/FNMA/G4 |

Australia 61 2 9777 8600 Brazil 5511 2395 9000 Europe 44 20 7330 7500 Germany 49 69 9204 1210 Hong Kong 852 2977 6000
Japan 81 3 4565 8900 Singapore 65 6212 1000 U.S. 1 212 318 2000 Copyright 2025 Bloomberg Finance L.P.
SN 455411 EDT GMT-4:00 ba1427-173 31-May-2025 09:32:38

**FIDELITY INVESTMENT SEARCH RESULT FOR CUSIP# 3136AXMG7**
**Shows it's an Investment Bond actively being Traded (as of 6/1/2025)**

Fidelity CUSTOMER SERVICE | PROFILE | OPEN AN ACCOUNT | FIDELITY ASSISTANT | LOG OUT How can we help?

Accounts & Trade | Planning & Advice | News & Research | Products | Why Fidelity

Trade AS OF 06/02/2025 07:28:44 AM ET

Account
Select an Account...

Cusip
3136AXMG7

FEDL NATL MTG ASSN SER 2017-059 CL 9-SA1.71355% 08/25/2047

| Ask Price | Ask Yield | Ask Quantity(min) | Third Party Price |
|---|---|---|---|
| -- | -- | --(--) | 10.898 |

## FEDL NATL MTG ASSN SER 2017-059 CL 9-SA
1.71355% 08/25/2047

Overview | Price & Performance

### Details

| | |
|---|---|
| CUSIP | 3136AXMG7 |
| Pay Frequency | MONTHLY |
| Coupon | 1.713 |
| Maturity Date | 08/25/2047 |
| Moody's Rating | -- |
| S&P Rating | -- |
| Issuer Events | NO |
| Survivor Option | N/A |
| Bond Type | Agency |
| Interest Accrual Date | 07/25/2017 |

### Redemptive Features

| | |
|---|---|
| Call Protection | YES |
| Continuously Callable | -- |
| Called Bonds | NO |

### Security Features

| | |
|---|---|
| Federally Taxable | YES |

### Issuer Information

| | |
|---|---|
| Issue Date | 07/25/2017 |
| Dated Date | 07/25/2017 |
| First Coupon Date | 08/25/2017 |
| Next Coupon | 06/25/2025 |
| Last Coupon | 11/25/2046 |
| Workout Date | 08/25/2047 |
| Original Issue Amount | $24,285,714.00 |
| Issue Price | -- |

### Coupon Information

| | |
|---|---|
| Coupon Type | INVERSE FLOATER |
| Current Rate Effective Date | 05/25/2025 |
| Reset Frequency | TERM MODE |
| Benchmark Reference | SOFR30AV |
| Benchmark Formula | -1.0 X SOFR30AVG + 626.44800 B |
| Next Reset Date | 05/25/2025 |
| Next Reset Rate | 1.71355 |
| Minimum Rate | -- |

https://fixedincome.fidelity.com/ftgw/fi/FIBondDetails?cusip=3136AXMG7

**Examiners' Opinion: Monthly mortgage payments are Invested in this Bond.**

## COLLATERAL COMPOSITION

**Pool Level (Geographics)**




| Geo | Loan Count Deal | Bal(USD) | Bal(%) |
|---|---|---|---|
| 125) NE | 3 | 115,652.19 | 0.57 |
| 126) NH | 4 | 178,470.21 | 0.87 |
| 127) NJ | 9 | 420,617.00 | 2.06 |
| 128) NM | 4 | 183,123.71 | 0.90 |
| 129) NV | 14 | 617,885.04 | 3.03 |
| 130) NY | 4 | 196,853.12 | 0.96 |
| 131) OH | 10 | 380,323.04 | 1.86 |
| 132) OK | 4 | 170,790.39 | 0.84 |
| 133) OR | 7 | 334,423.69 | 1.64 |
| 134) PA | 14 | 638,711.73 | 3.13 |
| 135) SC | 10 | 457,917.11 | 2.24 |
| 136) TN | 7 | 324,045.42 | 1.59 |
| 137) TX | 65 | 2,864,222.16 | 14.03 |
| 138) UT | 6 | 245,910.54 | 1.20 |
| 139) VA | 16 | 703,088.83 | 3.44 |
| 140) VT | 2 | 95,180.82 | 0.47 |
| 141) WA | 10 | 452,992.04 | 2.22 |
| 142) WI | 10 | 468,110.18 | 2.29 |
| 143) WV | 2 | 77,443.65 | 0.38 |

Australia 61 2 9777 8600 Brazil 5511 2395 9000 Europe 44 20 7330 7500 Germany 49 69 9204 1210 Hong Kong 852 2977 6000
Japan 81 3 4565 8900 Singapore 65 6212 1000 U.S. 1 212 318 2000 Copyright 2025 Bloomberg Finance L.P.
SN 455411 EDT GMT-4:00 ba1427-173 31-May-2025 09:36:00

ξ For traditional lending prior to Securitization, the original Deed of Trust recording was usually the only recorded document in the Chain of Title. That is because banks kept the loans, and did not sell the loan, hence, only the original recording being present in the banks name.

The advent of Securitization, especially through "Private Investors" and not Fannie Mae or Freddie Mac, involved an entirely new process in mortgage lending. With Securitization, the Notes and Mortgages were sold once, twice, three times or more. Using the traditional model would involve recording new Assignments of the Mortgage and Note as each transfer of the Note or Mortgage occurred. Obviously, this required time and money for each recording.

(The selling or transferring of the Note is not to be confused with the selling of Servicing Rights, which is simply the right to collect payment on the Note, and keep a small portion of the payment for Servicing Fees. Usually, when a homeowner states that their loan was sold, they are referring to Servicing Rights.)

ξ Securitizing a Loan

Securitizing a loan is the process of selling a loan to Wall Street and private investors. it is a method with many issues to be considered. The methodology of securitizing a loan generally followed these steps:

- A Wall Street firm would approach other entities about issuing a "Series of Bonds" for sale to investors and would come to an agreement. In other words, the Wall Street firm "pre-sold" the bonds.

- The Wall Street firm would approach a lender and usually offer them a warehouse Line of Credit. The Warehouse Credit Line would be used to fund the loan. The Warehouse Line would be covered by restrictions resulting from the initial Pooling & Servicing Agreement Guidelines and Mortgage Loan Purchase Agreement. These documents outlined the procedures for the creation of the loans and the administering of the loans prior to, and after, the sale of the loans to Wall Street.

- The Lender, with the guidelines, essentially went out and found "buyers" for the loans, people who fit the general characteristics of the Purchase Agreement. (Guidelines were very general and most people could qualify." The Lender would execute the loan and fund it, collecting payments until there were enough loans funded to sell to the Wall Street firm who could then issue the bonds.

- Once the necessary loans were funded, the lender would then sell the loans to the "Servicer", usually either a subsidiary of the Wall Street firm, of a specially created Securitized Trust. At this point, the loans are separated into "tranches" of loans, where they will be eventually turned into bonds.

- Next, the loans were "sold" to the "Servicer." This was a "Special Purpose Vehicle" designed with one purpose in mind. That was to create a "bankruptcy remote vehicle" where the lender or other entities are protected from what might happen to the loans, and/or the loans are "protected" from the lender. The "Servicer" would be, once again, created by the Wall Street firm or the lender.

- Then the "Servicer" would place the loans into the Issuing Entity, which is another entity created solely for the purpose of selling the bonds.

- Finally, the bonds would be sold, with a Trustee appointed to ensure that the bondholders received their monthly payments.

ξ LOANSTAR HOME LOANS, LLC, DBA LOANSTAR HOME LENDING was a "correspondent lender" that originated mortgage loans. These loans, in turn, based on the researched performed was sold and transferred into a "federally-approved securitization" trust named the FANNIE MAE REMIC TRUST 2017-59.

ξ The Note and Mortgage have taken two distinctly different paths. The Note based on the researched performed was securitized into the FANNIE MAE REMIC TRUST 2017-59.

ξ The loan was originally made to LOANSTAR HOME LOANS, LLC, DBA LOANSTAR HOME LENDING and based on the researched performed was sold and transferred to FANNIE MAE REMIC TRUST 2017-59. There is no record of Assignments to either the Sponsor or Servicer as required by the Prospectus Agreement.

**Exhibit I**

# TRANSACTION HISTORY

## Transaction History Report

**54248 Kalberer Rd, Scappoose, OR 97056-2303**
APN: 8458

Columbia County Data as of: 05/15/2025

### Current Owner: Higgs Ivan / Thomson Jennifer

Vesting:
2017 - Present

**LIENS**

| Date | Type | Amount | Borrower(s) | Lender | Loan Type | Type / Term | Rate | Document # |
|---|---|---|---|---|---|---|---|---|
| 08/22/2022 | Trust Deed/Mortgage | $116,273 | Higgs Ivan / Higgs Jennifer | US Bank National Association | | / 30 Years | | 2022.7094 |
| 12/27/2019 | Trust Deed/Mortgage | $54,339 | Higgs Ivan / Thomson Jennifer | US Bank NA | | Est / 30 Years | 3.700 | 2019.10871 |
| ^ 09/15/2022 | Release | | | | | | | 2022.7662 |
| 06/28/2017 | Trust Deed/Mortgage | $414,000 | Higgs Ivan / Thomson Jennifer | Loanstar Home Lending | Conventional | Est / 30 Years | 4.020 | 2017.6018 |

**CONVEYANCES**

| Date | Rec Date | Price | Type | Title Company | Buyer | Seller | Document # |
|---|---|---|---|---|---|---|---|
| 06/27/2017 | 06/28/2017 | $460,000 | | Ticor Title Company Of Or | Higgs Ivan / Thomson Jennifer | Cate Jack A Wynette L | 2017.6017 |

### Prior Owner: Cate Jack A Wynette L

Unknown - 2017

**LIENS**

| Date | Type | Amount | Borrower(s) | Lender | Loan Type | Type / Term | Rate | Document # |
|---|---|---|---|---|---|---|---|---|
| 11/14/2016 | Trust Deed/Mortgage | $369,814 | Cate Jack A / Cate Wynette L | ST Fin Corp | Veterans Affairs | / 30 Years | | 2016.9882 |
| ^ 08/08/2017 | Release | | | | | | | 2017.7237 |
| 02/17/2015 | Trust Deed/Mortgage | $270,144 | Cate Jack A / Cate Wynette L | Stearns Lndg | Veterans Affairs | / 30 Years | | 2015.1113 |
| ^ 12/20/2016 | Release | | | | | | | 2016.10964 |
| 04/14/2014 | Trust Deed/Mortgage | $269,000 | Cate Jack A / Cate Wynette L | Flagstar BK FSB | Veterans Affairs | / 30 Years | | 2014.2259 |
| ^ 03/24/2015 | Release | | | | | | | 2015.2018 |
| 11/17/2010 | Trust Deed/Mortgage | $244,965 | Cate Jack A / Cate Wynette L | J P Morgan Chase Bank | Conventional | Fix / | 423 | 2010.9627 |
| 09/28/2010 | Trust Deed/Mortgage | $240,486 | Cate Jack A / Cate Wynette L | J P Morgan Chase Bank | Conventional | Fix / | 438 | 2010.8068 |
| ^ 05/05/2014 | Release | | | | | | | 2014.2748 |
| 03/02/2009 | Trust Deed/Mortgage | $244,965 | Cate Jack A / Cate Wynette L | J P Morgan Chase Bank | Conventional | Fix / | 491 | 2009.2179 |
| ^ 10/29/2010 | Release | | | | | | | 2010.8976 |
| 10/31/2008 | Trust Deed/Mortgage | $244,965 | Cate Jack A / Cate Wynette L | J P Morgan Chase Bank | Conventional | Fix / | 577 | 2008.10103 |
| ^ 10/29/2010 | Release | | | | | | | 2010.8976 |

DataTree © 2025 First American Financial Corporation and/or its affiliates. All rights reserved. NYSE: FAF 

Title information data source: First American Title **www.datatree.com**

1. IVAN HIGGS AND JENNIFER THOMSON acquired a loan on the property on June 26, 2017 in the amount of $414,000.00. This primary active loan which was recorded on June 28, 2017 is the subject of this report.

2. No Assignment of Deed of Trust made since loan origination. Subsequent recorded documents of foreclosure are dependent upon this document. All documents should be rescinded and the then notarized Assignment of Deed of Trust for equivalent value with verifiable proof of funds and note endorsement executed prior to Fannie Mae acquisition should be recorded for rightful foreclosure to proceed in validating the real parties in interest and in compliance with Oregon Uniform Commercial Code.

3. Foreclosure action dependent upon invalid Assignment of Deed of Trust to Fannie Mae.