# Contract Analysis Report

for

Ivan Higgs
54248 Kalberer Rd., Scappoose OR 97056

# Contract Verbiage Analysis

This analysis is on the mortgage documents of the loan of the homeowners screenshot below. The loan document(s).

**LOAN #: 100039386**
**MIN: 1012320-0000038766-8**

## NOTE

| | | |
|---|---|---|
| **June 26, 2017** [Date] | **Scappoose,** [City] | **Oregon** [State] |

**54248 Kalberer Rd, Scappoose, OR 97056**
[Property Address]

**1. BORROWER'S PROMISE TO PAY**

In return for a loan that I have received, I promise to pay U.S. **$414,000.00** (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is **LoanStar Home Loans, LLC, dba LoanStar Home Lending, a Limited Liability Company.**

I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

**2. INTEREST**

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of **4.125 %.**

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

**3. PAYMENTS**

**(A) Time and Place of Payments**
I will pay principal and interest by making a payment every month.

I will make my monthly payment on the **1st** day of each month beginning on **August 1, 2017.** I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on **July 1, 2047,** I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at **9020 SW Washington Square Road, Suite 350 Portland, OR 97223**

or at a different place if required by the Note Holder.

**(B) Amount of Monthly Payments**
My monthly payment will be in the amount of U.S. **$2,006.45.**

**4. BORROWER'S RIGHT TO PREPAY**

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

**5. LOAN CHARGES**

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any

**Initials:** JH

**MULTISTATE FIXED RATE NOTE-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT** Form 3200 1/01
Ellie Mae, Inc. Page 1 of 3 F3200NOT 0107
F3200NOT (CLS)
06/26/2017 10:08 AM PST

A mortgage note typically will mention the keyword "Note Holder". This technically means the lender and or the bank. Thus the lender/bank is the note holder. Please see an example verbiage below.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

Also a contract will typically have the verbiage "Uniform Secured Note", see example exerpt below. This is for example comparison purposes only.

In an example like this, one can see the keywords also "Uniform Secured Note" and "Security Instrment".

**10. UNIFORM SECURED NOTE**

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

Notice the loan document(s) have the MERS MIN number near the top of the document.

For example and comparison purposes.
A section of a mortgage is mentioning MERS.
A section mentions MERS as acting solely as "nominee", and lenders successors and assigns.
Also mentions MERS "is the mortgagee of record".

**(C) "MERS"** is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. MERS is organized and existing under the laws of Delaware, and has a mailing address of P.O. Box 2026, Flint, MI 48501-2026 and a street address of 1901 E. Voorhees Street, Suite C, Danville, IL 61834. MERS telephone number is (888) 679-MERS. **FOR PURPOSES OF RECORDING THIS MORTGAGE, MERS IS THE MORTGAGEE OF RECORD.**

A section mentions the keyword "Security Instrument".

**(G) "Loan."** The "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

For example when MERS is mentioned on a document the following items are typically mentioned.
For example and comparison purposes.
The section mentions in terms of the "Security Instrument".
Also for example, the verbiage on the example excerprt mentions MERS as holding legal title "to the rights granted by me in this Security Instrument".
Also mentions that MERS can foreclose, as well as taking action to "releasing and cancelling this security instrument"

**BORROWER'S TRANSFER TO LENDER OF RIGHTS IN THE PROPERTY**

I mortgage, grant and convey the Property to MERS (solely as nominee for Lender and Lender's successors in interest) and its successors in interest subject to the terms of this Security Instrument. This means that, by signing this Security Instrument, I am giving Lender those rights that are stated in this Security Instrument and also those rights that Applicable Law gives to lenders who hold mortgages on real property. I am giving Lender these rights to protect Lender from possible losses that might result if I fail to:

(A) Pay all the amounts that I owe Lender as stated in the Note including, but not limited to, all renewals, extensions and modifications of the Note;

(B) Pay, with interest, any amounts that Lender spends under this Security Instrument to protect the value of the Property and Lender's rights in the Property; and

(C) Keep all of my other promises and agreements under this Security Instrument and the Note.

I understand and agree that MERS holds only legal title to the rights granted by me in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right:

(A) To exercise any or all of those rights, including, but not limited to, the right to foreclose and sell the Property; and

(B) To take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

When the MERS MIN number is looked up on the MERS website. The result below.

MERS® ServicerID

1 Record Matched Your Search

MIN: **1012320-0000038766-8** Note Date: **06/26/2017** MIN Status: **Active**

Servicer: PennyMac Corp. Phone: **(866) 695-4122**

**Westlake Village, CA**

If you are a borrower on this loan, you can click here to enter additional information and display the Investor name.

Return to Search

According to the UCC below, there could be issues here of proper “assignmee” of the note which is the document of the loan. Thus the assignee or the ones being assigned to possibly cannot enforce the note.

“23 o Under what circumstances does delivery of a note qualify as an exchange? As mentioned in UCC Section 3-203(a), a note is transferred “if it is delivered by a person apart from its issuer for the purpose of giving to the person receiving delivery the right to enforce the instrument.” For instance, assume that the payee of a note sells it to an assignee, going to transfer all of the payee's rights to the note, but delivers the note to the assignee without indorsing it. The assignee won't qualify as a holder (because the note continues to be payable to the payee) but, because the transaction between the payee and the assignee qualifies as an exchange, the assignee now has all of the payee's rights to enforce the note and thereby qualifies as the person eligible for enforce it. Thus, the failure to acquire the endorsement of the payee doesn't prevent a person in possession of the note from being the person eligible for enforce it, but demonstrating that status is more difficult. The reason being the person in possession of the note must also demonstrate the purpose of the delivery of the note to it to be able to qualify as the person eligible for enforce.”

The security instrument which is the “note” could possibly have issues here.

# Affirmative Defenses

**Breach of Contract**

Definition: An accord and satisfaction is a legal contract whereby two parties agree to discharge a tort claim, contract, or other liability for an amount based on terms that differ from the original amount of the contract or claim.
Accord & satisfaction

**Accord & Satisfaction**

Requires a mortgage which is paid in full. Proof which is the assignment of mortgage. Once the mortgage is paid in full, the mortgage has to be transferred back into the original owners name free and clear.

Technically speaking according to this provision, the mortgage loan/lien has been paid in full.

When a mortgage is sold to another company, the mortgage lien has been technically satisfied. The originating lender must put the property title back into the homeowners name.

Provision 23 in the mortgage contract document states the following

The highlighted wording here is "Upon payment of all sums secured by this Security Instrument, Lender shall release this Security Instrument."
The "payment of all sums" was received when the loan was sold according to the assignment filed below on the property with MERS involved.

This this loan was "sold". Paid in full. Thus this loan has been satisfied in full.

An accord and satisfaction has occurred on this mortgage loan with the assignment on record using the actual documents themselves are proof.

Thus this loan should be adjusted from the property, or proper negotiations must be given to redo the terms, balance of this loan.

- The loan should be placed back into the homeowners name and the lender should back away of any baseless claims they are making for enforcement of this loan. Since it has been paid off technically.
- Lender must release this security instrument using the verbiage of the lenders own contract on the mortgage loan contract

- Any foreclosure proceedings against the property in question are completely fraudulent and must be halted and voided immediately.

CASE

**Weiss v Phillips 2017 NY Slip Op 08209 - November 21, 2017**

**Summary**

**Facts**: In this case before the New York Appellate Division (First Department), defendant Edward Phillips purchased two distressed properties, one of which he transferred to a relative. The two agreed the relative would obtain a mortgage on the property, which Phillips would pay, and would transfer the property back to Phillips at a later date. Four years later, Phillips's attorney sent a paralegal to obtain the relative's signature on a blank deed in order to transfer the property back to Phillips. Instead, the paralegal inserted his mother's name as the grantee on the deed, and the mother later deeded the property to herself and the paralegal. On or about that same date, plaintiff Peter Weiss lent $500,000 to the paralegal and his mother in exchange for a note and mortgage on the property. At this point, the loan obtained by Phillips's relative remained unpaid, with about $450,000 due. When Phillips learned about the fraudulent transactions, he filed a lawsuit, which was settled when the paralegal and his mother agreed to transfer title on the property back to Phillips.

After settling the lawsuit, Phillips learned that the loan with Weiss was in default and that Weiss intended to foreclose on the property. Phillips thus executed a Consolidated Extension Mortgage Agreement Note (CEMA) with Weiss through which Phillips acknowledged the validity of Weiss's loan and mortgage on the property and agreed to waive all defenses and counterclaims in exchange for a one-year extension of the loan. After the year passed, Weiss commenced this action and filed a motion for summary judgment seeking to foreclose. The trial court granted Weiss's motion over Phillips's objections, including that the mortgage was unenforceable because it was based on a void deed.

**Holding**: On appeal, the New York Appellate Division (First Department) affirmed the trial court's decision in an opinion authored by Justice Renwick. Among other things, the court held that the deed here was the result of a fraudulent inducement and not a forgery, which made it only voidable rather than void. Further, contrary to Phillips's arguments, the court held that Weiss was a bona fide encumbrancer due to the CEMA's provision that Phillips acknowledged and ratified Weiss's rights under the loan documents and waived any claims or defenses regarding the same. Additionally, the court rejected Phillips's claim that the CEMA was unconscionable and that he did not understand its terms. Phillips executed it with the advice of counsel, in part because of counsel's advice that Weiss might have an equitable subrogation claim because purportedly $450,000 of the $500,000 in loan proceeds from his loan were used to discharge Phillips's relative's mortgage on the property. The court further found that this was not a typical foreclosure mandating the production of the promissory note tied to the mortgage before the foreclosure could proceed. This was so because Phillips acknowledged Weiss's right to foreclose in the CEMA and

there was no question that Weiss was the holder of the note and mortgage as evidenced by the CEMA and the parties' deposition testimony. As such, the court held that summary judgment was appropriate.

Justice Gesmer authored a lengthy concurrence in part and dissent in part. The focus on the dissent was the argument that UCC 3-804 required Weiss to produce the original Note to foreclose or explain how it was lost or destroyed. The dissent also found that the CEMA was ambiguous on whether Phillips was assuming responsibility to pay the mortgage and questioned whether Weiss was a bona fide encumbrancer as he did no investigation into the fraudsters' creditworthiness or the bona fides of the property.

**Relevance to the title industry**: This decision is a reminder of the importance of having a party acknowledge the validity of title or a lien in documents resolving title disputes whether those documents take the form of a settlement agreement, a modification or an extension of a mortgage. Weiss unknowingly made a $500,000 loan secured by a mortgage on a property that the borrowers obtained via fraud. Through the CEMA, however, Weiss ensured that the mortgage was enforceable against the property by his having the property's "true" owner be a party to the CEMA and acknowledge the mortgage lien. Additionally, the decision reemphasizes the importance of the doctrine of equitable subrogation to lenders or title insurance companies which, according to Phillips's attorney, was part of the reason Phillips agreed to execute the CEMA and ratify the mortgage.

https://law.justia.com/cases/new-york/appellate-division-first-department/2017/810090-10-3935.html

1. **FRAUD CASES**

**US Bank N.A. v Nelson - January 24, 2019**

**Summary**

The question in this case is whether a foreclosure defendant preserves the defense of lack of standing if the answer denies the plaintiff's allegation of standing but does not separately plead lack of standing as an affirmative defense.

The facts are straightforward. Defendants defaulted on a loan secured by a mortgage, and US Bank commenced this action to foreclose on the loan. The complaint alleged that US Bank was "the owner and holder" of the mortgage being foreclosed. Defendants' answers denied information sufficient to confirm the

truth of that allegation, but did not separately allege that plaintiff lacked standing to commence the action. Supreme Court granted US Bank's motion for a judgment of foreclosure and denied defendants' motion to dismiss for, among other reasons, lack of standing.

A divided panel of the Second Department affirmed. The majority noted that, as a general matter, a defendant is not required to affirmatively plead in its answer that the plaintiff failed to allege some essential element of a claim; it is enough to simply deny the plaintiff's allegations. But a defendant is required to affirmatively plead any matter that is not the plaintiff's burden to prove as part of the claim. And standing is not an essential element of a foreclosure claim; the issue arises only if defendant raises it. So, the majority held, a defendant could forfeit the defense of lack of standing by failing to affirmatively plead it in the answer or raise the defense in a pre-answer motion to dismiss. And while the majority stressed that no "magic words" or "ritualistic formulation" was required, a "mere denial of factual allegations will not suffice."

A single judge dissented. The dissenter concluded that a denial of the plaintiff's factual allegations of standing would put a plaintiff on notice that standing would be in issue. And given the notice function of pleading, such a denial should be sufficient to plead the defense of lack of standing, regardless whether it is expressly labeled a "defense" or an "affirmative defense."

**U.S. BANK NATIONAL ASSOCIATION v. SILVANA SOTILLO - June 5, 2017**

xxxxx .................. "We review a grant of a motion to dismiss a complaint for failure to state a cause of action de novo, applying the same standard under Rule 4:6-2(e) that governed the motion court." Wreden v. Township of Lafayette, 436 N.J. Super. 117, 124 (App. Div. 2014). Thus, we are "limited to examining the legal sufficiency of the facts alleged on the face of the complaint." Nostrame v. Santiago, 213 N.J. 109, 127 (2013) (quoting Printing Mart-Morristown v. Sharp Elecs. Corp., 116 N.J. 739, 746 (1989)). We are required to "'search[] the complaint in depth and with liberality to ascertain whether the fundament of a cause of action may be gleaned even from an obscure statement of claim, opportunity being given to amend if necessary.' ......................... xxxxxxxxxxxxxx

xxxxx .................... that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgement or order as a matter of law." R. 4:46-2(c). The court must "consider whether the competent evidential materials presented, when viewed in the light most favorable to the non-moving party in consideration of the applicable evidentiary standard, are sufficient to permit a rational factfinder to resolve the alleged disputed issue in favor of the non-moving party." Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 523 (1995) ................... xxxxxxxxxxxxxxx

We have held "an assignee of a [contract] can be held liable under the CFA, for its own unconscionable commercial activities in the subsequent performance of the assigned contract." Jefferson Loan Co., Inc. v. Session, 397 N.J. Super. 520, 533 (App. Div. 2008). We made clear "[o]ur holding is limited to an assignee's own unconscionable commercial practices . . . , not an assignee's derivative liability for the actions of the assignor of the [contract]." Id. at 538.4

Xxxxx ............... a transfer of the negotiable instrument to a holder in due course to whom the mortgage is also assigned will enable the assignee to enforce the mortgage (as well as the negotiable instrument) according to its terms, free and clear of any personal defenses the mortgagor may have against the assignor. This results from the view that the mortgage is mere "incident" or "accessory" to the debt and when the debt is embodied in a negotiable instrument the quality of negotiability is necessarily imparted to the accompanying mortgage.

N.J.S.A. 12A:3-305(a) in turn provides such an obligor may assert real defenses, namely

(1) a defense of the obligor based on infancy of the obligor to the extent it is a defense to a simple contract, duress, lack of legal capacity, or illegality of the transaction which, under other law, nullifies the obligation of the obligor, fraud that induced the obligor to sign the instrument with neither knowledge nor reasonable opportunity to learn of its character or its essential terms, or discharge of the obligor in insolvency proceedings[,]

(2) a defense of the obligor stated in another section of this chapter or a defense of the obligor that would be available if the person entitled to enforce the instrument were enforcing a right to payment under a simple contract; [or]

(3) a claim in recoupment of the obligor against the original payee of the instrument if the claim arose from the transaction that gave rise to the instrument[.]

## 2. VIOLATIONS OF TILA

**JERRY HOANG VS BANK OF AMERICA -** December 6, 2018

**SUMMARY**

**Truth in Lending Act**

The panel reversed the district court's dismissal of an action brought by a borrower against Bank of America, N.A., alleging claims under the Truth in Lending Act ("TILA") after the bank declared the borrower in default on a loan and initiated non-judicial foreclosure proceedings.

If a creditor fails to make required disclosures under TILA, borrowers are allowed three years from the loan's consummation date to rescind certain loans. 15 U.S.C. § 1635(f). The borrower sent the bank notice of intent to rescind the loan within three years of the consummation date.

The panel held that under *Jesinoski v. Countrywide Home Loans*, 135 S. Ct. 790, 792 (2015), borrowers may affect rescission of such a loan simply by notifying the creditor of their intent to rescind within the three-year period from the loan's consummation date. The panel further held that because TILA did not include a statute of limitations outlining when an action to enforce such a rescission must be brought, courts must borrow the most analogous state law statute of limitations and apply that limitation period to TILA rescission enforcement claims. The panel held that in Washington, the state's six-year contract statute of limitations was the most analogous statute. The panel rejected the district court's application of TILA's one-year statute of limitations for legal damages claims. The panel also rejected

** This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

HOANG V. BANK OF AMERICA 3

the bank's argument that Washington's two-year catch-all statute of limitations should apply. Because the borrower brought this action within six years, the district court erred in dismissing the TILA claim as time barred.

The panel held that the district court improperly denied the borrower leave to amend the complaint. The district court made its determination based on its determination that amendment would be futile because the claims were timebarred. The panel held that because the borrower's TILA rescission enforcement claim was not time-barred, an amendment by the borrower would not be futile.


**OPINION**

N.R. SMITH, Circuit Judge:

If a creditor fails to make required disclosures under the Truth in Lending Act (TILA), borrowers are allowed three years from the loan's consummation date to rescind certain

loans.**1** 15 U.S.C. § 1635(f). Borrowers may effect that rescission simply by notifying the creditor of their intent to rescind within the three-year period. *Jesinoski v. Countrywide Home Loans*, 135 S. Ct. 790, 792 (2015). TILA does not include a statute of limitations outlining when an action to enforce such a rescission must be brought. Without a statute of limitations in TILA, courts must first borrow the most analogous state law statute of limitations and apply that limitation period to TILA rescission enforcement claims. *Cty. of Oneida v. Oneida Indian Nation of N.Y. State*, 470 U.S. 226, 240 (1985). In Washington, the state's six-year contract statute of limitations is the most analogous statute. We have jurisdiction under 28 U.S.C. § 1291, and we reverse and remand for further proceedings.

**3. LACK OF JURISDICTION**

**U.S. BANK NATIONAL ASSOCIATION v. MERVIN HODGE – October 18, 2018**

"Service by mail is not effective . . . unless plaintiff first made 'a reasonable and good faith attempt' to serve defendant personally." City of Passaic v. Shennett, 390 N.J. Super 475, 483 (App. Div. 2007) 3(a)). "A party's good faith effort to personally serve a defendant must be 'described with specificity in the proof of service.'" Ibid. (quoting R. 4:4-3).

The Chapter 7 discharge of debt did not impact plaintiff's mortgage lien. The Order of Discharge specifically notes "a creditor may have the right to enforce a valid lien, such as a mortgage or security interest, against the debtor's property after the bankruptcy, if that lien was not avoided or eliminated in the bankruptcy case."

**SHAROVA V WELLS FARGO BANK, N.A. - January 3, 2019**

xxx ....... "with respect to an action pursuant to RPAPL 1501(4), a person having an estate or an interest in real property subject to a mortgage can seek to cancel and discharge that encumbrance where the period allowed by the applicable statute of limitations for the commencement of an action to foreclose the mortgage has expired, provided that the mortgagee or its successor was not in possession of the subject real property at the time the action to cancel and discharge the mortgage was commenced .......... xxxxxxxxxxxx

**King v. Wells Fargo Bank, N.A.**

**xxx** ............... entire controversy doctrine, codified in Rule 4:30A of the New Jersey Court Rules, "embodies the principle that the adjudication of a legal controversy should occur in one litigation in only one court.". The doctrine requires litigants to assert all affirmative claims relating to the controversy between them in one action, and to join all parties with a material interest in the controversy, or be forever barred from bringing a subsequent action involving the same underlying facts. ........xxxxx .......... In other words, any claim challenging the foreclosure-plaintiff's "right to foreclose" is "germane" to a foreclosure action and must be raised there.

# UCC Section 3-301

**UCC Section 3-301** provides only three ways in which an individual may qualify as the person eligible to enforce a note, two of which require the person to be in possession of the note (which may include possession by a third party that possesses it for the person)
19 : • The first way a person may qualify as the person eligible to enforce a note will be its "holder." This familiar concept, put down in more detail in UCC Section 1-201(b)(21)(A), requires that the person be in possession of the note and either (i) the note is payable to that person or (ii) the note is payable to bearer. Determining to whom a note is payable requires examination not only of the face area of the note but additionally of any indorsements. This is because the party to whom a note is payable may be changed by indorsement20 to ensure that, for instance, a note payable to the order of a named payee that's indorsed in blank by that payee becomes payable to bearer.21
• The 2nd way a person may be the person eligible to enforce a note will be a "Non-holder in possession of the [note] who has the rights of a holder." o Just how can an individual who is not the holder of a note have the rights of a holder?. This may occur by operation of law beyond your UCC, such as the law of subrogation or estate administration, by what type person may be the successor to or acquires another person's rights.22. Additionally it may occur if the delivery of the note to that person is really a "transfer" (as that term is defined in UCC Section 3-203, see below) because transfer of a note "vests in the transferee any right of the transferor to enforce the instrument."23 Thus, in case a holder (who, as seen above, is really a person eligible to enforce a note) transfers the note to another person, that other person (the transferee) obtains from the holder the right to enforce the note even though the transferee does not end up being the holder (as in the example below). Similarly, a 19 See UCC § 1-103(b) (unless displaced by particular provisions of the UCC, the law of, *inter alia*, principal and agent supplements the provisions of the UCC). See also UCC § 3-

420, Comment 1 ("Delivery to an agent [of a payee] is delivery to the payee."). Note that "delivery" of a negotiable instrument is defined in UCC § 1-201(b)(15) as voluntary transfer of possession. This Report does not address the determination of whether a particular person is an agent of another person under the law of agency and the agency law implications of such a determination.

20 "Indorsement," as defined in UCC § 3-204(a), requires the signature of the endorser. The law of agency determines whether a signature made by a person purporting to act as a representative binds the represented person. UCC § 3-402(a); see note 12, supra. An indorsement may appear either on the instrument or on a separate piece of paper (usually referred to as an *allonge*) affixed to the instrument. See UCC § 3-204(a) and Comment 1, par. 4.

21UCC Section 3-205 contains the rules concerning the effect of various types of indorsement on the party to whom a note is payable. Either a "special indorsement" (see UCC § 3-205(a)) or a "blank indorsement" (see UCC § 3205(b)) can change the identity of the person to whom the note is payable. A special indorsement is an indorsement that identifies the person to whom it makes the note payable, while a blank indorsement is an indorsement that does not identify such a person and results in the instrument becoming payable to bearer. When an instrument is indorsed in blank (and, thus, is payable to bearer), it may be negotiated by transfer of possession alone until specially indorsed. UCC § 3-205(b).

22 See Official Comment to UCC § 3-301. 23 UCC § 3-203(b).

Subsequent transfer will result in the following transferee being truly a person eligible for enforce the note.

23 o Under what circumstances does delivery of a note qualify as an exchange? As mentioned in UCC Section 3-203(a), a note is transferred "if it is delivered by a person apart from its issuer for the purpose of giving to the person receiving delivery the right to enforce the instrument." For instance, assume that the payee of a note sells it to an assignee, going

to transfer all of the payee's rights to the note, but delivers the note to the assignee without indorsing it. The assignee won't qualify as a holder (because the note continues to be payable to the payee) but, because the transaction between the payee and the assignee qualifies as an exchange, the assignee now has all of the payee's rights to enforce the note and thereby qualifies as the person eligible for enforce it. Thus, the failure to acquire the endorsement of the payee doesn't prevent a person in possession of the note from being the person eligible for enforce it, but demonstrating that status is more difficult. The reason being the person in possession of the note must also demonstrate the purpose of the delivery of the note to it to be able to qualify as the person eligible for enforce.

24 Under what circumstances does delivery of a note qualify as a transfer? As stated in UCC Section 3-203(a), a note is transferred "if it is delivered with a person apart from its issuer for the goal of giving to the person receiving delivery the right to enforce the instrument." Like, think that the payee of a note sells it to an assignee, intending to transfer all of the payee's rights to the note, but delivers the note to the assignee without indorsing it. The assignee will not qualify as a holder (because the note is still payable to the payee) but, as the transaction between the payee and the assignee qualifies as a transfer, the assignee now has all of the payee's rights to enforce the note and thereby qualifies as the individual eligible for enforce it. Thus, the failure to obtain the endorsement of the payee doesn't prevent a person in possession of the note from being the individual eligible for enforce it, but demonstrating that status is more difficult. The reason being the individual in possession of the note must demonstrate the goal of the delivery of the note to it in order to qualify as the individual eligible for enforce.24

24 If the note was transferred for value and the transferee does not qualify as a holder because of the lack of endorsement by the transferor, "the transferee has a specifically enforceable right to the unqualified endorsement of the transferor." See UCC § 3-203(c).

25 UCC § 3-309(a)(iii) (1990 text), 3-309(a)(3) (2002 text). The 2002 text goes on to provide that a transferee from the person who lost possession of a note may also qualify as a

person entitled to enforce it. See UCC § 3309(a)(1)(B) (2002). This point was thought to be implicit in the 1990 text, but was rejected in some cases in which the issue was raised. The reasoning of those cases was rejected in Official Comment 5 to UCC § 9-109 and the point was made explicit in the 2002 text of Article 3.

26 To prevail the person must establish not only that the person is a person entitled to enforce the note but also the other elements of the maker's obligation to pay such a person. See generally UCC §§ 3-309(b), 3-412. Moreover, as is the case with respect to the enforcement of all rights under the UCC, the person enforcing the note must act in good faith in enforcing the note. UCC § 1-304. Subsequent transfer can lead to the next transferee being a person eligible for enforce the note.

**Illustrations:**

1.Maker issued a negotiable mortgage note payable to the order of Payee. Payee is in possession of the note, which has not been indorsed. Payee may be the holder of the note and, therefore, is the person eligible to enforce it. UCC §§ 1-201(b)(21)(A), 3-301(i).

2. Maker issued a negotiable mortgage note payable to the order of Payee. Payee indorsed the note in blank and gave possession of it to Transferee. Transferee may be the holder of the note and, therefore, is the person eligible to enforce it. UCC §§ 1-201(b)(21)(A), 3-301(i).

3. Maker issued a negotiable mortgage note payable to the order of Payee. Payee sold the note to Transferee and gave possession of it to Transferee for the objective of giving Transferee the proper to enforce the note. Payee did not, however, indorse the note. Transferee isn't the holder of the note because, while Transferee is in possession of the note, it's payable neither to bearer nor to Transferee. UCC § 1-201(b)(21)(A). Nonetheless, Transferee is really a person eligible to enforce the note. This is because the note was transferred to Transferee and the transfer vested in Transferee Payee's to enforce the note. UCC § 3-203(a)-(b). As a result, Transferee is really a nonholder in possession of the note

with the rights of a holder and, accordingly, a person eligible to enforce the note. UCC § 3-301(ii).

4 Same facts as Illustrations 2 and 3, except that (i) underneath the law of agency, Agent is the agent of Transferee for purposes of possessing the note and (ii) it is Agent, rather than Transferee, to whom actual physical possession of the note is written by Payee. In the important points of Illustration 2, Transferee is just a holder of the note and a person eligible to enforce it. In the context of Illustration 3, Transferee is just a person eligible to enforce the note. Whether Agent may enforce the note or mortgage on behalf of Transferee depends partly on what the law states of agency and, in the event of the mortgage, real property law.

5. Same facts as Illustration 2, except that after obtaining possession of the note, lost the note and its whereabouts cannot be determined. Transferee is just a person eligible to enforce the note even though Transferee does not need possession of it. UCC § 3-309(a). If Transferee brings an action on the note against Maker, Transferee must establish the terms of the note and the weather of Maker's obligation on it. The court might not enter judgment and only Transferee, however, unless the court finds that Maker is adequately protected against loss that may occur by reason of a state of another person (such while the finder of the note) to enforce the note. UCC § 3-309(b). 27 See *id*. UCC § 3-309(b) goes on to state that "Adequate protection may be provided by any reasonable means."

According to the NOTE's terms, "Federal Law," which includes rules and regulations for federally authorized savings institutions, must govern the NOTE and be used to interpret it. NOTE: See "12. GOVERNING LAW; SEVERABILITY" in the paragraph.
A bank with a federal charter and is subject to federal law. State law may not supersede federal law in relation to banks and banking activities since banks are by definition subject to federal law.
The second circuit was unambiguous in Flagg v. Yonkers Savings and Loan Association, stating, "*The Mortgage Contract Does Not Incorporate State Law*."
The Flagg court referred to the contract's section fifteen (the Deed of Trust), referencing that clause to state,

*"This Security Instrument is governed by federal law and the law that applies in the place where the Property is located. If any term of this Security Instrument or of the Note conflicts with the law, all other terms of this Security Instrument and of the Note will still remain in effect if they can be given effect without the conflicting term."*

The section fifteen restatement made by the Flagg v. Yonkers court is essentially the same as the section fifteen of the trust deed that WFBNA and the purported substitute trustees used as the basis for their Order to Docket Foreclosure (OtD), which in pertinent part reads,

*"Governing Law; Severability This Security Instrument and the Secured Notes shall be governed by and construed under federal law and federal rules and regulations, including those for federally chartered savings institutions ("Federal Law") and, to the extent Federal Law does not apply, by the law of the jurisdiction in which the Property is located."*

According to Shaw Group, Inc. v. Triplefine Int'l Corp., 322 F.3d 115, 123 (2d Cir. 2003), the court regarded this specific section of the contract as "choice law," stating,

*"This section of the contract, is, by title and content, a choice of law provision. While contracts may incorporate particular laws as contract terms, the contract must do so with specificity. General choice of law provisions do not accomplish this task. See Shaw Group, Inc. v. Triplefine Int'l Corp., 322 F.3d 115, 123 (2d Cir.2003) (without clear language of incorporation, a general choice of law provision was held not to have incorporated New York arbitration law into a contract)."*

The CONTRACTS, the NOTE, and the Deed of Trust prohibit WFBNA and the purported Substituted Trustees from asserting state jurisdiction.